# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### GALVESTON DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>   *Plaintiff,*<br><br><br>v.<br><br><br>XAVIER BECERRA, Secretary of the United States Department of Health and Human Services, in his official capacity; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and the UNITED STATES OF AMERICA,<br><br>   *Defendants.* | Civ. Action No. _____<br><br><br>**COMPLAINT** |

## I.   INTRODUCTION

1.    In the closing days of the Obama Administration, the Department of Health and Human Services ("HHS") imposed a new rule on recipients of HHS awards under Title IV-E of the Social Security Act, 42 U.S.C. §§ 670–679b. That rule (the "SOGI Rule") prohibits recipients from discriminating on the basis of "age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation" as well as same-sex marriage status. *See* 45 C.F.R. § 75.300(c) – (d). The SOGI Rule applies to the State of Texas and its Department of Family and Protective Services ("DFPS") through the administration of the Texas foster care system, which receives federal funding through HHS.

2.    In 2019, the State of Texas, DFPS, and the Archdiocese of Galveston-Houston (collectively, "the *Azar* Plaintiffs") challenged the SOGI Rule in this Court on the grounds that it violated the APA, the Religious Freedom Restoration Act ("RFRA"), the First Amendment, the Spending Clause, and the Nondelegation Doctrine. *See* ECF 1, Complaint, *Texas v. Azar*, No. 3:19-cv-00365 (S.D. Tex.) (Brown, J.).

3.    In response to that lawsuit, HHS moved for dismissal, arguing *inter alia* that the case was moot. ECF 22, *Azar*, No. 3:19-cv-00365. Specifically, HHS argued that the case was moot because (1) HHS never enforced the SOGI Rule; (2) HHS made it clear that it would not enforce it; and (2) HHS was attempting to revise it. *Id.* at 1–2.

4.     HHS relied on the facts that it had (1) published a notification of nonenforcement in the Federal Register (the "Notice of Nonenforcement"); [1] (2) published a notice of proposed rulemaking to revise the SOGI Rule (the "NPR"); [2] and (3) sent a letter to Texas informing it that "RFRA prohibits [the agency] from applying [the SOGI Rule] to the State of Texas" with respect to religious entities participating in programs funded by Title IV-E ("the "Texas Letter of Nonenforcement"). [3]

5.     The *Azar* Plaintiffs countered that the case was not moot because the HHS's "revocable notice of temporary non-enforcement" and "'proposal' for a new regulation" did not alter existing federal law and would continue to violate a federal regulation. Indeed, the *Azar* Plaintiffs argued that the defendants' "*non-binding* promise to *temporarily* halt enforcement of a rule *until* completing a rulemaking that only may displace parts of the rule" constitutes a "non-binding half-measure[]" that is "hardly enough to displace the existing (and illegal) federal law in place *right now*." ECF 37, Plaintiffs' Joint Opposition to Motion to Dismiss at 1, *Azar*, No. 3:19-cv-00365 (emphasis in original).

6.     This Court recognized that "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power," while acknowledging that courts must determine whether a defendant's actions actually extinguish the controversy or represent mere litigation posturing. *Texas v. Azar*, 476

---

[1] *See* Notification of Nonenforcement of Health and Human Services Grant Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019).
[2] *See* Office of the Assistant Secretary for Financial Resources, Health and Human Services Grants Regulation, 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019).
[3] HHS Office of Civil Rights, Letter Re: Application of 45 C.F.R. § 75.300(c) & (d) in Light of the Religious Freedom Restoration Act (March 5, 2020),  https://www.hhs.gov/sites/default/files/agency-action-ocr-letter-to-txas-re-rfra.pdf (last visited Dec. 11, 2022).

F. Supp. 3d 570, 575 (S.D. Tex. 2020). And in the context of governmental defendants, the Court specifically noted that they are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Id.* (quoting *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017)).

7.    The Court explained that the voluntary cessation doctrine does not apply when "a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance." *Id.* at 575–76 (quoting *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018)).

8.    Granting this presumption of good faith to HHS based on its representations, this Court determined that the agency "actually extinguished the controversy," making the case moot. *Id.* at 578 (alterations omitted) (citing *Moore*, 868 F.3d at 407). In reaching this conclusion, the Court relied on the three actions that HHS had undertaken. *Id.* at 576–78.

9.    The first action on which the Court relied was the Notice of Nonenforcement, which promised that HHS would not enforce the SOGI rule "pending repromulgation." [4] Relatedly, the Court relied on the NPR that was supposed to revise the challenged provisions in the SOGI Rule. *Azar*, 476 F. Supp. 3d at 576.

10.    The third action the Court relied on was the Texas Letter of Nonenforcement. *Azar*, 476 F. Supp. 3d at 576. The Court found that such an explicit

---

[4] Notification of Nonenforcement of Health and Human Services Grant Regulation, 84 Fed. Reg. at 63,811 (Nov. 19, 2019).

concession further supported a finding of mootness and was in line with Fifth Circuit precedent. *Id*. at 576–77.

11.     The Court noted the *Azar* Plaintiffs' warning that "HHS could start enforcing the challenged provisions at any time" if it were not repealed but determined that there was no reason to doubt HHS's assurances. *See id*. at 578–79. Thus, the Court took HHS's assurances "as its word," *id*., and dismissed the case as moot, *id*. at 580.

12.     But as feared by the *Azar* Plaintiffs, HHS's assurances proved ephemeral. Indeed, HHS's own actions subsequent to the dismissal have undermined its assurances given to this Court.

13.     On November 18, 2021, HHS "rescinded" the exception from enforcement in the Texas Letter of Nonenforcement, stating that it was "overbroad."[5]

14.     The NPR also proved to be nothing. At the end of the Trump Administration, HHS finalized the revisions to the SOGI Rule that it had proposed in the NPR (the "2021 Final Rule").[6] Then, as the *Azar* Plaintiffs feared, the 2021 Final Rule was immediately challenged in a separate lawsuit in the U.S. District Court for the District of Columbia. *Facing Foster Care in Alaska v. HHS*, No. 21-cv-308-JMC (D.D.C.).

---

[5] HHS Office for Civil Rights, Letter Re: Withdrawal of Exception from Non-Discrimination Requirements of 45 CFR 75.300(c) & (d) (Nov. 18, 2021), https://www.hhs.gov/conscience/religious-freedom/state-letter-to-texas-withdrawing-exception-from-non-discrimination-requirements/index.html (last visited Dec. 11, 2022).
[6] Health and Human Services Grants Regulation, 86 Fed. Reg. 2,257 (Jan. 12, 2021).

15.     After the court in that case (with the agency's agreement) postponed the effective date of the 2021 Final Rule several times before it was to go into effect, *HHS itself* moved that court to vacate the 2021 Final Rule that would have revised the SOGI Rule. *See* ECF 41, Defs.' Mot. for Remand with Vacatur, *Facing Foster Care*, No., 21-cv-308-JMC (D.D.C.). With HHS's motion unopposed, the court vacated the 2021 Final Rule. *See* ECF 44, June 29, 2022 Order, *Facing Foster Care*, 21-cv-308-JMC (D.D.C.).

16.     This voluntary vacatur meant that the SOGI Rule was not revised as proposed, and the only real assurance remaining was the Notice of Nonenforcement, which had only said that the SOGI Rule would not be enforced "pending repromulgation."

17.     But even that assurance is now threatened in other litigation. The Notice of Nonenforcement is being challenged in the United States District Court for the Southern District of New York. *See Family Equality v. Becerra*, No. 1:20-CV-2403 (MKV), 2022 WL 956256 (S.D.N.Y. Mar. 30, 2022). The plaintiffs there allege that the Notice of Nonenforcement: (1) "'guts' the policy of non-discrimination from the [SOGI Rule];" (2) constitutes "a substantive, binding rule within the meaning of the APA," requiring notice-and-comment rulemaking; and (3) rises to the level of "arbitrary and capricious" decisionmaking. *Id.* at *1.

18.     The Southern District of New York dismissed that case for lack of standing and thus did not address these arguments. *See id.* at *4–6. But the plaintiffs have appealed the district court's judgment to the U.S. Court of Appeals for the

Second Circuit. *See* Brief for Plaintiffs-Appellants, *Family Equality v. Becerra*, No. 22-1174 (2d Cir. filed Aug. 26, 2022), 2022 WL 3911050. And regardless of the result of the litigation in that case, the Notice of Nonenforcement will remain vulnerable to litigation in other fora. The Biden Administration's actions regarding the litigation against the 2021 Final Rule does not inspire confidence in a robust defense of the Notice of Nonenforcement in any such litigation

19. Even were the Notice of Nonenforcement to remain in effect, this Court declined to rely on it in isolation to support dismissal, instead explaining that "[t]o the extent that one of HHS's statements of nonenforcement does not do away with the plaintiffs' concerns, the other covers up its sins." *Azar*, 476 F. Supp. 3d at 577. As this situation of mutually reinforcing actions no longer exists, the case is no longer moot.

20. Accordingly, the same assurances by HHS that provided the underpinnings for this Court's dismissal in Azar no longer control.

21. Given this change in circumstances, Texas files this lawsuit to defend the interests of the State, DFPS, and the vulnerable children in its care.

22. Texas and DFPS do not violate the SOGI Rule. They serve all foster children and are willing to work with all potential foster parents.

23. But to better help foster children, DFPS partners with numerous and diverse child placing agencies. Some of those agencies have sincerely held religious beliefs that would prevent them from following the SOGI Rule. Texas children, and DFPS, benefit greatly from the work done by those child placing agencies. If the SOGI

Rule forbids Texas and DFPS from working with these agencies, foster children will suffer.

24.     If the SOGI Rule prohibits Texas from working with child placing agencies that object to the Rule, then Texas and DFPS will have to either forgo federal funding or cease working with those agencies.  In either case, Plaintiff—but more importantly, Texas foster children—will be harmed.

25.     This Court should enter a declaratory judgment that Texas and DFPS do not violate the SOGI Rule by working with religious social services providers to better serve foster children.  By its terms, the SOGI Rule is limited to recipients, like DFPS.  It does not extend to contractors, like religiously motivated child placing agencies.

26.     But if the Court concludes the SOGI Rule does apply to child placing agencies, it should set the SOGI Rule aside as unlawful.  Applied in that way, the SOGI Rule would violate the Administrative Procedure Act.

27.     HHS is required by statute to fund state plans that satisfy the statutory criteria set by Congress.  But in the SOGI Rule, HHS claimed the power to deny federal funding based on criteria not found in the statute.  Moreover, the SOGI Rule is inconsistent with the carefully crafted—and more limited—anti-discrimination rules that Congress specifically designed to govern the conduct of programs funded by Title IV-E of the Social Security Act, 42 U.S.C. §§ 670-679c.

28.     In addition, HHS promulgated the SOGI Rule under 5 U.S.C. § 301, a federal housekeeping statute that does not authorize substantive regulations like the SOGI Rule.

29.     Even if HHS otherwise had the power to promulgate the SOGI Rule, it would still be unlawful because HHS acted arbitrarily and capriciously.  HHS exempted Title IV-A funds from the SOGI Rule because Title IV-A contains a statutory anti-discrimination provision.  But HHS did not exempt Title IV-E, which governs foster care, even though it also contains a statutory anti-discrimination provision.  HHS did not recognize, much less explain, this apparent inconsistency.

30.     Moreover, HHS failed to consider either the best interests of foster children or the religious-liberty interests of child placing agencies.  No rule governing foster care should be enacted without careful analysis of whether it will help or hurt foster children.  And no rule burdening the ability of religious individuals and organizations to live out their faith should be enacted without serious examination of the religious-liberty implications.  By failing to even consider those factors, HHS acted arbitrarily and capriciously.

31.     The SOGI Rule further runs afoul of the Spending Clause.  Absent a separate constitutional limitation, Congress is empowered to condition federal funding for the general welfare when it makes the conditions clear and non-coercive.  But Congress has not done that here.  Instead, HHS has promulgated a coercive rule that undermines the general welfare and that is completely divorced from any statutory funding conditions.

## II.    PARTIES

32.    Plaintiff the State of Texas is a free and independent State, subject only to the Constitution of the United States. Tex. Const. art. I, § 1. Texas has the authority and responsibility to protect the health, safety, and welfare of its residents. *See, e.g.*, *Texas v. Richards*, 301 S.W.2d 597, 602 (Tex. 1957) ("As a general rule the [police] power is commensurate with, but does not exceed, the duty to provide for the real needs of the people in their health, safety, comfort and convenience"); *Lombardo v. City of Dallas*, 73 S.W.2d 475, 479 (Tex. 1934) ("[T]he police power of a state embraces regulations designed to  promote the public health, the public morals, or the public safety."). This includes the authority to protect and, when necessary, care for the children of Texas. *See* Tex. Fam. Code § 262.001 *et seq*.

33.    Defendants are an appointed official of the United States government, a United States governmental agency responsible for the issuance and implementation of the challenged regulation, and the United States.

34.    Defendant Xavier Becerra is the Secretary of the United States Department of Health and Human Services.  He is sued in his official capacity only.

35.    Defendant HHS is the agency that promulgated and now enforces the challenged regulation.

36.    Defendant the United States of America is sued under 5 U.S.C. §§ 702–703 and 28 U.S.C. § 1346.

## III.   JURISDICTION AND VENUE

37.   The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1346, 1361 and 5 U.S.C. §§ 702–703.

38.   The Court is authorized to award the requested declaratory relief under 5 U.S.C. § 706 and 28 U.S.C. §§§ 2201–2202.

39.   The Court is authorized to award injunctive relief under 28 U.S.C. § 1361.

40.   Venue lies in this district pursuant to 28 U.S.C. § 1391.

## IV.   FACTUAL BACKGROUND

### A. Foster Care in Texas

41.   DFPS administers Texas's foster care system to care for children who cannot live safely at home.

42.   If a child in Texas is in that situation, DFPS tries to identify relatives or friends who are willing and able to care for that child.

43.   If DFPS cannot find an appropriate relative or friend, however, the child will be placed in foster care.  A child in foster care might live in a foster family home, a foster family group home, a residential group care facility, or a facility overseen by another state agency.

44.   DFPS spends approximately $550 million per year on residential childcare as part of Texas's foster care system. Almost 23 percent of that money is federally funded pursuant to Title IV-E. In addition, DFPS receives approximately $58 million per year in Title IV-E funding to support casework services for children in foster care.

45.     Foster care is changing in Texas.  DFPS is transitioning from a legacy system to a new Community-Based Care ("CBC") system.

46.     In the legacy system, DFPS contracted directly with child placing agencies, which often found homes for children in foster care.

47.     In the new CBC system, DFPS contracts with a Single Source Continuum Contractor ("SSCC") in each of several geographic service areas.  The SSCC is responsible for finding foster homes or other living arrangements for foster children in its geographic service area.

48.     An SSCC will often rely on child placing agencies to find homes for children in its area.

49.     Properly addressing foster care in Texas requires the help of many child placing agencies.  Having a diverse network of child placing agencies helps DFPS fulfill its foster care mission.

50.     Texas has taken steps to ensure it can contract with many different child placing agencies which hold varying views on religion, sexual orientation, gender identity, and same-sex marriage status.  DFPS works with both secular and faith-based organizations to find loving homes for children.

51.     One such step was passing H.B. 3859, which is codified in Chapter 45 of the Texas Human Resources Code.  H.B. 3859, which was enacted in 2017, explains the Legislature's intent:

> It is the intent of the legislature to maintain a diverse network of service providers that offer a range of foster capacity options and that accommodate children from various cultural backgrounds.  To that end, the legislature expects reasonable accommodations to be made by the

12

state to allow people of diverse backgrounds and beliefs to be a part of meeting the needs of children in the child welfare system.

Tex. Hum. Res. Code § 45.001.

52.    H.B. 3859 furthers that intent by ensuring that more child welfare service providers, including child placing agencies, can operate in Texas:

A governmental entity or any person that contracts with this state or operates under governmental authority to refer or place children for child welfare services may not discriminate or take any adverse action against a child welfare services provider on the basis, wholly or partly, that the provider:

(1)  has declined or will decline to provide, facilitate, or refer a person for child welfare services that conflict with, or under circumstances that conflict with, the provider's sincerely held religious beliefs; …

Tex. Hum. Res. Code § 45.004.

53.    By increasing participation, H.B. 3859 furthers the best interests of foster children in Texas.

54.    H.B. 3859 also ensures that those individuals who do not want to, or cannot, work with religious child placing agencies have other options. "A child welfare services provider who declines to provide a child welfare service as authorized by" H.B. 3859 is obligated to provide the person seeking the service with information about other service providers.  Tex. Hum. Res. Code § 45.005(c).

55.    This is consistent with Defendants' encouragement of "the diligent recruitment of potential foster and adoptive families that reflect the ethnic and racial diversity of children in the State for whom foster and adoptive homes are needed."  42  U.S.C. § 622(b)(7); *see also* 45 C.F.R. § 1355.34(b)(2)(ii)(C).

13

56.     Elsewhere in the Code of Federal Regulations, HHS explains that

> Faith-based or religious organizations are eligible, on the same basis as any other organization, to participate in any HHS awarding agency program for which they are otherwise eligible. Neither the HHS awarding agency, nor any State or local government and other pass-through entity receiving funds under any HHS awarding agency program shall, in the selection of service providers, discriminate for or against an organization on the basis of the organization's religious character or affiliation.

45 C.F.R. § 87.3(a).  Faith-based or religious organizations are similarly eligible for DFPS programs.

57.     Several faith-based providers receive Title IV-E funding through Texas DFPS to provide their services.  Some of these providers require potential foster care or adoptive parents to share a religious faith or agree to the provider's statement of faith.  Some have particular religious views on marriage, gender identity, and sexual orientation.  But none of them should be required to forfeit their beliefs as a condition of helping Texas's most vulnerable children.[7]

58.     If the SOGI Rule applies to these faith-based organizations, then it requires them to abandon their core religious beliefs as a condition of receiving Title IV-E funding, contrary to Texas law.

## B. Federal Funding for Foster Care

59.     Federal funding for foster care is governed by Title IV-E of the Social Security Act, which is codified at 42 U.S.C. §§ 670–679c.  Title IV-E provides grants

---

[7] A list of these providers is located on the DFPS website. *See* http://www.dfps.state.tx.us/Adoption_and_Foster_Care/Adoption_Partners/private.asp (last visited Dec. 9, 2022). The particular requirements of each provider may be determined by clicking on a provider's name and accessing that provider's website.

to States for foster care, transitional independent living programs, adoption assistance, and kinship guardianship assistance, among other things. 42 U.S.C. § 670. Title IV-E operates through "the conditional grant of federal funds." *South Dakota v. Dole*, 483 U.S. 203, 207 (1987).

60. HHS administers Title IV-E at the federal level. DFPS administers Title IV-E grants at the state level.

61. To be eligible for payment under Title IV-E, a State must submit a plan for approval by the Secretary of HHS. *See* 42 U.S.C. § 671(a).

62. Title IV-E lists requirements for State plans in 42 U.S.C. § 671(a).

63. The Secretary must approve any State plan that complies with section 671(a). The Secretary does not have discretion to deny approval of any State plan that complies with § 671(a). *Id.* § 671(b) ("The Secretary shall approve any plan which complies with the provisions of subsection (a) of this section."); *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 661 (2007) (explaining that a statutory directive that an agency "shall approve" a state submission upon certain conditions "is mandatory" if the conditions are met and there is no contrary statute); *Luminant Generation Co. v. EPA*, 675 F.3d 917, 926 (5th Cir. 2012).

64. HHS must make payments to States with approved plans. HHS does not have discretion to deny payments to States with approved plans. *See* 42 U.S.C. § 674(a) ("For each quarter beginning after September 30, 1980, each State which has a plan approved under this part shall be entitled to a payment").

15

65.     Under this system, Congress can create incentives for States by adjusting the plan requirements in section 671(a).  At the same time, Congress limits the Secretary's ability to create incentives for States by requiring the Secretary to approve plans and make payments when a State satisfies section 671(a).

### C. Statutory Anti-Discrimination Requirements in Title IV-E of the Social Security Act

66.     Title IV-E contains an express anti-discrimination provision.  It requires state plans to prohibit discrimination on the basis of "race, color, or national origin":

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which— … (18) not later than January 1, 1997, provides that neither the State nor any other entity in the State that receives funds from the Federal Government and is involved in adoption or foster care placements may—(A) deny to any person the opportunity to become an adoptive or a foster parent, on the basis of the race, color, or national origin of the person, or of the child, involved; or (B) delay or deny the placement of a child for adoption or into foster care, on the basis of the race, color, or national origin of the adoptive or foster parent, or the child, involved.

42 U.S.C. § 671(a).

67.     Title IV-E also contains an express anti-discrimination provision concerning out-of-jurisdiction adoptions:

> In order for a State to be eligible for payments under this part, it shall have a plan approved by the Secretary which— … (23) provides that the State shall not—(A) deny or delay the placement of a child for adoption when an approved family is available outside of the jurisdiction with responsibility for handling the case of the child.

42 U.S.C. § 671(a)(23).

68.     The scope of Title IV-E's anti-discrimination provisions reflects Congress's deliberate choice.  It differs from a similar anti-discrimination provision in Title IV-A, which prohibits different kinds of discrimination, including age and

16

disability discrimination.  42 U.S.C. § 608(d); *see also* 42 U.S.C. § 603(a)(5)(I)(iii) (prohibiting sex discrimination in some contexts).

69.     To enforce Title IV-E's anti-discrimination provisions, Congress created a detailed remedial scheme.  42 U.S.C. § 674(d).

70.     If a State violates the statutory anti-discrimination requirements, HHS reduces the State's funding for that fiscal quarter.  That funding is reduced by amounts that vary from 2 percent to 5 percent, depending on the number of violations in that fiscal year.  *Id.* § 674(d)(1)(A)–(C).  This provision reflects Congress's determination about the appropriate incentives to give States.  *Cf. Dole*, 483 U.S. at 211 (finding conditional spending legislation not coercive because "all [the State] would lose … is 5% of the funds otherwise obtainable under specified highway grant programs").

71.     A non-State entity that violates the statutory anti-discrimination requirements must return all of the state funding it received that quarter.  42 U.S.C. § 674(d)(2).

72.     Both States and non-State entities can face private lawsuits from individuals "aggrieved by a violation of" the statutory anti-discrimination provision concerning race, color, or national origin.  42 U.S.C. § 674(d)(3).

73.     The scope of these enforcement provisions reflects Congress's deliberate choice.  Congress could have chosen to enforce anti-discrimination requirements in a different way, but it did not.

### D. Adoption of the SOGI Rule

74.     On July 13, 2016, HHS proposed the SOGI Rule, which would add regulatory anti-discrimination requirements on top of those Congress has provided by statute.  81 Fed. Reg. 45,270.

75.     Specifically, HHS proposed to add two new paragraphs to 45 C.F.R. section 75.300:

> (c)     It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

> (d)     In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples.  This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

76.     HHS claimed that these changes were "based on existing law or HHS policy" but acknowledged they "were not previously codified in regulation."  81 Fed. Reg. 45,270.  HHS professed a belief that the changes were "non-controversial."  81 Fed. Reg. 45,271.

77.     The SOGI Rule was published as final on December 12, 2016.  81 Fed. Reg. 89,393.  It remains in effect today.

78.     The SOGI Rule does not contain any exception for religiously motivated individuals or entities.

79.   In promulgating the SOGI Rule, HHS relied on only one statute for authority: 5 U.S.C. § 301.  *See* 81 Fed. Reg. 89,395 ("The authority citation for 45 CFR part 75 continues to read as follows: Authority: 5 U.S.C. 301."); 81 Fed. Reg. 45,272 (same).

80.   Section 301 provides:

> The head of an Executive department or military department may prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use, and preservation of its records, papers, and property. This section does not authorize withholding information from the public or limiting the availability of records to the public.

5 U.S.C. § 301.

81.   The Supreme Court has called section 301 a "housekeeping statute" because it authorizes agencies "to regulate [their] own affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979).

82.   The Housekeeping Statute applies to many different federal agencies. It "is not a statute that [HHS] is charged with administering." *Metro. Stevedore Co. v. Rambo*, 521 U.S. 121, 137 n.9 (1997); *see also Collins v. NTSB*, 351 F.3d 1246, 1253 (D.C. Cir. 2003) ("For generic statutes like the APA, FOIA, and FACA, the broadly sprawling applicability undermines any basis for deference, and courts must therefore review interpretative questions de novo.").

83.   HHS did not propose to apply the SOGI Rule to the Temporary Assistance for Needy Families Program ("TANF"), a program governed by Title IV-A. HHS noted that "[t]he TANF statute, 42 U.S.C. 608(d), already identifies the nondiscrimination provisions that can be applied to TANF." 81 Fed. Reg. 45,271. The

TANF statute specifies that "any program or activity which receives [TANF] funds" must comply with specified federal anti-discrimination statutes. 42 U.S.C. § 608(d). Those statutes prohibit discrimination on the basis of race, color, national origin, age, and disability. They do not prohibit other types of discrimination covered by the SOGI Rule.

### E. The SOGI Rule Does Not Apply to Child Placing Agencies in Texas

84.     By its terms, the SOGI Rule applies only to "[r]ecipients," like DFPS. 45 C.F.R. § 75.300(c). It does not apply to entities that receive funding from DFPS. *See* 45 C.F.R. § 75.2 (defining "recipients" to exclude "subrecipients").

85.     In both the legacy system and the CBC system, child placing agencies are not recipients.

86.     The SOGI Rule does not "flow down" to subrecipients because the SOGI Rule itself specifically indicates that its application is limited to recipients. 45 C.F.R. § 75.101(b)(1).

87.     But even if the SOGI Rule did apply to subrecipients, it would not apply to contractors. No regulation suggests the SOGI Rule would apply to DFPS's contractors.

88.     In fact, federal regulations provide that the SOGI Rule does not apply to HHS's contractors. *See* 45 C.F.R. § 75.101(b)(1) (table) (showing "Subparts C-D, except for §§ 75.202, 75.303, 75.351-.353" "[a]re NOT applicable to" "[p]rocurement contracts"). Because the SOGI Rule does not apply to HHS's contractors, it should not, and does not, apply to a recipient's or subrecipient's contractors, either.

89.     In both the legacy system and the CBC system in Texas, child placing agencies are contractors, not recipients or subrecipients.

90.     In the legacy system, DFPS uses procurement contracts to procure the services of child placing agencies.

91.     DFPS's use of procurement contracts is consistent with 45 C.F.R. § 75.201(a): "The HHS awarding agency or pass-through entity must decide on the appropriate instrument for the Federal award (*i.e.*, grant agreement, cooperative agreement, or contract) in accordance with the Federal Grant and Cooperative Agreement Act (31 U.S.C. § 6301–08)."

92.     The Federal Grant and Cooperative Agreement Act requires federal executive agencies to

> use a procurement contract as the legal instrument reflecting a relationship between the United States Government and a State, a local government, or other recipient when—(1) the principal purpose of the instrument is to acquire (by purchase, lease, or barter) property or services for the direct benefit or use of the United States Government; or (2) the agency decides in a specific instance that the use of a procurement contract is appropriate.

31 U.S.C. § 6303.

93.     The principal purpose of the procurement contracts between DFPS and child placing agencies is for DFPS to acquire the services of those agencies for DFPS's direct benefit or use.  DFPS partners with child placing agencies to provide care and services to children in need.  DFPS views the children in its care as the beneficiaries of its services.  To that end, its funding is understood to benefit them.

94.     DFPS decided that a procurement contract is an appropriate instrument for reflecting its relationship with a child placing agency.

21

95.   In the new CBC system, DFPS issues a sub-award to CBCs, and CBCs use procurement contracts to procure the services of child placing agencies.

96.   This use of procurement contracts also is consistent with the Federal Grant and Cooperative Agreement Act.

97.   For Texas, the principal purpose of the procurement contracts between CBCs and child placing agencies is to acquire the services of those agencies for DFPS's and the CBCs' direct benefit or use.  That allows DFPS and the CBCs to better serve children in foster care.

98.   DFPS and the CBCs decided that a procurement contract is an appropriate instrument for reflecting their relationship with child placing agencies.

99.   In neither the legacy system nor the CBC system would the use of grant agreements or cooperative agreements be required to reflect the status of child placing agencies.  The principal purpose of the relationship with child placing agencies is not "to transfer a thing of value to the [child placing agencies] to carry out a public purpose of support or stimulation"; it is to "acquir[e] … property or services." 31 U.S.C. §§ 6304(1), 6305(1).

## F.  If Plaintiff Were Found to Have Violated the SOGI Rule, It Would Lose Significant Funding

100.   Even though Plaintiff believes, based on its good-faith interpretation of the relevant law, it is not violating the SOGI Rule, it still faces a serious threat that the SOGI Rule will be enforced against it because its intended future conduct is "*arguably* … proscribed by [the policy in question]." *Speech First, Inc. v. Fenves*, 979

F.3d 319, 330 (5th Cir. 2020) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162–64 (2014)) (emphasis added; alterations in original).

101.   The existence of the SOGI Rule implies a threat of enforcement.  *See Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012) ("The existence of the statute constitutes the government's commitment to prosecute in accordance with it and, thus, a concrete prospect of future harm for one who would flout it.").

102.   The federal government publishes guidance regarding the audit procedures applicable to Title IV-E programs. In a section entitled "Compliance Requirements," it provides: "Both States and tribes are subject to the requirements of 2 CFR part 200, subpart E, as implemented by HHS at 45 CFR part 75." [8] As a result, it is likely that Defendants will consider compliance with Part 75 during future audits.  The SOGI Rule is contained in Part 75.  *See* 45 C.F.R. § 75.300.

103.   The Western District of Michigan preliminarily enjoined Defendants from enforcing the SOGI Rule after it found the threat of enforcement to be sufficiently credible.  *See Buck v. Gordon*, 429 F. Supp. 3d 447, 466 (W.D. Mich. 2019) (noting "concern that [Michigan] will lose all federal funding for foster and adoption services if the federal government enforces § 75.300(c)" and that "[t]he federal government has not denied that risk").

104.   Plaintiff faces a credible threat of future enforcement.

---

[8] Office of Management and Budget, 2 CFR Part 200, Appendix XI Compliance Supplement, at 4-93.658-7 (April 2022), https://www.whitehouse.gov/wp-content/uploads/2022/05/2022-Compliance-Supplement_PDF_Rev_05.11.22.pdf (last visited Dec. 9, 2022).

105.    If Defendants determine that Plaintiff has violated the SOGI Rule, they will reduce or eliminate Plaintiff's Title IV-E funding. *See* 45 C.F.R. § 75.371 (listing remedies for non-compliance with "the terms and conditions of a Federal award"); *see also id.* § 75.300(a) ("The Federal awarding agency must communicate to the non-Federal entity all relevant public policy requirements, including those in general appropriations provisions, and incorporate them either directly or by reference in the terms and conditions of the Federal award."); *id.* § 75.210(b)(1) ("HHS awarding agencies must incorporate the following general terms and conditions either in the Federal award or by reference, as applicable: … (ii) National policy requirements.").

106.    Plaintiff faces serious injuries. It must either risk losing critical funding or refuse to work with child placing agencies that do not comply with the SOGI Rule. Either a loss of funding or a loss of non-compliant child placing agencies would make it more difficult to care for Texas's foster children. In either event, children in foster care would suffer needlessly.

107.    Moreover, the SOGI Rule deters child placing agencies from working with DFPS. The SOGI Rule is deterring some religious organizations from providing foster care services with the State of Texas. As a result, there are fewer child placing agencies serving children in foster care. That harms both foster children and Plaintiff.

108.    States "are entitled to 'special solicitude' in [the court's] standing" analysis. *Texas v. United States*, 809 F.3d 134, 151 (5th Cir. 2015), *aff'd*, 136 S. Ct.

24

2271 (2016). And threatened loss of federal funds is sufficient injury to satisfy Article III. *Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019).

## V.     CLAIMS

### COUNT I
### 42 U.S.C. §§ 670-679c; 45 C.F.R. § 75.300
### Declaratory Judgment

109.    Plaintiff incorporates by reference all other paragraphs.

110.    The SOGI Rule, 45 C.F.R. § 75.300(c)–(d), which is promulgated under Title IV-E of the Social Security Act, 42 U.S.C. §§ 670–679c, does not regulate the conduct of the contractors who serve—or would serve—as child placing agencies in Texas.

111.    The SOGI Rule does not prohibit Texas from contracting with child placing agencies that do not comply with the SOGI Rule.

112.    The Court should declare that the Texas foster care system does not violate the SOGI Rule.

### COUNT II
### Violation of the Administrative Procedure Act
### Agency Action Not in Accordance with Law

113.    Plaintiff incorporates by reference all other paragraphs.

114.    The SOGI Rule is not in accordance with law because it contradicts and undermines the statutes governing Title IV-E funding.

115.    By passing statutory anti-discrimination requirements applicable to Title IV-E funding, Congress carefully considered and adopted the protections it deemed necessary and appropriate in this context.  Congress did not leave this issue open to regulatory amendment, nor create a gap for HHS to fill.  HHS does not have

discretion to impose additional anti-discrimination requirements, like the SOGI Rule, through regulation under the Housekeeping Statute—and any other statute could not authorize the SOGI Rule. *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

116.    The SOGI Rule contradicts and undermines Title IV-E by deviating from the anti-discrimination requirements found in the statute and by changing the way anti-discrimination requirements are enforced, regardless of whether they are found in the statute.

117.    Moreover, withholding Title IV-E funds based on the SOGI Rule would be inconsistent with the statutes requiring Defendants to make Title IV-E payments to States with approved plans.

118.    Congress gave the Secretary a mandatory duty to approve plans that comply with the statutory criteria, including the statutory anti-discrimination requirements.

119.    Congress gave the Secretary a mandatory duty to make payments to States with approved plans.

120.    For HHS to withhold Title IV-E funding for reasons not grounded in a federal statute—including for failure to comply with the SOGI Rule—would violate Title IV-E. In that situation, the Secretary would have violated his mandatory duties.

121.   Even if the general housekeeping statute otherwise authorized the promulgation of regulations like the SOGI Rule, it does not do so here because that would override the specific statutory framework provided in Title IV-E.  *See Schism v. United States*, 316 F.3d 1259, 1280 (Fed. Cir. 2002) ("A reasonable lawyer advising the Secretary of Defense or any of the service secretaries at the time could not have claimed that § 301 created the right to make promises of lifetime health care (beyond space available care) because there were other statutes controlling retiree care at the time.").

122.   Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

123.   Plaintiff has no adequate remedy at law.

124.   Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

## COUNT III
## Violation of the Administrative Procedure Act
## Agency Action in Excess of Statutory Authority and Limitations

125.   Plaintiff incorporates by reference all other paragraphs.

126.   The SOGI Rule is not in accordance with law because it exceeds HHS's power under the Housekeeping Statute.

127.   "[A]n agency literally has no power to act … unless and until Congress confers power upon it." *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986). "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988).

27

128.     HHS asserted only one statutory basis for the SOGI Rule: the Housekeeping Statute, 5 U.S.C. § 301. *See* 81 Fed. Reg. 89,395.

129.     But that provision did not authorize HHS to promulgate the SOGI Rule.

130.     The Housekeeping Statute is "simply a grant of authority to the agency to regulate its own affairs." *Chrysler Corp. v. Brown*, 441 U.S. 281, 309 (1979). "It is indeed a 'housekeeping statute,' authorizing what the APA terms 'rules of agency organization[,] procedure[,] or practice' as opposed to 'substantive rules.'" *Id.* at 310 (quoting 5 U.S.C. § 553).

131.     The SOGI Rule is a substantive rule because it "affect[s] individual rights and obligations." *Id.* at 302 (quotation omitted).  By conditioning grant funding on compliance with the SOGI Rule, HHS promulgated a rule in which "the rights of individuals are affected." *Mass. Fair Share v. Law Enforcement Assistance Admin.*, 758 F.2d 708, 711–12 (D.C. Cir. 1985) (quotation omitted) (holding that the rights of individuals are affected by "procedures for treatment of applications for grants under the Urban Crime Prevention Program").

132.     Under "the substantial impact test," the SOGI Rule is substantive because it requires Texas to choose between losing significant federal funding and changing its foster care policy. *Texas v. United States*, 809 F.3d 134, 176 (5th Cir. 2015) (holding that DAPA was substantive because it "force[d] the state to choose between spending millions of dollars to subsidize driver's licenses and changing its law"); *Texas v. United States*, 787 F.3d 733, 765–66 (5th Cir. 2015) (same).

133.   The SOGI Rule is a substantive rule because it affects eligibility for federal funding.  *See Nat'l Ass'n of Home Health Agencies v. Schweiker*, 690 F.2d 932, 949 (D.C. Cir. 1982) (holding a rule affecting the process home health agencies used to secure Medicare reimbursement was substantive, not procedural).  It "change[s] the *substantive standards* by which the [agency] evaluates applications which seek a benefit that the agency has the power to provide."  *Texas*, 809 F.3d at 176–77; *see also Texas v. United States*, 50 F.4th 498, 524 (5th Cir. 2022); *Texas v. United States*, 328 F. Supp. 3d 662, 729 (S.D. Tex. 2018); *La Union del Pueblo Entero v. FEMA*, 141 F. Supp. 3d 681, 710 (S.D. Tex. 2015).

134.   The SOGI Rule is a substantive rule because it "encodes a substantive value judgment or puts a stamp of approval or disapproval on a given type of behavior."  *Am. Hosp. Ass'n v. Bowen*, 834 F.2d 1037, 1047 (D.C. Cir. 1987).

135.   HHS promulgated the SOGI Rule through notice-and-comment rulemaking, which is required for a substantive rule but not for "rules of agency organization, procedure, or practice."  5 U.S.C. § 553(b).

136.   Moreover, the major policy change HHS seeks to implement through the SOGI Rule is not one that Congress authorized to be advanced through the Housekeeping Statute. Congress "does not, one might say, hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001).  In light of the significant policy debates concerning issues addressed in the SOGI Rule, it is particularly implausible to say Congress authorized HHS to control States' policies regarding those issues in the Housekeeping Statute. *See Gonzales v. Oregon*, 546

U.S. 243, 267 (2006) ("The importance of the issue of physician-assisted suicide, which has been the subject of an 'earnest and profound debate' across the country, makes the oblique form of the claimed delegation all the more suspect."). In passing the Housekeeping Statute, Congress did not authorize the SOGI Rule.

137.   The SOGI Rule implicates major questions that Congress would not — and did not—delegate to HHS in the Housekeeping Statute. Under the major-questions doctrine, the Court should not "conclud[e] that Congress … intended such an implicit delegation." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000). The doctrine provides that when an agency seeks to resolve a major question, a "merely plausible textual basis for the agency action" is not enough. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022). "The agency instead must point to 'clear congressional authorization' for the power it claims." *Id.* (quoting *Utility Air Reg. Grp. v. EPA*, 573 U.S. 302, 324 (2014)). HHS cannot do so here.

138.   Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

139.   Plaintiff has no adequate remedy at law.

140.   Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

### COUNT IV
### Violation of the Administrative Procedure Act
### Arbitrary and Capricious Agency Action

141.   Plaintiff incorporates by reference all other paragraphs.

142.   The APA prohibits agency actions that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

143.    HHS declined to extend the SOGI Rule to Title IV-A funding because "[t]he TANF statute, 42 U.S.C. § 608(d), already identifies the nondiscrimination provisions that can be applied to TANF." 81 Fed. Reg. 45,271.  Because Title IV-A's anti-discrimination requirement and the SOGI Rule differ in scope, 42 U.S.C. § 608(d), HHS concluded the SOGI Rule should not apply to Title IV-A funding.  81 Fed. Reg. 45,271.  *See also* 45 C.F.R. § 75.101(f) ("Section 75.300(c) does not apply to the Temporary Assistance for Needy Families Program (title IV-A of the Social Security Act, 42 U.S.C. § 601–619).").

144.    HHS's only explanation for not extending the SOGI Rule to Title IV-A funding applies equally to Title IV-E funding.  Like Title IV-A, Title IV-E contains express anti-discrimination provisions.  And like the Title IV-A provisions, the Title IV-E provisions do not cover religion, sexual orientation, gender identity, or same-sex marriage status.

145.    But HHS failed to apply the same logic to Title IV-E funding.

146.    HHS did not provide any reason for treating Title IV-E funding differently from Title IV-A funding. *Cf. Portland Cement Ass'n v. EPA*, 665 F.3d 177, 187 (D.C. Cir. 2011) ("an agency must have a similar obligation to acknowledge and account for a changed regulatory posture the agency creates—especially when the change impacts a contemporaneous and closely related rulemaking"); *Office of Commc'n of the United Church of Christ v. FCC*, 707 F.2d 1413, 1441–42 (D.C. Cir. 1983) (finding it "seriously disturbing" and "almost beyond belief" that an agency

would take rulemaking action undercutting another "concurrent" rulemaking process).

147.   Such "[i]llogic and internal inconsistency are characteristic of arbitrary and unreasonable agency action." *Chamber of Commerce v. Dep't of Labor*, 885 F.3d 360, 382 (5th Cir. 2018). HHS's action is "paradoxical" in a way that "signals arbitrary and capricious agency action." *Sw. Elec. Power Co. v. EPA*, 920 F.3d 999, 1016 (5th Cir. 2019).

148.   Even if there were some avenue to explain or justify HHS's apparent inconsistency, it would be irrelevant because the agency did not provide any such explanation or justification in the Federal Register.  *See SEC v. Chenery Corp.*, 318 U.S. 80, 87 (1943) ("The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.").

149.   Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

150.   Plaintiff has no adequate remedy at law.

151.   Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

## COUNT V
## Violation of the Administrative Procedure Act
### Arbitrary and Capricious Agency Action

152.   Plaintiff incorporates by reference all other paragraphs.

153.   The SOGI Rule is arbitrary and capricious because HHS failed to account for important considerations before adopting it. *Michigan v. EPA*, 135 S. Ct.

2699, 2706 (2015) ("[A]gency action is lawful only if it rests 'on a consideration of the relevant factors.'").

154.    HHS's consideration of the SOGI Rule was cursory.  It did not analyze factors relevant to the policy decision it was making.

155.    Remarkably, HHS did not consider whether the SOGI Rule would be good or bad for children in foster care.  It did not analyze whether the SOGI Rule would decrease the quantity or quality of child placing agencies by driving away non-compliant organizations.  *See* 81 Fed. Reg. 89,393; 81 Fed. Reg. 45,270.

156.    HHS itself acknowledges that its foster care program is designed "to provide safe and stable out-of-home care for children."[9]  At all points during the foster care process, decisions are supposed to be made based on the child's welfare.  *See, e.g.*, 42 U.S.C. § 672(a)(2)(A)(ii) (requiring "the removal and foster care placement" to be "in accordance with … a judicial determination to the effect that continuation in the home from which [the child was] removed would be contrary to the welfare of the child"); 45 C.F.R. § 1355.25(a) ("The safety and well-being of children and of all family members is paramount.").

157.    A rule governing foster care that fails to consider the best interests of children in foster care is not the result of "reasoned decisionmaking."  *Michigan*, 135 S. Ct. at 2706.

158.    HHS also did not consider the religious-liberty interests of individuals and organizations who serve foster children.  *See* 81 Fed. Reg. 89,393; 81 Fed. Reg.

---

[9]    HHS Children's Bureau, Title IV-E Foster Care (May 17, 2012), https://www.acf.hhs.gov/cb/grant-funding/title-iv-e-foster-care (last visited Dec. 9, 2022).

45,270.  Religious liberty is vitally important, both under federal and state law and as a policy matter.  Indeed, HHS itself has been charged with enforcing statutory protections for religious liberty.[10]  In this context, HHS's failure to even consider religious liberty as a factor means it did not engage in "reasoned decisionmaking." *Michigan*, 135 S. Ct. at 2706.

159.    For these and other reasons, it should have been obvious to HHS that the SOGI Rule would be controversial.  But HHS professed a belief that it would be "non-controversial." 81 Fed. Reg. 45,271.  That reflects a lack of serious consideration by HHS.

## COUNT VI
## Violation of the Spending Clause of the U.S. Constitution Clear-Statement Requirement

160.    Plaintiff incorporates by reference all other paragraphs.

161.    Article I, Section 8 of the United States Constitution—the Spending Clause—provides:  "The Congress shall have Power To lay and collect Taxes, Duties, Imposts and Excises, to pay the Debts and provide for the common Defence and general Welfare of the United States; but all Duties, Imposts and Excises shall be uniform throughout the United States."  U.S. Const. art. I, § 8, cl. 1.

162.    When Congress exercises its Spending Clause power against the States, any conditions on federal funds given to States must enable a state official to "clearly understand," from the language of the law itself, what conditions the State is agreeing

---

[10] HHS Office of Civil Rights, Laws and Regulations Enforced by OCR, https://www.hhs.gov/civil-rights/for-providers/laws-regulations-guidance/laws/index.html (last visited Dec. 9, 2022).

to when accepting the federal funds. *Arlington Cent. Sch. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). "The legitimacy of Congress's exercise of the spending power 'thus rests on whether the State voluntarily and knowingly accepts the terms of the "contract."'" *NFIB*, 567 U.S. at 577 (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981)). The SOGI Rule, promulgated well after Texas started accepting Title IV-E funding, is not in accord with the understanding that existed at that earlier time. *See Bennett v. New Jersey*, 470 U.S. 632, 638 (1985) (explaining "that changes in substantive requirements for federal grants should not be presumed to operate retroactively").

163. In Title IV-E, Congress did not impose any anti-discrimination requirements related to religion, sexual orientation, gender identity, or same-sex marriage status.

164. Thus, no State could fathom, much less "clearly understand," that Title IV-E would impose on it the conditions created by the SOGI Rule.

165. The SOGI Rule itself cannot satisfy the clear-statement requirement because only Congress can impose conditions on federal spending programs. *See Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) ("insisting that *Congress* speak with a clear voice") (emphasis added). But even if Congress could authorize federal agencies to impose additional requirements, it would have to do so clearly. Here, Congress did not clearly authorize HHS to impose additional requirements on Title IV-E funding.

166.   Moreover, the SOGI Rule itself is unclear.  Plaintiff believes the SOGI Rule does not apply to its contractors, but even if the Court disagrees, the SOGI Rule does not *clearly* apply to contractors.  Nor does it clearly require DFPS to require that contractors comply with the SOGI Rule.

167.   The SOGI Rule violates the Spending Clause of the United States Constitution.

168.   Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

169.   Plaintiff has no adequate remedy at law.

170.   Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

## COUNT VII
## Violation of the Spending Clause of the U.S. Constitution
## Coercion

171.   Plaintiff incorporates by reference all other paragraphs.

172.   The federal government cannot use its Spending Clause power to coerce the States, even when it follows proper notice procedures.

173.   Even if a law otherwise satisfies the requirements of the Spending Clause, it is still unconstitutional if it amounts to coercion or compulsion.  *See Dole*, 483 U.S. at 211 ("Our decisions have recognized that in some circumstances the financial inducement offered by Congress might be so coercive as to pass the point at which 'pressure turns into compulsion.'" (quoting *Steward Mach. Co. v. Davis*, 301 U.S. 548, 590 (1937))).  Congress may "not us[e] financial inducements to exert a 'power akin to undue influence.'" *NFIB*, 567 U.S. at 577 (plurality op.) (quoting

*Steward Mach. Co.*, 301 U.S. at 590).  There is a crucial constitutional line "between duress and inducement." *Steward Mach. Co.*, 301 U.S. at 586.

174.   The SOGI Rule is coercive.  The SOGI Rule imposes new conditions on the continued receipt of all funds under Title IV-E.  The ability of Texas to care for its many foster children strongly depends on Title IV-E funds, as it has for many years.  The amount of that funding is substantial.  Were Defendants to strip that funding, the results would impose extreme hardship on Texas children by denying them access to badly needed foster care services.

175.   Given these circumstances, the SOGI Rule hardly provides Plaintiff with "a legitimate choice." *NFIB*, 567 U.S. at 578.  Instead, it constitutes a "threat" whose object is to compel Plaintiff to implement new policies.  *Id.* at 580.

176.   The Supreme Court found unconstitutional an attempt to coerce States under the Affordable Care Act because "such conditions take the form of threats to terminate other significant independent grants," and are therefore "properly viewed as a means of pressuring the States to accept policy changes." *Id.*

177.   Defendants' actions and the SOGI Rule violate the Spending Clause of the United States Constitution.

178.   Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

179.   Plaintiff has no adequate remedy at law.

180.   Absent injunctive, declaratory, and vacation relief against  the  SOGI Rule, Plaintiff has been and will continue to be harmed.

## COUNT VIII
## Violation of the Spending Clause of the U.S. Constitution
## General Welfare

181.   Plaintiff incorporates by reference all other paragraphs.

182.   Any "exercise of the spending power must be in pursuit of 'the general welfare.'" *Dole*, 483 U.S. at 207.  "It is for Congress to decide which expenditures will promote the general welfare." *Buckley v. Valeo*, 424 U.S. 1, 90 (1976).  And when Congress makes a decision, "courts should defer substantially to the judgment of Congress." *Dole*, 483 U.S. at 207.  "The discretion belongs to Congress, unless the choice is clearly wrong, a display of arbitrary power, not an exercise of judgment." *Helvering v. Davis*, 301 U.S. 619, 640 (1937).

183.   But in this case, Congress has not decided that the SOGI Rule, or anything like it, promotes the general welfare.  Congress has not exercised its judgment, except insofar as it has rejected legislative proposals similar to the SOGI Rule and has limited Plaintiff's anti-discrimination obligations to the ones listed in statute.

184.   Because the power to "attach conditions on the receipt of federal funds" is "[i]ncident to" Congress's power under the Spending Clause, *Dole*, 483 U.S. at 206, it is subject to the limitations placed on the spending power.  Thus, only Congress can impose spending conditions.

185.   In promulgating the SOGI Rule, Defendants did not—and did not purport to—follow a statutory funding condition set by Congress.  Instead, they relied on the Housekeeping Statute, which provides no substantive guidance.  Thus, Defendants, not Congress, imposed the SOGI Rule as a spending condition.

186.    In these circumstances, there is no reason for the Court to defer to Defendants' understanding of the "general Welfare." U.S. Const. art. I, § 8.

187.    The SOGI Rule in fact does not provide for the general welfare. It is contrary to the general welfare because it would prevent Plaintiff from maintaining "a diverse network of service providers" crucial to the foster care system. Tex. Hum. Res. Code § 45.001. Regardless, that determination was not for Defendants to make.

188.    Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

189.    Plaintiff has no adequate remedy at law.

190.    Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

## COUNT IX
## Violation of Article I, Section 1 of the U.S. Constitution
## Non-Delegation

191.    Plaintiff incorporates by reference all other paragraphs.

192.    If—contrary to Plaintiff's allegations above—the Housekeeping Statute authorizes HHS to regulate Plaintiff through the SOGI Rule, it does so without providing an "intelligible principle." *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality). The Housekeeping Statute does not guide HHS's discretion at all.

193.    The Housekeeping Statute passes constitutional muster insofar as it authorizes "rules of agency organization[,] procedure[,] or practice." *Chrysler Corp.*, 441 U.S. at 310. It is presumably "necessary and proper for carrying into Execution" "[t]he executive Power" vested in the President and delegated to his subordinates. U.S. Const. art. I, § 8, art. II, § 1.

194.    But insofar as the Housekeeping Statute authorizes substantive rules regulating Plaintiff and conditioning federal funds, it impermissibly delegates legislative power to executive branch officials.

195.    Because the Housekeeping Statute does not provide an intelligible principle, it cannot authorize the SOGI Rule.

196.    The SOGI Rule violates the Legislative Vesting Clause. *See* U.S. Const. art. I, § 1.

197.    Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

198.    Plaintiff has no adequate remedy at law.

199.    Absent injunctive, declaratory, and vacation relief against the SOGI Rule, Plaintiff has been and will continue to be harmed.

## DEMAND FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court:

a.    Declare that the SOGI Rule does not apply to child placing agencies in Texas;

b.    Declare that the SOGI Rule does not support reducing or eliminating Plaintiff's federal funding;

c.    Declare that the SOGI Rule is invalid under the Administrative Procedure Act;

d.    Declare that the SOGI Rule is invalid under the United States Constitution;

e.    Hold unlawful and set aside, *i.e., vacate*, the SOGI Rule;

f.    Issue permanent injunctive relief enjoining Defendants from enforcing the SOGI Rule;

g.    Award such other and further relief as it deems equitable and just.

40

Dated: December 12, 2022

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

AARON F. REITZ
Deputy Attorney General
for Legal Strategy

Respectfully submitted,

WILLIAM T. THOMPSON
Acting Chief, Special Litigation Unit

*/s/ Ryan D. Walters*
RYAN D. WALTERS
*Attorney-in-Charge*
Special Counsel
Texas Bar No. 3369185

OFFICE OF THE ATTORNEY GENERAL
SPECIAL LITIGATION UNIT
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Tel.: (512) 936-2714
Fax: (512) 457-4410
ryan.walters@oag.texas.gov

*Counsel for Plaintiff State of Texas*