# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

STATE OF TEXAS,

     *Plaintiff*,

v.

XAVIER BECERRA, *in his official capacity as Secretary of Health and Human Services*,
UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES,
and
UNITED STATES OF AMERICA,

     *Defendants*.

Civil Action No. 3:22-0419

## DEFENDANTS' MOTION TO DISMISS FOR LACK OF JURISDICTION

# **TABLE OF CONTENTS**

Statement of the Nature and Stage of the Proceeding ........................................................... 1

Statement of the Issues ........................................................................................................... 1

Summary of the Argument ...................................................................................................... 1

Background ............................................................................................................................... 1

    I.      Regulatory Background ................................................................................... 1

    II.     Texas's Litigation against HHS ...................................................................... 4

Legal Standard ......................................................................................................................... 5

Argument .................................................................................................................................. 6

    I.      Texas Lacks Standing. ..................................................................................... 6

    II.     This Case Is Unripe. ...................................................................................... 11

Conclusion ............................................................................................................................. 14

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Nearly three years ago, this Court dismissed a materially identical complaint challenging Defendant Department of Health and Human Services' non-discrimination grants regulations, 45 C.F.R. § 75.300(c)–(d). Plaintiff State of Texas argued then, as it does now, that § 75.300(c)–(d) violates the Administrative Procedure Act (APA) and the U.S. Constitution. This Court held that the case was moot because HHS had committed not to enforce § 75.300(c)–(d) pending promulgation of a new rule. Because that commitment remains as effective today as it was when the previous case was dismissed, HHS once again seeks dismissal for lack of jurisdiction.

## STATEMENT OF THE ISSUES

Whether the Court should adhere to its prior determination that it lacked jurisdiction to review a challenge to a regulation that has never been and is not currently being enforced.

## SUMMARY OF THE ARGUMENT

This case should be dismissed because there is no Article III case or controversy and because it is unripe. The Court has already held that it lacked jurisdiction over a materially identical complaint because Texas's fear of an enforcement action were baseless in light of HHS's commitment not to enforce § 75.300(c)–(d). And for similar reasons, prudence dictates that the Court not adjudicate issues that are so inchoate that they may never materialize.

## BACKGROUND

### I.      Regulatory Background

As a grantor of federal awards, HHS has established a regulatory framework that

governs the administration of those awards: the HHS Uniform Administrative

Requirements, Cost Principles, and Audit Requirements for HHS Awards. Plaintiff

challenges two provisions of that framework, which set forth "statutory and national policy

requirements" for most federal awards that HHS issues, including Foster Care and

Adoption grants awarded under Title IV-E of the Social Security Act:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

> (d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

45 C.F.R. § 75.300(c)–(d) (2016).

HHS has never enforced those provisions, *see* Health and Human Services Grant

Regulation, 81 Fed. Reg. 89,393 (Dec. 12, 2016) [hereinafter 2016 Grants Rule]. *See, e.g.*,

86 Fed. Reg. 2,257, 2,273 (Jan 12, 2021) [hereinafter 2021 Grants Rule]. And in November

2019, HHS published a notification in the Federal Register that "the regulatory actions,

promulgated through the [2016 Grants Rule], namely, the additions of . . . 75.300(c) and

(d) . . . will not be enforced pending repromulgation." Notification of Nonenforcement of

Health and Human Services Grant Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19,

2019) [hereinafter Notification of Nonenforcement or Notification]. Among other things,

HHS explained that the 2016 Grants Rule "raises significant concerns about compliance

with the requirements of the Regulatory Flexibility Act." *Id.* at 63,809.

As referenced in the Notification, HHS simultaneously issued a proposed rule to modify § 75.300(c)–(d). 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019). HHS subsequently issued a final rule on January 12, 2021, with an effective date of February 11, 2021. *See* 86 Fed. Reg. at 2,278. As a result of litigation challenging the 2021 Grants Rule, its effective date was postponed on several occasions. *See generally Facing Foster Care in Alaska v. HHS*, No. 1:21-cv-00308 (D.D.C. Feb. 2, 2021). HHS subsequently discovered anomalies in the process through which the 2021 Grants Rule was promulgated that led HHS to conclude that the rule had not been promulgated in compliance with procedural requirements of the Administrative Procedure Act (APA); HHS accordingly moved the *Facing Foster Care* court to remand the challenged portions of the rule with vacatur, *Facing Foster Care*, No. 1:21-cv-00308, Defs.' Mot. Remand 1, ECF No. 41 (D.D.C. June 17, 2022). In that motion, HHS reaffirmed the Notification of Nonenforcement, stating that "vacating the 2021 [Grants] Rule's formal repeal of the 2016 [Grants] Rule will not cause disruption or change the status quo" because "the 2016 [Grants] Rule has never been enforced, and HHS has stated publicly that it will not enforce the 2016 [Grants] Rule pending promulgation of a new rule." *Id*. at 8–9. The court granted the motion and vacated the 2021 Grants Rule. *See Facing Foster Care*, No. 1:21-cv-00308, Order, ECF No. 44 (D.D.C. June 29, 2022). HHS has not yet promulgated a new rule.

In addition to the Notification of Nonenforcement, which offers a blanket nonenforcement promise because of concerns with Regulatory Flexibility Act compliance, HHS issued letters to several states stating that it would not enforce 45 C.F.R. § 75.300(c)–

3

(d) in specific circumstances involving potential inconsistencies with the Religious Freedom Restoration Act (RFRA). One of these letters was issued in response to Texas's request that HHS "grant an exception from the application of § 75.300(c) and (d) for any faith-based, child-welfare service providers in Texas's Title IV-E program." *See* Letter from Roger T. Severino, Director, Office for Civil Rights, to Ken Paxton, Attorney General, Texas 2 (Mar. 5, 2020) [hereinafter Conditional Exception Letter]. Among other reasons, that letter was subsequently withdrawn as duplicative, because, pursuant to the Notification of Nonenforcement, "the non-discrimination provisions in the 2016 Rule that the waiver issued to Texas sought to address are not currently being enforced." *See* Letter from Lisa J. Pino, Director, Office for Civil Rights, to Ken Paxton, Attorney General, Texas (Nov. 18, 2021), https://www.hhs.gov/conscience/religious-freedom/state-letter-to-texas-withdrawing-exception-from-non-discrimination-requirements/index.html [hereinafter Withdrawal Letter]. Nothing in the Withdrawal Letter alters HHS's commitment not to enforce the 2016 Grants Rule, as explained in the Notification of Nonenforcement and its public pronouncements in the *Facing Foster Care* case, while HHS repromulgates a new rule.

## II.    Texas's Litigation against HHS

Texas, along with the Archdiocese of Galveston-Houston, filed a substantially similar complaint on October 31, 2019, one day before HHS issued the Notification of Nonenforcement. Specifically, the two entities claimed that the 2016 Grants Rule violated the APA, RFRA, the First Amendment, the Spending Clause, and the Nondelegation Doctrine. This Court dismissed that complaint on August 5, 2020, holding that there was

no jurisdiction because "the government has explicitly stated it will not enforce the challenged rule." *Texas v. Azar*, 476 F. Supp. 3d 570, 578 (S.D. Tex. 2020).

Despite the fact that the Notification of Nonenforcement remains in effect, Texas filed this Complaint challenging the 2016 Grants Rule on most of the same legal grounds (the Complaint no longer contains a First Amendment or RFRA claim). ECF No. 1.

## LEGAL STANDARD

Defendants file this Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which permits a party to seek dismissal for "lack of subject-matter jurisdiction." Such motions should be granted if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). This determination must be made at the outset: "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986)). Accordingly, the burden of proof rests with the party asserting jurisdiction. To test whether that party has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v.*

*United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir.1989)).

## ARGUMENT

For the same reasons that the Court lacked jurisdiction over the prior case, (I) Texas lacks standing and (II) this case is unripe for adjudication.[1]

### I. Texas Lacks Standing.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 37 (1976)). "Of the doctrines that have evolved under Article III, . . . the requirement that the litigant have standing is perhaps the most important." *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002).

At the pleading stage, "standing exists only when the party plausibly alleges three elements: '(1) an "injury in fact," (2) that is "fairly . . . trace[able] to the challenged action of the defendant," and (3) that is "likely . . . redress[able] by a favorable decision."'" *E.T. v. Paxton*, 19 F.4th 760, 765 (5th Cir. 2021) (quoting *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021)). The standing inquiry is "especially rigorous" when a plaintiff asks

---

[1] HHS argued that the prior case was moot because the Notification of Nonenforcement postdated the complaint (albeit by one day). Because Plaintiff filed this case long after the Notification was issued, HHS no longer seeks dismissal on mootness grounds, even though the reasons for dismissal remain the same. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the 'doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

the court to determine "whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013).

The primary defect in this Complaint is that Texas has not plausibly alleged an injury-in-fact, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *E.T.*, 19 F.4th at 765 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). Imminence is required "to ensure that the alleged injury is not too speculative for Article III purposes." *Amnesty Int'l USA*, 568 U.S. at 409 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)). To establish an injury-in-fact, "'allegations of *possible* future injury' are not sufficient"— at a minimum, the "threatened injury must be *certainly impending*." *Id.* (quoting *Whitmore*, 495 U.S. at 158). In the context of a pre-enforcement challenge to a regulation, that means that the plaintiff must plausibly allege that "there exists a credible threat of prosecution." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Texas lacks standing in this case for the same reasons that its claims were moot in the prior case: its alleged injuries are speculative. In both cases, Texas has argued that it is injured because it *may* lose funding if HHS enforces § 75.300(c)–(d) against it. But any suggestion that an enforcement action against Texas is "certainly impending" is pure speculation. HHS has never enforced § 75.300(c)–(d). And, as this Court previously observed, "[i]n the nonenforcement notice, HHS unequivocally states that it will not enforce the challenged provisions pending repromulgation." *Texas*, 476 F. Supp. 3d at 578

(citing 84 Fed. Reg. at 63,811). Based on HHS's statement, this Court held that HHS "'actually extinguish[ed] the controversy.'" *See id.* (quoting *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017)). And every other court to consider the question has determined that it similarly lacks jurisdiction to adjudicate a challenge to the 2016 Grants Rule in light of the Notification of Nonenforcement. S*ee Holston United Methodist Home for Children, Inc. v. Becerra*, No. 2:21-cv-185, 2022 WL 17084226, at *10 (E.D. Tenn. Nov. 18, 2022) ("Because the 2016 Grants Rule is, for all intents and purposes, defunct pursuant to the Notification of Nonenforcement, Holston Home faces no credible threat of prosecution."); *Am. College of Pediatrician v. Becerra*, No. 1:21-cv-195, 2022 WL 17084365, at *18 (E.D. Tenn. Nov. 18, 2022) (same); *Vita Nuova, Inc. v. Azar*, 458 F.Supp.3d 546, 558 (N.D. Tex. 2020) (holding that the plaintiff lacked standing to challenge § 75.300(d) because there was "no credible threat of enforcement"). Because any possibility of enforcement has been extinguished, this Court should once again conclude that "with no controversy, there is no jurisdiction." *Texas*, 476 F. Supp. 3d at 578.

The Notification of Nonenforcement is not the only reason why Texas lacks standing. To establish standing, Texas must also show that it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)). In *Susan B. Anthony List*, for example, the petitioners demonstrated such an intention because there was "a history of past enforcement" and because they "pleaded specific statements they intend to make in future election cycles" that the Supreme Court found to be prohibited by the challenged state law. *See id.* at 161–64.

Texas, by contrast, has not pleaded "facts plausibly showing," *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), an intention to violate § 75.300(c)–(d). At most, Texas asserts that "[s]everal faith-based providers receive Title IV-E funding through Texas DFPS" and that "[s]ome of these providers require potential foster care or adoptive parents to share a religious faith or agree to the provider's statement of faith." Compl. ¶ 57. Texas also asserts that "[s]ome have particular religious views on marriage, gender identity, and sexual orientation." *Id.* But these allegations are too vague to determine whether the unnamed providers would in fact violate § 75.300(c)–(d).

Indeed, Texas has *never* identified a particular agency that professes an intention to violate § 75.300(c)–(d), in this Complaint or otherwise. The Archdiocese, which never provided foster care services anyway, is no longer a party to this case. And even when HHS issued the Conditional Exception Letter, it noted that Texas had repeatedly failed to "identify any specific providers who complained of, or who Texas believed were being subjected to, a RFRA violation." *See* Conditional Exception Letter 2; *see also* Withdrawal Letter 2. All Texas has done is include a footnoted hyperlink to a list of foster and adoption agencies in Texas, along with a note that "[t]he particular requirements of each provider may be determined by clicking on a provider's name and accessing that provider's website." Compl. ¶ 57 n.7. These are not facts plausibly showing a provider's intention to violate § 75.300(c)–(d). And Texas cannot pass the buck by asking the Court to search the Internet for agencies that might run afoul of a regulation. *See Susan B. Anthony List*, 573 U.S. at 159–61 (summarizing cases in which the plaintiff set forth facts demonstrating an intent to violate the challenged law); *see also Crane v. Johnson*, 783 F.3d 244, 254 (5th

9

Cir. 2015) (holding that the plaintiffs lacked standing because they "provided no evidence that any agent has been sanctioned or is threatened with employment sanctions for detaining an alien and refusing to grant deferred action under DACA"). The absence of allegations identifying an agency in Texas that has violated the regulation in the past and intends to do so in the future is telling and undermines the plausibility of Texas's alleged injury.



Texas may have filed this Complaint, largely a carbon copy of its previous one, because HHS withdrew the Conditional Exception Letter. *See* Compl. ¶¶ 13, 19. But as HHS explained, its withdrawal of the Conditional Exception Letter had no effect on its nonenforcement commitment. The very first paragraph of the Withdrawal Letter states, "the non-discrimination provisions in the 2016 Rule that the waiver issued to Texas sought to address are not currently being enforced." Withdrawal Letter 1 (citing Notification of Nonenforcement, 84 Fed. Reg. at 63,809). HHS withdrew the Conditional Exception Letter because it was duplicative of the Notification of Nonenforcement, "overbroad[,] and did not properly apply the substantial burden requirement under RFRA." *Id.* Texas may not agree with HHS's reasoning, but as this Court previously held, "[t]he key question is whether the governmental entity has promised not to enforce the rule—not why it decided to do so." *Texas*, 476 F. Supp. 3d at 578. And once again, HHS has stated, pursuant to the Notification of Nonenforcement, that it will not to enforce § 75.300(c)–(d). Indeed, the only court to have considered its jurisdiction after the withdrawal letters were issued held that HHS's "rescission of religious exemptions also do[es] not raise a credible threat of

prosecution" because the Notification of Nonenforcement remains in effect. *See Holston United Methodist Home for Children, Inc.*, 2022 WL 17084226, at \*10.

The new Complaint also refers to two more recent cases involving § 75.300(c)–(d). *See* Compl. ¶¶ 14–18. But these cases only reinforce that there is no credible threat of enforcement against Texas. In *Facing Foster Care*, HHS reaffirmed its commitment to the Notification of Nonenforcement following a development that required vacatur of the most recent grants rule. *See* Defs.' Mot. Remand 1. And in *Family Equality*, the district court granted HHS's motion to dismiss a complaint challenging the Notification of Nonenforcement. *See Family Equality v. Becerra*, No. 1:20-cv-2403, 2022 WL 956256 (S.D.N.Y. Mar. 30, 2022). There simply is no live case or controversy.

## II.    This Case Is Unripe.

For similar reasons, this Court lacks jurisdiction because the Complaint is unripe. Ripeness is an "essential component[]" of "Article III's case-or-controversy requirement" because courts have no power to decide disputes that are not yet justiciable. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967).

To assess whether a particular claim is ripe for judicial review, a court must consider both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to

the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston,* 340 F.3d 279, 282 (5th Cir. 2003) (quotation omitted). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation omitted). Even when "the question presented" is "purely legal," it is unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented." *National Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 812 (2003); *see also Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (legal issue not ripe where judicial review "would stand on a much surer footing in the context of an application to a specific factual framework").

Texas's claims present issues that are not presently fit for judicial resolution because they require further factual development and are "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81 (quotation omitted). Texas's claims are premised on the speculative, subjective fear that HHS will enforce a regulation that it has expressly and publicly stated that it will not enforce. That is insufficient to establish a ripe controversy. *See, e.g.*, *Presbytery of N.J. of Orthodox Presbyterian Church v. Florio*, 830 F. Supp. 241, 249 (D.N.J. 1993), *aff'd in relevant part*, 40 F.3d 1454 (3d Cir. 1994) (holding case unripe with respect to plaintiff-church because defendants "conceded that they will not enforce the [statute] against" plaintiff-church); *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d

12

937, 944 (9th Cir. 2013) (holding that "a state official who contends that he or she will not enforce the law may challenge plaintiff's Article III standing based on 'an unripe controversy'" (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 847 (9th Cir. 2002))).

This case is also unripe because Texas is unable to show what "hardship will result if court consideration is withheld at this time." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). All of the harms alleged in the Complaint are predicated on "*If* Defendants determine that Plaintiff has violated the SOGI Rule." *See, e.g.*, Compl. ¶ 105 (emphasis added). But of course, HHS has committed not to enforce § 75.300(c)–(d) pending promulgation of a new rule. And even if an enforcement action were brought against Texas—a purely theoretical supposition—"the administrative enforcement process for the Comprehensive Grants Rules is subject to judicial review and offers many procedural protections, including opportunities to object, review supporting documentation, request a hearing, and appeal," *Holston United Methodist Home for Children, Inc.*, 2022 WL 17084226, at *8 (citing 45 C.F.R. §§ 75.371–75.375). Any risk of "losing critical funding" is therefore so speculative, it cannot be said that Texas faces hardship if court consideration is withheld at this time. And pre-enforcement review is particularly unwarranted under these circumstances, when Texas would have an opportunity to assert defenses to a hypothetical enforcement action. Accordingly, Texas's claims are unripe for that additional, independent reason. *See Choice Inc. of Texas*, 691 F.3d at 718.

**CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: April 10, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney (Attorney-in-Charge)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiffs'

counsel by the Electronic Case Filing system on April 10, 2023.

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO