## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## GALVESTON DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>　　　*Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, *in his official capacity as Secretary of Health and Human Services*,<br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and<br>UNITED STATES OF AMERICA,<br><br>　　　*Defendants*. | Civil Action No. 3:22-0419 |

## <u>DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT</u>

# <u>TABLE OF CONTENTS</u>

Statement of the Nature and Stage of the Proceeding ................................................... 1

Statement of the Issues ................................................................................................... 1

Summary of the Argument ............................................................................................. 1

Background ...................................................................................................................... 2

    I.    Regulatory Background .................................................................................. 2

    II.   Texas's Litigation against HHS ...................................................................... 4

Legal Standard ................................................................................................................ 6

Argument ........................................................................................................................ 7

    I.    Texas Lacks Standing. .................................................................................... 7

    II.   This Case Is Unripe. ..................................................................................... 13

    III.  Counts I and II Should Be Dismissed Because They Are Not Final Agency Action for Which No Other Adequate Remedy Is Available. ...................................... 16

        A.    The Challenged Documents Are Not Final Agency Action............................ 16

        B.    Reviews of Title IV-E or Title IV-B Plans Offer an Adequate Alternative Remedy................................................................................................................ 18

Conclusion .................................................................................................................... 22

# TABLE OF AUTHORITIES

## Cases

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967) .................................................................. 13

*Am. College of Pediatricians v. Becerra,*
    No. 1:21-cv-195, 2022 WL 17084365 (E.D. Tenn. Nov. 18, 2022) .............................. 9

*Am. Tort Reform Ass'n v. OSHA,*
    738 F.3d 387 (D.C. Cir. 2013) ...................................................... 17

*Arizonans for Official English v. Arizona,*
    520 U.S. 43 (1997) ................................................................... 7

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 10

*Ass'n of Am. Med. Colleges v. United States,*
    34 F. Supp. 2d 1187 (C.D. Cal. 1998) ................................................ 20

*Axon Enter., Inc. v. FTC,*
    143 S. Ct. 890 (2023) ............................................................... 20

*Babbitt v. Farm Workers,*
    442 U.S. 289 (1979) .............................................................. 9, 10

*Bank of La. v. Federal Deposit Ins. Corp.,*
    919 F.3d 916 (5th Cir. 2019) ....................................................... 21

*Barrera–Montenegro v. United States,*
    74 F.3d 657 (5th Cir. 1996) .......................................................... 7

*Belle Co. v. U.S. Army Corps of Engineers,*
    761 F.3d 383 (5th Cir. 2014) ....................................................... 16

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ................................................................. 6

*Bennett v. Spear,*
    520 U.S. 154 (1997) ................................................................ 16

*Bowen v. Massachusetts,*
    487 U.S. 879 (1988) ............................................................. 18, 19

*Choice Inc. of Texas v. Greenstein*,
   691 F.3d 710 (5th Cir. 2012) ............................................................... 15, 16

*Citizens for Resp. & Ethics in Wash. v.DOJ*,
   846 F.3d 1235 (D.C. Cir. 2017) .................................................................. 18

*Clapper v. Amnesty Int'l USA*,
   568 U.S. 398 (2013) ..................................................................................... 8

*Crane v. Johnson*,
   783 F.3d 244 (5th Cir. 2015) ............................................................... 11, 13

*Delta Found., Inc. v. United States*,
   303 F.3d 551 (5th Cir. 2002) ..................................................................... 19

*E.T. v. Paxton*,
   19 F.4th 760 (5th Cir. 2021) ....................................................................... 8

*Family Equality v. Becerra*,
   No. 1:20-cv-2403, 2022 WL 956256 (S.D.N.Y. Mar. 30, 2022) ................. 13

*Garcia v. Vilsack*,
   563 F.3d 519 (D.C. Cir. 2009) ................................................................... 19

*Ghedi v. Mayorkas*,
   16 F.4th 456 (5th Cir. 2021) ....................................................................... 8

*Henderson v. Stalder*,
   287 F.3d 374 (5th Cir. 2002) ....................................................................... 7

*Hinojosa v. Horn*,
   896 F.3d 305 (5th Cir. 2018) .......................................................... 18, 19, 20

*Holston United Methodist Home for Children, Inc. v. Becerra*,
   No. 2:21-cv-185, 2022 WL 17084226 (E.D. Tenn. Nov. 18, 2022) ........ 9, 13, 15

*Home Builders Ass'n of Miss. v. City of Madison*,
   143 F.3d 1006 (5th Cir. 1998) ..................................................................... 6

*Jarkesy v. SEC*,
   803 F.3d 9 (D.C. Cir. 2015) ....................................................................... 21

*Lopez v. City of Houston*,
   617 F.3d 336 (5th Cir. 2010) ..................................................................... 14

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ........................................................................................ 8

*Martinez v. Pompeo,*
    977 F.3d 457 (5th Cir. 2020) ....................................................................... 18

*Monk v. Huston,*
    340 F.3d 279 (5th Cir. 2003) ....................................................................... 14

*Moore v. Brown,*
    868 F.3d 398 (5th Cir. 2017) ......................................................................... 9

*NAACP v. Meese,*
    615 F. Supp. 200 (D.D.C. 1985) .................................................................. 19

*National Park Hosp. Ass'n v. DOI,*
    538 U.S. 803 (2003) ...................................................................................... 14

*Nat'l Pork Producers Council v. EPA,*
    635 F.3d 738 (5th Cir. 2011) ....................................................................... 17

*New Jersey Hosp. Ass'n v. United States,*
    23 F. Supp. 2d 497 (D.N.J. 1998) ............................................................... 19

*Nowak v. Ironworkers Local 6 Pension Fund,*
    81 F.3d 1182 (2d Cir.1996) ............................................................................ 6

*Pennzoil Co. v. FERC,*
    645 F.2d 394 (5th Cir. 1981) ....................................................................... 14

*Raines v. Byrd,*
    521 U.S. 811 (1997) ........................................................................................ 7

*Ramming v. United States,*
    281 F.3d 158 (5th Cir. 2001) ......................................................................... 6

*Renne v. Geary,*
    501 U.S. 312 (1991) ........................................................................................ 6

*Sample v. Morrison,*
    406 F.3d 310 (5th Cir. 2005) ....................................................................... 13

*Simon v. E. Ky. Welfare Rts. Org.,*
    426 U.S. 26 (1976) .......................................................................................... 7

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)........................................................................................8

*State v. Rettig*,
987 F.3d 518 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1308 (2022)............................17

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014)........................................................................8, 9, 10, 11

*Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. v. Brown*,
No. CIV. A. 00-CV-1063, 2001 WL 185535 (E.D. Pa. Feb. 23, 2001) ......................19

*Texas v. Azar*,
476 F. Supp. 3d 570 (S.D. Tex. 2020)...............................................5, 9, 12

*Texas v. EEOC*,
933 F.3d 433 (5th Cir. 2019) ...............................................................17

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) ...............................................................17

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985)...............................................................14, 15

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)...............................................................20, 21

*Town of Sanford v. United States*,
140 F.3d 20 (1st Cir. 1998)...............................................................18

*Trudeau v. FTC*,
456 F.3d 178 (D.C. Cir. 2006) ...............................................................16

*U.S. Army Corps of Eng'rs v. Hawkes Co.*,
136 S. Ct. 1807 (2016)...............................................................16

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980)...............................................................7

*U.S. Steel Corp. v. Fri*,
364 F. Supp. 1013 (N.D. Ind. 1973) ...............................................................20

*United Transportation Union v. Foster*,
205 F.3d 851 (5th Cir. 2000) ...............................................................15

*Vita Nuova, Inc. v. Azar*,
  458 F.Supp.3d 546 (N.D. Tex. 2020) ............................................................... 9

*Voluntary Purchasing Grps., Inc. v. Reilly*,
  889 F.2d 1380 (5th Cir.1989) ........................................................................ 7

*Whitmore*,
  495 U.S. ........................................................................................................ 8

**Statutes**

5 U.S.C. § 704 ......................................................................................... 16, 18

**Regulations**

45 C.F.R. § 75.300(c) .................................................................................. 1, 4

45 C.F.R. § 75.300(c)–(d) (2016) ................................................................... 2

45 C.F.R. § 75.371 .......................................................................................... 15

45 C.F.R. § 1355.32(d) .................................................................................. 19

45 C.F.R. § 1355.47(d) .................................................................................. 19

*Health and Human Services Grant Regulation*,
  81 Fed. Reg. 89,393 (Dec. 12, 2016) .............................................................. 2

*Notification of Nonenforcement of Health and Human Services Grant Regulation*,
  84 Fed. Reg. 63,809 (Nov. 19, 2019) ...................................................... 3, 9, 12

86 Fed. Reg. 2,257 (Jan. 12, 2021) .............................................................. 2, 3

**Other Authorities**

Admin. for Children and Families, Info. Mem., No. ACYF-CB-IM-22-01 (Mar. 2, 2022),
  https://www.acf.hhs.gov/cb/policy-guidance/im-22-01 .................................... 5

Admin. for Children and Families, Program Instruction, No. ACYF-CB-PI-23-05 (Feb. 27, 2023), https://www.acf.hhs.gov/cb/policy-guidance/pi-23-05 ................................. 6

Children's Bureau, Advancing Equity and Inclusion Through the Child and Family Services Reviews, https://www.cfsrportal.acf.hhs.gov/announcements/new-resource-advancing-equity-and-inclusion-through-cfsrs .............................................................. 6

Letter from Lisa J. Pino, Director, Office for Civil Rights, to Ken Paxton, Attorney
    General, Texas (Nov. 18, 2021), https://www.hhs.gov/conscience/religious-freedom/
    state-letter-to-texas-withdrawing-exception-from-non-discrimination-requirements/
    index.html ........................................................................................................................ 4

Sundeep Iyer, *Jurisdictional Rules and Final Agency Action*,
    125 Yale L.J. 785 (2016) ............................................................................................ 16

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING**

Nearly three years ago, this Court dismissed a similar complaint challenging Defendant Department of Health and Human Services' (HHS) non-discrimination grants regulations, 45 C.F.R. § 75.300(c)–(d). Plaintiff State of Texas argued then, as it does now, that § 75.300(c)–(d) violates the Administrative Procedure Act (APA). This Court held that the case was moot because HHS had committed not to enforce § 75.300(c)–(d) pending promulgation of a new rule. Because that commitment remains as effective today as it was when the previous case was dismissed, HHS once again seeks dismissal.

**STATEMENT OF THE ISSUES**

Whether the Court should adhere to its prior determination that it lacked jurisdiction to review a challenge to a regulation that has never been and is not currently being enforced.

**SUMMARY OF THE ARGUMENT**

This case should be dismissed because there is no Article III case or controversy, and because it is unripe. The Court has already held that it lacked jurisdiction over a similar complaint because Texas's fear of an enforcement action was baseless in light of HHS's commitment not to enforce § 75.300(c)–(d). In addition, prudence dictates that the Court not adjudicate issues that are so inchoate that they may never materialize. Furthermore, the new documents that Texas challenges in its Amended Complaint are not reviewable under the APA because they are not final agency action and because HHS's Title IV regulations offer an adequate alternative remedy.

# BACKGROUND

## I.    Regulatory Background

HHS has a regulatory framework that governs the administration of federal awards: the HHS Uniform Administrative Requirements, Cost Principles, and Audit Requirements for HHS Awards. Plaintiff challenges two provisions of that framework, which set forth "statutory and national policy requirements" for most federal awards that HHS issues, including Foster Care and Adoption grants awarded under Title IV-E of the Social Security Act:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.

> (d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

45 C.F.R. § 75.300(c)–(d) (2016).

HHS has never enforced those provisions, *see* Health and Human Services Grant Regulation, 81 Fed. Reg. 89,393 (Dec. 12, 2016) [hereinafter 2016 Grants Rule]. *See, e.g.*, 86 Fed. Reg. 2,257, 2,273 (Jan 12, 2021) [hereinafter 2021 Grants Rule]. And in November 2019, HHS published a notification in the Federal Register that "the regulatory actions, promulgated through the [2016 Grants Rule], namely, the additions of . . . 75.300(c) and (d) . . . will not be enforced pending repromulgation." Notification of Nonenforcement of

Health and Human Services Grant Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019) [hereinafter Notification of Nonenforcement or Notification]. Among other things, HHS explained that the 2016 Grants Rule "raises significant concerns about compliance with the requirements of the Regulatory Flexibility Act." *Id.* at 63,809.

As referenced in the Notification of Nonenforcement, HHS simultaneously issued a proposed rule to modify § 75.300(c)–(d). 84 Fed. Reg. 63,831 (proposed Nov. 19, 2019). HHS subsequently issued a final rule on January 12, 2021, with an effective date of February 11, 2021. *See* 86 Fed. Reg. at 2,278. As a result of litigation challenging the 2021 Grants Rule, its effective date was postponed on several occasions. *See generally Facing Foster Care in Alaska v. HHS*, No. 1:21-cv-00308 (D.D.C. Feb. 2, 2021). HHS subsequently discovered anomalies in the process through which the 2021 Grants Rule was promulgated that led HHS to conclude that the rule had not been promulgated in compliance with procedural requirements of the APA; HHS accordingly moved the *Facing Foster Care* court to remand the challenged portions of the rule with vacatur, *Facing Foster Care*, No. 1:21-cv-00308, Defs.' Mot. Remand 1, ECF No. 41 (D.D.C. June 17, 2022). In that motion, HHS reaffirmed the Notification of Nonenforcement, stating that "vacating the 2021 [Grants] Rule's formal repeal of the 2016 [Grants] Rule will not cause disruption or change the status quo" because "the 2016 [Grants] Rule has never been enforced, and HHS has stated publicly that it will not enforce the 2016 [Grants] Rule pending promulgation of a new rule." *Id*. at 8–9. The court granted the motion and vacated the 2021 Grants Rule. *See Facing Foster Care*, No. 1:21-cv-00308, Order, ECF No. 44 (D.D.C. June 29, 2022). HHS has not yet promulgated a new rule.

In addition to the Notification of Nonenforcement, which offers a blanket nonenforcement promise because of concerns with Regulatory Flexibility Act compliance, HHS issued letters to several states stating that it would not enforce 45 C.F.R. § 75.300(c)–(d) in specific circumstances involving potential inconsistencies with the Religious Freedom Restoration Act (RFRA). One of these letters was issued in response to Texas's request that HHS "grant an exception from the application of § 75.300(c) and (d) for any faith-based, child-welfare service providers in Texas's Title IV-E program." *See* Letter from Roger T. Severino, Director, Office for Civil Rights, to Ken Paxton, Attorney General, Texas 2 (Mar. 5, 2020) [hereinafter Conditional Exception Letter]. That letter was subsequently withdrawn as duplicative (among other reasons), because, pursuant to the Notification of Nonenforcement, "the non-discrimination provisions in the 2016 Rule that the waiver issued to Texas sought to address are not currently being enforced." *See* Letter from Lisa J. Pino, Director, Office for Civil Rights, to Ken Paxton, Attorney General, Texas (Nov. 18, 2021), https://www.hhs.gov/conscience/religious-freedom/state-letter-to-texas-withdrawing-exception-from-non-discrimination-requirements/index.html [hereinafter Withdrawal Letter]. Nothing in the Withdrawal Letter alters HHS's commitment not to enforce the 2016 Grants Rule, as explained in the Notification of Nonenforcement and its public pronouncements in the *Facing Foster Care* case, while HHS repromulgates a new rule.

## II.   Texas's Litigation against HHS

Texas, along with the Archdiocese of Galveston-Houston, filed a complaint on October 31, 2019, one day before HHS issued the Notification of Nonenforcement, that is

materially similar to the complaint in this case. Specifically, the two entities claimed that the 2016 Grants Rule violated the APA, RFRA, the First Amendment, the Spending Clause, and the Nondelegation Doctrine. This Court dismissed that complaint on August 5, 2020, holding that there was no jurisdiction because "the government has explicitly stated it will not enforce the challenged rule." *Texas v. Azar*, 476 F. Supp. 3d 570, 578 (S.D. Tex. 2020).

Despite the fact that the Notification of Nonenforcement remains in effect, Texas filed another Complaint challenging the 2016 Grants Rule on most of the same legal grounds (the Complaint no longer contains a First Amendment or RFRA claim) on December 12, 2022. ECF No. 1. Defendants filed a Motion to Dismiss for lack of Jurisdiction on April 10, 2023. The Court held an Initial Conference on May 10, 2023, during which it granted leave to amend and entered a scheduling order. Texas filed its Amended Complaint on May 12, 2023. ECF No. 14.

Many of the counts in the Amended Complaint are the same as those in the 2019 complaint. Texas now claims, however, that three additional documents violate the APA: (1) an Information Memorandum explaining Title IV-B and IV-E "program requirements that . . . child welfare agencies . . . can use to guide their work when determining how best to serve lesbian, gay, bisexual, transgender, queer or questioning, and intersex . . . children and youth," Admin. for Children and Families, Info. Mem., No. ACYF-CB-IM-22-01 (Mar. 2, 2022), https://www.acf.hhs.gov/cb/policy-guidance/im-22-01; (2) a Program Instruction explaining "the requirements for recipients of Community-Based Grants for the Prevention of Child Abuse and Neglect awards for FY 2023" and "instructions for the preparation and submission of the application and annual reports," Admin. for Children

and Families, Program Instruction, No. ACYF-CB-PI-23-05 (Feb. 27, 2023), https://www.acf.hhs.gov/cb/policy-guidance/pi-23-05; and (3) a document that explains the role that equity and inclusion play in reviewing state child welfare systems, Children's Bureau, Advancing Equity and Inclusion Through the Child and Family Services Reviews, https://www.cfsrportal.acf.hhs.gov/announcements/new-resource-advancing-equity-and-inclusion-through-cfsrs.

## LEGAL STANDARD

Defendants file this Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, which permits a party to seek dismissal for "lack of subject-matter jurisdiction." Rule 12(b)(1) motions should be granted if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996)). This determination must be made at the outset: "the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

"It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Renne v. Geary*, 501 U.S. 312, 316 (1991) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 546 n.8 (1986)). Accordingly, the burden of proof rests with the party asserting jurisdiction. To test whether that party has met its burden, a court may rely upon: "(1) the complaint alone; (2) the complaint supplemented

by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Barrera–Montenegro v. United States*, 74 F.3d 657, 659 (5th Cir. 1996) (quoting *Voluntary Purchasing Grps., Inc. v. Reilly*, 889 F.2d 1380, 1384 (5th Cir.1989)).

## ARGUMENT

For the same reasons that the Court lacked jurisdiction over the prior case, (I) Texas lacks standing and (II) this case is unripe for adjudication.[1] In addition, Counts I and II should be dismissed because the challenged documents are not final agency action and because there is an adequate alternative remedy, both of which preclude reviewability under the APA.

### I. Texas Lacks Standing.

"No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 37 (1976)). "Of the doctrines that have evolved under Article III, . . . the requirement that the litigant have standing is perhaps the most important." *Henderson v. Stalder*, 287 F.3d 374, 378 (5th Cir. 2002).

---

[1] HHS argued that the prior case was moot because the Notification of Nonenforcement postdated the complaint (albeit by one day). Because Plaintiff filed this case long after the Notification was issued, HHS no longer seeks dismissal on mootness grounds, even though the reasons for dismissal remain the same. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997) ("Mootness has been described as the 'doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" (quoting *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 397 (1980))).

At the pleading stage, "standing exists only when the party plausibly alleges three elements: '(1) an "injury in fact," (2) that is "fairly . . . trace[able] to the challenged action of the defendant," and (3) that is "likely . . . redress[able] by a favorable decision."'" *E.T. v. Paxton*, 19 F.4th 760, 765 (5th Cir. 2021) (quoting *Ghedi v. Mayorkas*, 16 F.4th 456, 464 (5th Cir. 2021)). The primary defect with the Amended Complaint is that Texas has not plausibly alleged an injury-in-fact, "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *E.T.*, 19 F.4th at 765 (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016)). Imminence is required "to ensure that the alleged injury is not too speculative for Article III purposes." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 565 n.2 (1992)). To establish an injury-in-fact, "'allegations of *possible* future injury' are not sufficient"—at a minimum, the "threatened injury must be *certainly impending*." *Id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)). In the context of a pre-enforcement challenge to a regulation, that means that the plaintiff must plausibly allege that "there exists a credible threat of prosecution." *See Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014) (quoting *Babbitt v. Farm Workers*, 442 U.S. 289, 298 (1979)).

Texas lacks standing in this case for the same reasons that its claims were moot in the prior case: its alleged injuries are speculative. In both cases, Texas has argued that it is injured because it *may* lose funding if HHS enforces § 75.300(c)–(d) against it. But any suggestion that an enforcement action against Texas is "certainly impending" is pure speculation. HHS has never enforced § 75.300(c)–(d). And, as this Court previously

observed, "[i]n the nonenforcement notice, HHS unequivocally states that it will not enforce the challenged provisions pending repromulgation." *Texas*, 476 F. Supp. 3d at 578 (citing 84 Fed. Reg. at 63,811). Based on HHS's statement, this Court held that HHS "'actually extinguish[ed] the controversy.'" *See id.* (quoting *Moore v. Brown*, 868 F.3d 398, 407 (5th Cir. 2017)). And every other court to consider the question has determined that it similarly lacks jurisdiction to adjudicate a challenge to the 2016 Grants Rule in light of the Notification of Nonenforcement. S*ee Holston United Methodist Home for Children, Inc. v. Becerra*, No. 2:21-cv-185, 2022 WL 17084226, at *10 (E.D. Tenn. Nov. 18, 2022) ("Because the 2016 Grants Rule is, for all intents and purposes, defunct pursuant to the Notification of Nonenforcement, Holston Home faces no credible threat of prosecution."); *Am. Coll. of Pediatricians v. Becerra*, No. 1:21-cv-195, 2022 WL 17084365, at *18 (E.D. Tenn. Nov. 18, 2022) (same); *Vita Nuova, Inc. v. Azar*, 458 F.Supp.3d 546, 558 (N.D. Tex. 2020) (holding that the plaintiff lacked standing to challenge § 75.300(d) because there was "no credible threat of enforcement"). Because any possibility of enforcement has been extinguished, this Court should once again conclude that "with no controversy, there is no jurisdiction." *Texas*, 476 F. Supp. 3d at 578.

The Notification of Nonenforcement is not the only reason why Texas lacks standing. To establish standing, Texas must also show that it has "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute." *Susan B. Anthony List*, 573 U.S. at 159 (quoting *Farm Workers*, 442 U.S. at 298). In *Susan B. Anthony List*, for example, the petitioners demonstrated such an intention because there was "a history of past enforcement" and because they "pleaded specific

statements they intend to make in future election cycles" that the Supreme Court found to be prohibited by the challenged state law. *See id.* at 161–64.

Texas, by contrast, has not pleaded "facts plausibly showing," *Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), an intention to violate § 75.300(c)–(d). At most, Texas asserts that "[a] number of faith-based providers receive Title IV-E funding through DFPS" and that "[s]ome of these providers require potential foster care or adoptive parents to share a religious faith or agree to the provider's statement of faith." Am. Compl. ¶ 77. Texas also asserts that "[s]ome have particular religious views on marriage, gender identity, and sexual orientation." *Id.* But these allegations are too vague to determine whether the unnamed providers would in fact violate § 75.300(c)–(d).

Indeed, Texas has *never* identified a particular agency that professes an intention to violate § 75.300(c)–(d), in this Amended Complaint or otherwise. The Archdiocese, which did not provide foster care services even when it joined Texas in the the prior litigation , is not a party to this case. And even when HHS issued the Conditional Exception Letter, it noted that Texas had repeatedly failed to "identify any specific providers who complained of, or who Texas believed were being subjected to, a RFRA violation." *See* Conditional Exception Letter 2; *see also* Withdrawal Letter 2. All Texas has done is include a footnoted hyperlink to a list of foster and adoption agencies in Texas, along with a note that "[t]he particular requirements of each provider may be determined by clicking on a provider's name and accessing that provider's website." Am. Compl. ¶ 77 n.36. These are not facts plausibly showing a provider's intention to violate § 75.300(c)–(d). And Texas cannot pass the buck by asking the Court to search the Internet for agencies that might run afoul of a

regulation. *See Susan B. Anthony List*, 573 U.S. at 159–61 (summarizing cases in which the plaintiff set forth facts demonstrating an intent to violate the challenged law); *see also Crane v. Johnson*, 783 F.3d 244, 254 (5th Cir. 2015) (holding that the plaintiffs lacked standing because they "provided no evidence that any agent has been sanctioned or is threatened with employment sanctions for detaining an alien and refusing to grant deferred action under DACA"). The absence of allegations identifying an agency in Texas that has violated the regulation in the past and intends to do so in the future is telling and undermines the plausibility of Texas's alleged injury.

Finally, Texas lacks standing with respect to the three documents that are challenged in Counts I and II of the Amended Complaint. These documents create no legal obligations or consequences for anyone, let alone Texas. The Information Memorandum and Program Instruction highlight existing legal requirements under Title IV and the Child Abuse Prevention and Treatment Act respectively. *See* Info. Mem. 1 (explaining in the subject line that the memo's purpose is to identify program requirements that agencies can use "to guide their work"); Program Instruction 1 (similarly explaining in the purpose line that the document sets forth existing requirements and provides guidance and instructions on applying for funds). And the Advancing Equity document simply lays out the role that equity and inclusion play in reviews of state child welfare systems. *See* Advancing Equity 1, 3. A recipient cannot violate these documents because they do not require anything.

Underscoring the nonbinding nature of these documents, the standing section of the Amended Complaint contains no specific allegations about how the challenged documents injure Texas. *See* Am. Compl. ¶¶ 128–43. For example, Texas alleges that the documents

prohibit it "from working with child placing agencies that determine the placement of children based on their religious beliefs about the concepts of sexual orientation and gender identity." *Id.* ¶ 128. But Texas does not point to any prohibitory language in the documents or any facts demonstrating that effect. Such conclusory allegations cannot establish standing.

✵✵

Texas may have filed this Amended Complaint, an echo of the previous case, because HHS withdrew the Conditional Exception Letter. *See id.* ¶ 16. But as HHS explained, its withdrawal of the Conditional Exception Letter had no effect on its nonenforcement commitment. The very first paragraph of the Withdrawal Letter states, "the non-discrimination provisions in the 2016 Rule that the waiver issued to Texas sought to address are not currently being enforced." Withdrawal Letter 1 (citing Notification of Nonenforcement, 84 Fed. Reg. at 63,809). HHS withdrew the Conditional Exception Letter because it was duplicative of the Notification of Nonenforcement, "overbroad[,] and did not properly apply the substantial burden requirement under [RFRA]." *Id.* Texas may not agree with HHS's reasoning, but as this Court previously held, "[t]he key question is whether the governmental entity has promised not to enforce the rule—not why it decided to do so." *Texas*, 476 F. Supp. 3d at 578. And once again, HHS has stated, pursuant to the Notification of Nonenforcement, that it will not enforce § 75.300(c)–(d) pending promulgation of a new rule. Indeed, the only court to have considered its jurisdiction in light of the withdrawal letters held that HHS's "rescission of religious exemptions also do[es] not raise a credible threat of prosecution" because the Notification of

12

Nonenforcement remains in effect. *See Holston United Methodist Home for Children, Inc.*, 2022 WL 17084226, at *10.

The Amended Complaint also refers to two other cases involving § 75.300(c)–(d). *See* Am. Compl. ¶¶ 15, 18–19. But these cases only reinforce that there is no credible threat of enforcement against Texas. In *Facing Foster Care*, HHS reaffirmed its commitment to the Notification of Nonenforcement following a development that required vacatur of the most recent grants rule. *See* Defs.' Mot. Remand 1. And in *Family Equality*, the district court granted HHS's motion to dismiss a complaint challenging the Notification of Nonenforcement. *See Family Equality v. Becerra*, No. 1:20-cv-2403, 2022 WL 956256 (S.D.N.Y. Mar. 30, 2022), *appeal filed*, No. 22-1174 (2d Cir. May 27, 2022).

## II.   This Case Is Unripe.

For similar reasons, this Court lacks jurisdiction because the case is unripe. Ripeness is an "essential component[]" of "Article III's case-or-controversy requirement" because courts have no power to decide disputes that are not yet justiciable. *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir. 2005). The purpose of the ripeness doctrine is "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148–149 (1967).

To assess whether a particular claim is ripe for judicial review, a court must consider both "(1) the fitness of the issues for judicial resolution, and (2) the potential hardship to

the parties caused by declining court consideration." *Lopez v. City of Houston*, 617 F.3d 336, 341 (5th Cir. 2010). "A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical." *Monk v. Huston,* 340 F.3d 279, 282 (5th Cir. 2003) (quotation omitted). If a claim is "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all," the claim is not ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation omitted). Even when "the question presented" is "purely legal," it is unfit for adjudication where a concrete factual context would facilitate a court's "ability to deal with the legal issues presented." *National Park Hosp. Ass'n v. DOI*, 538 U.S. 803, 812 (2003); *see also Pennzoil Co. v. FERC*, 645 F.2d 394, 398 (5th Cir. 1981) (legal issue not ripe where judicial review "would stand on a much surer footing in the context of an application to a specific factual framework").

Texas's claims present issues that are not presently fit for judicial resolution because they are "contingent [on] future events that may not occur as anticipated, or indeed may not occur at all." *Thomas*, 473 U.S. at 580–81 (quotation omitted). Texas's claims are premised on the speculative, subjective fear that HHS will enforce a regulation that it has expressly and publicly stated that it will not enforce. That is insufficient to establish a ripe controversy. *See, e.g.*, *United Transportation Union v. Foster*, 205 F.3d 851, 857–58 (5th Cir. 2000) (holding a pre-enforcement challenge to be unripe because it "sits atop a mountain of conjecture and speculation" about whether and how the law would be enforced).

14

This case is also unripe because Texas is unable to show what "hardship will result if court consideration is withheld at this time." *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012). Any harm stemming from § 75.300(c)–(d) is predicated on a hypothetical enforcement action against Texas. But of course, HHS has committed not to enforce § 75.300(c)–(d) pending promulgation of a new rule. And even if an enforcement action were brought against Texas—a purely theoretical supposition—"the administrative enforcement process for the Comprehensive Grants Rules is subject to judicial review and offers many procedural protections, including opportunities to object, review supporting documentation, request a hearing, and appeal," *Holston United Methodist Home for Children, Inc.*, 2022 WL 17084226, at *8 (citing 45 C.F.R. §§ 75.371–75.375). Any risk of "losing critical funding" is therefore so speculative, it cannot be said that Texas faces hardship if court consideration is withheld at this time. And pre-enforcement review is particularly unwarranted under these circumstances, when Texas would have an opportunity to assert defenses to a hypothetical enforcement action. Accordingly, Texas's claims are unripe for that additional, independent reason. *See Choice Inc. of Tex.*, 691 F.3d at 718.

Texas's claims against the Information Memorandum, Program Instruction, and Advancing Equity document are also unripe. The Amended Complaint is devoid of factual allegations explaining how these documents have injured Texas. Instead, Texas circularly states that these documents "prohibit Texas from working with child placing agencies that determine the placement of children based on their religious beliefs about the concepts of sexual orientation and gender identity." Am. Compl. ¶ 128. This Court should not guess

how these documents might play a role in a hypothetical enforcement proceeding, particularly when the documents have no binding effect.

## III.   Counts I and II Should Be Dismissed Because They Are Not Final Agency Action for Which No Other Adequate Remedy Is Available.

Although the Court should dismiss the entire Amended Complaint for lack of jurisdiction, Counts I and II are not reviewable for two additional reasons.[2] The APA, under which these counts are brought, permits a plaintiff to challenge only "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The documents that are challenged in those counts are not final agency action and another adequate remedy is available to Texas, namely during the Title IV-E and Title IV-B plan review process.

### A.   The Challenged Documents Are Not Final Agency Action.

Final agency action comprises two conditions: "First, the action must mark the consummation of the agency's decision-making process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 136 S. Ct. 1807, 1813 (2016) (quoting *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997)).

---

[2] The Fifth Circuit has held that the final agency action requirement is jurisdictional. *See Belle Co. v. U.S. Army Corps of Engineers*, 761 F.3d 383, 388 (5th Cir. 2014), *vacated on other grounds*, *Kent Recycling Servs., LLC v. U.S. Army Corps of Eng'rs*, 578 U.S. 1019 (2016). Other circuits, however, have held that it is not. *See, e.g., Trudeau v. FTC*, 456 F.3d 178, 184 (D.C. Cir. 2006); *see generally* Sundeep Iyer, Comment, *Jurisdictional Rules and Final Agency Action*, 125 Yale L.J. 785 (2016). Because this Court is bound by Fifth Circuit decisions, Defendants move to dismiss pursuant to Rule 12(b)(1). However, they would raise the same arguments pursuant to Rule 12(b)(6).

The challenged documents—the Information Memorandum, Program Instruction, and Advancing Equity and Inclusion Through the Child and Family Services Reviews—are not final agency action because they neither determine rights or obligations nor create legal consequences. "Whether an action binds the agency is evident 'if it either appears on its face to be binding[] or is applied by the agency in a way that indicates it is binding.'" *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019) (quoting *Texas v. United States*, 809 F.3d 134, 171 (5th Cir. 2015)). The challenged documents, by their own terms, are not binding. The Information Memorandum summarizes background research on LGBTQI+ youth in the child welfare system, "describes provisions in Title IV-B and IV-E that child welfare agencies can use to support, encourage, and care for LGBTQI+ children and youth across the child welfare continuum," and summarizes the hearing and partial review regulations. Info. Mem. 3–10. The Program Instruction is a guide to the Community-Based Child Abuse Prevention program, providing background and application information. And the Advancing Equity document merely describes the role that equity and inclusion play in reviewing child welfare systems. Such informational documents "do not qualify [as final agency action] because they are not 'finally determinative of the issues . . . to which [they are] addressed.'" *Am. Tort Reform Ass'n v. OSHA*, 738 F.3d 387, 395 (D.C. Cir. 2013). Even if the Information Memorandum and Program Instruction could be read to reiterate the obligations of child welfare programs under existing law, such informational documents are not final agency action. *State v. Rettig*, 987 F.3d 518, 530 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1308 (2022); *see also id.* at 529; *Nat'l Pork Producers Council v. EPA*, 635 F.3d 738, 756 (5th Cir. 2011) ("guidance letters" that describe existing legal

17

obligations but "have no effect on a party's rights or obligations are not reviewable final actions"). The Advancing Equity document does not even address existing legal requirements; it simply states the Children's Bureau's goal to promote equity and inclusion and offers some questions for state child welfare agencies to consider.

### B. Reviews of Title IV-E or Title IV-B Plans Offer an Adequate Alternative Remedy.

Counts I and II should also be dismissed because the APA limits judicial review to "those agency actions which otherwise lack an 'adequate remedy in a court.'" *Hinojosa v. Horn*, 896 F.3d 305, 310 (5th Cir. 2018) (*per curiam*) (quoting *Bowen v. Mass.*, 487 U.S. 879, 903 (1988)); 5 U.S.C. § 704 (review available for "final agency actions for which there is no other adequate remedy in a court"). The Title IV regulations offer an adequate alternative remedy to Texas.

"The adequacy of the [alternative] relief available need not provide an identical review that the APA would provide, so long as the alternative remedy offers the 'same genre' of relief." *Hinojosa*, 896 F.3d at 310 (quoting *Citizens for Resp. & Ethics in Wash. v. DOJ*, 846 F.3d 1235, 1245 (D.C. Cir. 2017)). Thus, a "legal remedy is not inadequate for purposes of the APA because it is procedurally inconvenient for a given plaintiff." *Martinez v. Pompeo*, 977 F.3d 457, 460 (5th Cir. 2020) (quoting *Town of Sanford v. United States*, 140 F.3d 20, 23 (1st Cir. 1998)). "At a minimum, the alternative remedy must provide the petitioner 'specific procedures' by which the agency action can receive judicial review or some equivalent." *Hinojosa*, 896 F.3d at 310 (citing *Bowen*, 487 U.S. at 903)). Alternative relief is "adequate" under § 704 if it, for example, "affords an opportunity for

*de novo* district-court review" of agency action. *Garcia v. Vilsack*, 563 F.3d 519, 522–23 (D.C. Cir. 2009).

As the Information Memorandum itself explains, "if [the Administration for Children and Families (ACF)] becomes aware of a Title IV-B or IV-E compliance issue," it can review the plan under the procedures set forth in 45 C.F.R. § 1355.32(d). *See* Info. Mem. 10. That regulation permits ACF to conduct an inquiry; engage the foster care agency in a program improvement plan; and, if necessary, issue "a penalty related to the extent of the noncompliance." 45 C.F.R. § 1355.32(d). Agencies "may appeal ACF's final determination of noncompliance to the HHS Departmental Appeals Board," 45 C.F.R. § 1355.47(d), whose final decisions may be challenged in federal court, *see Delta Found., Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002).

Title IV and its implementing regulations thus "provide[] a direct and guaranteed path to judicial review." *Hinojosa*, 896 F.3d at 312. Plaintiffs therefore "almost by definition . . . have an adequate remedy in a court." *NAACP v. Meese*, 615 F. Supp. 200, 203 (D.D.C. 1985) (explaining that defending against a government motion is a "far more appropriate, far more logical remedy than a lawsuit here seeking injunctive relief"); *see also Temple Univ. of Commonwealth Sys. of Higher Educ. ex rel. v. Brown*, No. CIV. A. 00-CV-1063, 2001 WL 185535, at *7 (E.D. Pa. Feb. 23, 2001) (concluding plaintiff possessed alternative remedy precluding review under § 704 because it could "defend any . . . charges should the government choose to pursue them"); *N.J. Hosp. Ass'n v. United States*, 23 F. Supp. 2d 497, 501 (D.N.J. 1998) ("the ability and opportunity to raise a defense" to an action is "an adequate remedy in a court"); *Ass'n of Am. Med. Colleges v.*

19

*United States*, 34 F. Supp. 2d 1187, 1193 (C.D. Cal. 1998) (similar); *U.S. Steel Corp. v. Fri*, 364 F. Supp. 1013, 1018–19 (N.D. Ind. 1973) (similar). If Texas ever received an adverse decision from the Departmental Appeals Board based on the challenged documents—which it, of course, could not, given the nonbinding nature of those documents—Texas could raise its claims in district court. It therefore has an adequate alternative remedy.

For similar reasons, judicial review is barred by the doctrine of *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). Under *Thunder Basin*, where it is "fairly discernible" that an elaborate statutory review scheme for administrative enforcement proceedings was intended to create an exclusive remedy, parallel jurisdiction outside that scheme is precluded. *Id.* at 207, 216 (quotation omitted). In determining whether a plaintiff's claim is "of the type Congress intended to be reviewed within this statutory structure," courts consider three factors: (1) "could precluding district court jurisdiction 'foreclose all meaningful judicial review' of the claim?", (2) "is the claim 'wholly collateral to [the] statute's review provisions'?", and (3) "is the claim 'outside the agency's expertise'?" *Axon Enter., Inc. v. FTC*, 143 S. Ct. 890, 900 (2023) (quoting *Thunder Basin*, 510 U.S. at 212–13).

Each of these factors weighs in favor of non-reviewability. First, precluding judicial review at this time would not foreclose meaningful judicial review of Texas's claims. As explained above, in a hypothetical review of Texas's foster care system, Texas could raise the same legal arguments, both before the agency and on judicial review of the agency's determination in the district court. Second, Texas's claims are not "wholly collateral" to

20

the administrative review scheme. *See Bank of La. v. FDIC*, 919 F.3d 916, 928 (5th Cir. 2019). Instead, their claims are "inextricably intertwined" with the issue that would be at the heart of any future theoretical enforcement proceeding: whether certain (as yet, hypothetical) conduct violates Title IV or its implementing regulations. Third, Texas's claims, which concern the obligations of foster care agencies under Title IV, are within the heartland of HHS's expertise. *See Thunder Basin*, 510 U.S. at 214 (1994) (claims that require interpretation of a statute enforced by an agency "fall squarely" within that agency's expertise, and lead to the conclusion that "exclusive review before the [agency] is appropriate"); *see also Bank of La.*, 919 F.3d at 929 ("[T]here are precious few cases involving interpretations of statutes authorizing agency action in which our review is not aided by the agency's statutory construction.") (quoting *Jarkesy v. SEC*, 803 F.3d 9, 29 (D.C. Cir. 2015)).

For these reasons, the challenged documents may not be reviewed outside the context of the regulatory scheme created by Congress for administrative enforcement and judicial review. Counts I and II should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: June 23, 2023                    Respectfully submitted,


                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General


                                        MICHELLE R. BENNETT
                                        Assistant Branch Director


                                        *Benjamin Takemoto*
                                        BENJAMIN T. TAKEMOTO
                                        (DC Bar # 1045253)
                                        Trial Attorney (Attorney-in-Charge)
                                        United States Department of Justice
                                        Civil Division, Federal Programs Branch
                                        P.O. Box No. 883, Ben Franklin Station
                                        Washington, DC 20044
                                        Phone: (202) 532-4252
                                        Fax: (202) 616-8460
                                        E-mail: benjamin.takemoto@usdoj.gov

                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the above document was served upon Plaintiffs'

counsel by the Electronic Case Filing system on June 23, 2023.

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO