**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| STATE OF TEXAS, <br><br>     *Plaintiff*, <br><br> v. <br><br> XAVIER BECERRA, Secretary of the United States Department of Health and Human Services, in his official capacity; UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; and the UNITED STATES OF AMERICA, <br><br>     *Defendants*. | Civil Action No. 3:22-cv-00419 <br><br> Judge Jeffrey V. Brown |

**TEXAS'S RESPONSE TO
DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

Table of Contents ............................................................................................................ ii

Table of Authorities ...................................................................................................... iii

Introduction ..................................................................................................................... 1

Nature and Stage of the Proceedings ........................................................................... 1

Standard of Review ......................................................................................................... 2

Argument ......................................................................................................................... 3

I.      All of the challenged rules constitute final agency action. ............................... 3

II.     Texas has alleged standing to challenge the SOGI Rule and the Becerra Actions. ..... 4

A.     Texas is entitled to special solicitude in the standing inquiry. ..................... 4

B.     Texas faces imminent injury from the SOGI Rule and the Becerra Actions. ............. 9

C.     Texas's injuries are traceable to the challenged HHS actions and redressable by this Court.     17

III.    Texas's challenges to the challenged HHS actions are ripe. ................................... 18

IV.    There is no adequate alternative remedy precluding judicial review in a pre-enforcement action. .................................................................................................... 22

Conclusion ..................................................................................................................... 29

Certificate of Service ................................................................................................... 31

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abbott Labs. v. Gardner,*
387 U.S. 136 (1967)................................................................................. 16, 18, 21

*Bauer v. Shepard,*
620 F.3d 704 (7th Cir. 2010).................................................................................16

*Bennett v. Spear,*
520 U.S. 154 (1997) ...................................................................................... 3

*Biden v. Texas,*
142 S. Ct. 2528 (2022) ................................................................................... 5

*In re Burrus,*
136 U.S. 586 (1890) ....................................................................................... 6

*De La Garza Gutierrez v. Pompeo,*
741 F. App'x 994 (5th Cir. 2018) .............................................................. 23

*Franciscan All., Inc. v. Burwell,*
227 F. Supp. 3d 660 (N.D. Tex. 2016)...................................................... 25

*Gibson v. Collier,*
920 F.3d 212 (5th Cir. 2019) ....................................................................... 6

*Gonzales v. Carhart,*
550 U.S. 124 (2007) ...................................................................................... 6

*Little v. KPMG LLP,*
575 F.3d 533 (5th Cir. 2009)....................................................................... 2

*Lujan v. Defs. of Wildlife,*
504 U.S. 555 (1992) ............................................................................ 2, 4, 10

*MedImmune, Inc. v. Genentech, Inc.,*
549 U.S. 118 (2007) ............................................................................... 16, 17

*Nat'l Envtl. Dev. Ass'n's Clean Air Project v. EPA,*
752 F.3d 999 (D.C. Cir. 2014) ...................................................................19

*Natl. Fedn. of Indep. Bus. v. Dougherty*,
    No. 3:16-CV-2568-D, 2017 WL 1194666 (N.D. Tex. Feb. 3, 2017)
    (Fitzwater, J.) ...................................................................................... 25, 26

*Nevada v. United States Dep't of Labor*,
    218 F. Supp. 3d 520 (E.D. Tex. 2016) (Mazzant, J.) ................................... 20

*Ohio Forestry Assn. v. Sierra Club*,
    523 U.S. 726 (1998) ...................................................................................19

*Opulent Life Church v. City of Holly Springs, Miss.*,
    697 F.3d 279 (5th Cir. 2012) ......................................................................19

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety
    Admin.*,
    656 F.3d 580 (7th Cir. 2011).................................................................18, 21

*Paterson v. Weinberger*,
    644 F.2d 521 (5th Cir. 1981) ........................................................................ 2

*Ramming v. United States*,
    281 F.3d 158 (5th Cir. 2001)......................................................................... 2

*Reckitt Benckiser v. EPA*,
    613 F.3d 1131 (D.C. Cir. 2010) ...................................................................21

*Reno v. Flores*,
    507 U.S. 292 (1993) ...................................................................................... 6

*Roark & Hardee*,
    522 F.3d at 545 ...........................................................................................21

*Steffel v. Thompson*,
    415 U.S. 452 (1974) (Rehnquist, J., concurring) ..........................................16

*Suitum v. Tahoe Regional Planning Agency*,
    520 U.S. 725 (1997) ....................................................................................19

*Tex. Office of Pub. Util. Counsel v. FCC*,
    183 F.3d 393 (5th Cir. 1999) .......................................................................17

*Texas v. Biden ("Texas MPP")*,
    20 F.4th 928 (5th Cir. 2021) .......................................................................24

*Texas v. EEOC*,
827 F.3d 372 (5th Cir. 2016), *opn. withdrawn on reh'g*, 838 F.3d 511 (5th Cir. 2016) ................................................................................15, 17, 19, 25

*Texas v. EEOC*,
933 F.3d 433 (5th Cir. 2019) ............................................................*passim*

*Texas v. United States*,
809 F.3d 134 (5th Cir. 2015) . Action ...................................................... 5, 6

*Texas v. United States*,
No. 1:18-CV-00068, 2021 WL 3025857 (S.D. Tex. July 16, 2021) (Hanen, J.) ............................................................................................ 9

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994) ............................................................................. 24

*United States Telecom Ass'n v. FCC*,
825 F.3d 674 (D.C. Cir. 2016) ..............................................................18

*United States v. Johnson*,
632 F.3d 912 (5th Cir. 2011) ...............................................................17

## Statutes

5 U.S.C. § 704 ........................................................................................ 3

Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202 .....................................16

Tex. Health & Safety Code §§ 62.151, 161.702–161.706 ............................... 7

Tex. Health & Safety Code § 161.702 ......................................................... 8

Tex. Hum. Res. Code § 32.024 ................................................................. 7

Tex. Occ. Code §§ 164.052, 164.0552, 164.052 .......................................... 7

## Introduction

Plaintiff State of Texas filed an amended complaint challenging the two sets of agency actions by HHS that create obligations on State foster care funding recipients relating to sexual orientation and gender identity. ECF No. 14 ("Am. Compl."). The first agency action is a 2016 rule adopted via notice-and-comment rulemaking that created anti-discrimination requirements on the bases of sexual orientation and gender identity (the "SOGI Rule"), 45 C.F.R. § 75.300(c)–(d). *See* Am. Compl. at ¶¶ 1, 94–97.

The second set of agency actions are three issued in 2022 and 2023 that implemented President Biden's executive orders on sexual orientation and gender identity in foster care funding. These three actions—the Information Memorandum ("IM"), the Advancing Equity Directive, and the Program Instruction (collectively, the "Becerra Actions")—impose the same type of requirements as the SOGI Rule. *See* Am. Compl. ¶¶ 20–37.

Defendants filed their Motion to Dismiss, ECF No. 15 (the "MTD"), on the grounds that this case is not justiciable because (1) Texas lacks standing to challenge the SOGI Rule and the Becerra Actions and a challenge is not ripe; and (2) the Becerra Actions do not constitute final agency action and there is an adequate alternative remedy that precludes pre-enforcement review in this Court. They are wrong.

## Nature and Stage of the Proceedings

This is an action for injunctive, declaratory, and Administrative Procedure Act ("APA") relief against the federal government for agency actions that place restrictions on

1

state foster care programs that are inconsistent with the Constitution and federal law, including the procedural and substantive requirements of the APA. The federal government has filed a motion to dismiss, ECF No. 15, which is at issue here.

## STANDARD OF REVIEW

"Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim that would entitle plaintiff to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A facial attack, which consists of a Rule 12(b)(1) motion unaccompanied by supporting evidence, challenges jurisdiction based solely on the pleadings. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981). When ruling on a facial attack, the court must presume that factual allegations in the complaint are true and determine whether they establish subject-matter jurisdiction. *Id.* By contrast, a Rule 12(b)(1) motion presents a factual attack when the motion is accompanied by supporting evidence that contradicts the jurisdictional allegations in the complaint. *Id.* Defendants' motion to dismiss presents a facial attack, challenging subject-matter jurisdiction based on Texas's pleadings.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted); *see also Little v. KPMG LLP*,

575 F.3d 533, 540 (5th Cir. 2009) ("At the pleading stage, allegations of injury are liberally construed.").

<div align="center">**ARGUMENT**</div>

**I.   All of the challenged rules constitute final agency action.**

As the Fifth Circuit's most relevant precedent instructs, the issue of final agency action should be addressed first because "that analysis contextualizes the standing inquiry." *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). The APA allows judicial review only of "final agency action." 5 U.S.C. § 704. Agency action is "final" for the purposes of judicial review if two conditions are met: "First, the action must mark the consummation of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up). "The Supreme Court has long taken a pragmatic approach to finality, viewing the APA's finality requirement as 'flexible." *EEOC*, 933 F.3d at 441 (cleaned up).

Defendants do not dispute that the SOGI Rule—adopted through notice-and-comment rulemaking—is final agency action.

As to the Becerra Actions, Defendants maintain they "neither determine rights or obligations nor create legal consequences." MTD at 17. But Defendants do this by examining the Becerra Actions in isolation, without context of either Secretary Becerra's statement accompanying the IM or the language of the Executive Orders they cite. *See* Am.

<div align="center">3</div>

Compl. ¶¶ 29–36. Texas has explained in detail in the Amended Complaint why the Becerra Actions meet the test for final agency action. *See* Am. Compl. ¶¶ 118–127. Defendants may want the Court to ignore Secretary Becerra's statements in relation to the Becerra Actions, but "[s]uch an approach would flout the Supreme Court's repeated instruction to approach finality flexibly and pragmatically." *EEOC*, 933 F.3d at 445.

## II.   Texas has alleged standing to challenge the SOGI Rule and the Becerra Actions.

Article III requires only an injury, caused by the agency, which a court can redress. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). And when the plaintiff is "an object of the [agency's] action," "there is ordinarily little question that the action … has caused him injury, and that a judgment preventing … the action will redress it." *Id.* at 561–62. Here, there is no doubt that the State of Texas is "an object of [HHS's] action[s]"— the SOGI Rule and the Becerra Actions.  Because Texas is an "object" of the actions, all three of the constitutional standing requirements are satisfied. *Id.* at 561–62.

Defendants challenge only the first prong of the familiar three-part test for standing here, asserting that "[t]he primary defect with the Amended Complaint is that Texas has not plausibly alleged an injury-in-fact." MTD at 8.

### A.  Texas is entitled to special solicitude in the standing inquiry.

In actions brought by States, the standing inquiry should begin with the special solicitude that States are owed, *see Texas v. Biden (MPP)*, 20 F.4th 928, 969 (5th Cir. 2021)—a solicitude Defendants never mention in their Motion to Dismiss.

"Special solicitude has two requirements: (1) the State must have a procedural right to challenge the action in question, and (2) the challenged action must affect one of the State's quasi-sovereign interests." *MPP*, 20 F.4th at 969 (citation omitted). Texas satisfies the first prong because it "is asserting a procedural right under the APA to challenge an agency action," *id.* (citation omitted), something it can do for all of its claims.

And Texas satisfies the second prong because the challenged agency action here "affect[s] quasi-sovereign interests by imposing substantial pressure on [it] to change [its] laws." *MPP*, 20 F.4th 970 (citation omitted). As the Fifth Circuit has explained:

> Pursuant to that interest, states may have standing based on (1) federal assertions of authority to regulate matters they believe they control, (2) federal preemption of state law, and (3) federal interference with the enforcement of state law, at least where the state statute at issue regulates behavior or provides for the administration of a state program and does not simply purport to immunize state citizens from federal law.

*Texas v. United States (DAPA)*, 809 F.3d 134, 153 (2015)(cleaned up).

Texas is therefore injured due to the challenged actions here due to "pressure[] to change state law … because states have a sovereign interest in the power to create and enforce a legal code." *EEOC*, 933 F.3d at 446–47(citation omitted). establishes that the SOGI Rule and the Becerra Actions affect its quasi-sovereign interests. A "quasi-sovereign interest" is "a judicial construct that does not lend itself to a simple or exact definition." *Texas v. United States ("DACA")*, 50 F.4th 498, 514 (5th Cir. 2022) (quoting *Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982)). Several interests generally satisfy that definition, including the "set of interests that the State has in the well-

being of its populace;" the State's interest in "the health and well-being—both physical and economic—of its residents;" and the State's interest in "not being discriminatorily denied its rightful status in the federal system." *Id.* (quoting *Alfred L. Snapp & Son, Inc.*, 458 U.S. at 602, 607). "'One helpful indication' of a quasi-sovereign interest is 'whether the injury is one that the State, if it could, would likely attempt to address through its sovereign lawmaking powers.'" *Id.* at 515 (quoting *Massachusetts*, 549 U.S. at 519).

"[S]tates may have standing based on … federal assertions of authority to regulate matters [states] believe they control." *DAPA*, 809 F.3d at 153 (citation omitted). "States possess special proficiency in the field of domestic relations, including child custody," *Reno v. Flores*, 507 U.S. 292, 310 (1993) (cleaned up), and "a significant role to play in regulating the medical profession," *Gonzales v. Carhart*, 550 U.S. 124, 157 (2007), especially where there is "medical and scientific uncertainty," *id.* at 163. This is just such a case. *See Gibson v. Collier*, 920 F.3d 212, 216, 224 (5th Cir. 2019) ("[S]ex reassignment surgery remains one of the most hotly debated topics within the medical community today."); *see also In re Burrus*, 136 U.S. 586, 593–94 (1890) ("The whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States.").

It is clear that quasi-sovereign interests are present in this case. Texas has used its sovereign lawmaking powers to ensure it can contract with many different child placing agencies which hold varying views on religion, sexual orientation, gender identity, and same-sex marriage status—including those with practices that conflict with the SOGI Rule

6

and the Becerra Actions. *See* Am. Compl. at ¶¶ 70–78. H.B. 3859 addresses Texas's quasi-sovereign interests by ensuring that more child welfare service providers, including child placing agencies, can operate in Texas. H.B. 3859 also ensures that those individuals who do not want to, or cannot, work with religious child placing agencies have other options, such as providing the person seeking the service with information about other service providers. Tex. Hum. Res. Code § 45.005(c). But as described above, while DFPS works with both secular and faith-based organizations to find homes for children, the SOGI Rule and the Becerra Actions prohibit Texas from working with such agencies that object to the concepts of sexual orientation and gender identity mandated by the SOGI Rule and the Becerra Actions. *See* Am. Compl. at ¶¶ 45–46.

More recently, Texas again exercised its sovereign lawmaking powers to protect children in Texas in ways that are contradicted by the challenged HHS actions here. *See* Act of June 2, 2023, 88th Leg. R.S., S.B. 14, §§ 1–9 (codified at Tex. Health & Safety Code §§ 62.151, 161.702–161.706; Tex. Hum. Res. Code § 32.024; Tex. Occ. Code §§ 164.052, 164.0552, 164.052).[1] S.B. 14 prohibits *inter alia* "a physician or health care provider" from "knowingly" providing, prescribing, administering, or dispensing medical procedures and treatments, including "puberty suppression or blocking prescription drugs to stop or delay normal puberty," "supraphysiological doses of testosterone to females," and

---

[1] Available at https://capitol.texas.gov/tlodocs/88R/billtext/pdf/SB00014F.pdf.

"supraphysiologic doses of estrogen to males." *Id.* at § 2 (codified an amendment at Tex. Health & Safety Code § 161.702). S.B. 14 also prohibits various surgeries, such as surgeries that "sterilize the child" or "mastectom[ies]," and it forbids "remov[ing] any otherwise healthy or non-diseased body part or tissue." *Id.* at § 2. And S.B. 14 makes all these prohibitions when such treatments or procedures are used "[f]or the purpose of transitioning a child's biological sex as determined by the sex organs, chromosomes, and endogenous profiles of the child or affirming the child's perception of the child's sex if that perception is inconsistent with the child's biological sex." *Id.* at § 2.

Just as with H.B. 3859, S.B. 14 is at odds with the SOGI Rule and the Becerra Actions. Indeed, Texas's child abuse laws already—at the time this action was filed— prohibited the actions reached by S.B.14.[2]

This means that Texas's current legal code is at odds with the SOGI Rule and the Becerra Actions, and it now faces the threat of federal preemption, representing another

---

[2] *See* February 22, 2022, letter from Governor Greg Abbott to Jaime Masters, Commissioner of the Texas Department of Family and Protective Services, available at https://gov.texas.gov/uploads/files/press/O-MastersJaime202202221358.pdf. In that letter, Governor Abbott directed DFPS "to conduct a prompt and thorough investigation of any reported instances" of "so-called 'sex change' procedures" conducted on minors that Texas law recognizes as child abuse. *Id.*The letter incorporated an attached opinion from the Texas Attorney General—instructing that "DFPS and all other state agencies must follow the law as explained in OAG Opinion No. KP-0401"— concluding that "it is already against the law to subject Texas children to a wide variety of elective procedures for gender transitioning, including reassignment surgeries that can cause sterilization, mastectomies, removals of otherwise healthy body parts, and administration of puberty-blocking drugs or supraphysiologic doses of testosterone or estrogen." *Id.* (citing OAG Opn. No. KP-0401 and Tex. Fam. Code § 261.001(1)(A)–(D)).

injury imposed by those actions.[3] Thus, this harm to Texas's current legal code satisfies the second element of special solicitude because Texas's desire to legislate constitutes a quasi-sovereign interest. *See Alfred L. Snapp & Son, Inc.*, 458 U.S. at 607 (observing that a state's desire to legislate suggests a quasi-sovereign interest). Accordingly, Texas has satisfied both elements of special solicitude.

"Thus, Texas is entitled to special solicitude in the standing inquiry. If nothing else, that means imminence and redressability are easier to establish here than usual." *MPP*, 20 F.4th at 970 (citation omitted). The remaining prong of the standing analysis—causation (or traceability)—is also subject to the special solicitude doctrine. *See Texas v. United States*, No. 1:18-CV-00068, 2021 WL 3025857, at *9 (S.D. Tex. July 16, 2021) (Hanen, J.) ("The Fifth Circuit has explicitly interpreted special solicitude to lower the level of certainty required in the traditional causation and redressability analysis.").

## B. Texas faces imminent injury from the SOGI Rule and the Becerra Actions.

Texas has standing to challenge the challenged actions because they directly regulate the State. When the plaintiff is "an object of the [agency's] action," "there is ordinarily little question that the action … has caused him injury, and that a judgment

---

[3] *See EEOC*, 933 F.3d at 446–47 ("'[B]eing pressured to change state law constitutes an injury[]' because 'states have a sovereign interest in the power to create and enforce a legal code.'"); *see also Tex. Office of Pub. Util. Counsel v FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (federal agency's declaring authority over object of state law was a sufficient injury, even though agency had not yet exercised that authority); *Alaska v. U.S. Dept. of Transp.*, 868 F.2d 441, 443 (D.C. Cir. 1989) (standing to seek declaratory and injunctive relief "because DOT claims that its rules preempt state consumer protection statutes, [and therefore] the States have suffered injury to their sovereign power to enforce state law").

preventing … the action will redress it." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561–62 (1992). "Whether someone is an object of a regulation is a flexible inquiry rooted in common sense." *EEOC*, 933 F.3d at 446 (citation omitted). Because Texas is an "object" of the challenged agency actions,[4] all three of the constitutional standing requirements are satisfied. *Id.*

While an injury must be "actual or imminent" to satisfy Article III, *Duarte ex rel. Duarte v. City of Lewisville*, 759 F.3d 514, 517 (5th Cir. 2014), "[a]n allegation of future injury may suffice if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (pre-enforcement challenge) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Indeed, even without any past enforcement, standing still exists where there is substantial risk of future enforcement. *Susan B. Anthony List*, 573 U.S. at 158–59 ("When an individual is subject to such a threat, an actual arrest, prosecution, or other enforcement action is not a prerequisite to challenging the law."); *Steffel v. Thompson,* 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first

---

[4] For one, Texas's conduct falls within the scope of the SOGI Rule because the SOGI Rule applies to "[r]ecipients" and states that "[r]ecipients must comply with this public policy requirement in the administration of programs supported by HHS awards." 45 C.F.R. § 75.300(c). And because a "[r]ecipient" means "an entity … that receives a Federal award directly from a Federal awarding agency to carry out an activity under a Federal program," 45 C.F.R. § 75.2—and Texas is a non-Federal entity that directly receives federal funds from HHS to carry out Texas's foster care system—Texas qualifies as a recipient.

expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *see also MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118, 128–29 (2007) ("[W]here threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat."). The Fifth Circuit has even held that the federal government "not attempt[ing] to enforce" a rule and adopting a "policy [that] bars it from enforcing" that rule would "not deprive [a plaintiff] of standing" where the "power to bring enforcement actions" remains. *Texas v. EEOC*, 933 F.3d 433, 448–49 (5th Cir. 2019).

Here, Texas has standing because it suffers multiple injuries as a result of the SOGI Rule and the Becerra Actions. Indeed, because Texas allows faith-based organizations to uphold their religious beliefs on sexual orientation or gender identity, Texas faces a serious threat that the SOGI Rule and the Becerra Actions will be enforced against it and will be used to reduce or eliminate the amount of Texas's Title IV-E funding. This is because the SOGI Rule is contained in Part 75 of Title 45 of the Code of Federal Regulations, *see* 45 C.F.R. § 75.300, meaning that HHS will consider compliance with Part 75 during future audits of Texas's Title IV-E programs. Corroborating this threat to Texas's federal funding is the fact that "[t]he Federal awarding agency *must* communicate to the non–Federal entity all relevant public policy requirements … and incorporate them either directly or by reference in the terms and conditions of the Federal award." *See* 45 C.F.R. § 75.300(a) (emphasis added). In essence, HHS *must*—not may—communicate the requirements of the SOGI Rule to Texas and its child-placing agencies as part of the terms and conditions

11

of the grants. And if Texas or a child-placing agency "fail[] to comply with" the SOGI Rule, then "the HHS awarding agency … may impose additional conditions" or, in case additional conditions cannot remedy the noncompliance, "take one or more of the following actions," which includes *inter alia* imposing financial harms on Texas or its child-placing agencies. *See id.* § 75.300(a) Even more telling is the fact that "[a] Federal award *must* include" information about "[n]ational policy requirements," including the SOGI Rule. *Id.* § 75.210(b)(1).

Therefore, Texas's injuries are far from speculative, *contra* MTD at 8—they are serious. After all, a threatened loss of federal funds is sufficient injury to satisfy Article III. *See Dep't of Commerce v. New York*, 139 S. Ct. 2551, 2565 (2019). And if "the plaintiff is himself an object of the action" "in a suit 'challenging the legality of government action,'" "there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it." *EEOC*, 933 F.3d at 446 (quoting *Lujan*, 504 U.S. at 561–62).

Defendants maintain that the SOGI Rule is a phantom threat to Texas because of the existence of the Notice of Nonenforcement published in the Federal Register. MTD at 8–9. But the Notice has expired of its own terms, *see* Am. Compl. ¶ 17 & n.10—the Notice only applied "pending repromulgation" of a particularly pending replacement rule. That repromulgation is no longer "pending" as it was vacated before going into effect, Am. Compl. ¶15. *See* Pending, *Black's Law Dictionary* 1369 (11th ed. 2019) ("1. Remaining undecided; awaiting decision <a pending case>.").

Also, because the Notice of Nonenforcement does not actually rescind the SOGI Rule and could be rescinded at any time with a mere publication in the Federal Register, Texas could be retroactively held to the mandates of the Rule and liable for its actions now. *See* Jonathan F. Mitchell, *The Writ-of-Erasure Fallacy*, 104 Va. L. Rev. 933, 987 (2018) ("when the executive repudiates a non-enforcement policy adopted by its predecessors: It is free to seek statutory penalties against past, present, and future violators of the formerly unenforced [rule].")

Texas has also alleged that the Becerra Actions demonstrate that HHS is in fact enforcing the substance of the SOGI Rule despite the Notice of Nonenforcement, *see* Am. Compl. ¶ 37, and that the SOGI Rule itself indicated that anti-discrimination requirements were being imposed by HHS even absent that Rule. Am. Compl. ¶¶ 39–41. Defendants never address these bases for Texas to face a reasonable threat of enforcement.

Defendants also maintain that Texas lacks standing to challenge the Becerra Actions because they create "no legal obligations or consequences for anyone." MTD at 11. Indeed, Defendants assert that "the standing section of the Amended Complaint contains no specific allegations about how the challenged documents injure Texas. MTD at 11 (citing Am. Compl. ¶¶ 128–43). But Texas set forth in great detail how the language of the three Becerra Actions created legal obligations through mandating that State foster care agencies adopt "gender-affirming" policies. *See* Am. Compl. ¶¶ 20–40.

But the threatened loss of federal funding is not the only injury that the SOGI Rule and the Becerra Actions impose on Texas. Instead, those unlawful agency actions also deter

13

some child placing agencies from working with DFPS. There are thus fewer child placing agencies serving foster care children, thereby harming both Texas and (most importantly) Texas's foster children. One example is the Archdiocese of Galveston-Houston which this Court noted:

> The Archdiocese of Galveston-Houston wants to create a program for sponsoring foster-care services in partnership with the State of Texas. But it contends that a 2016 Department of Health and Human Services' regulation governing child-welfare funding forecloses that opportunity; its nondiscrimination provisions would require the Archdiocese to either compromise its sincerely held religious beliefs or refrain from serving children in the foster-care system.

*Texas v. Azar*, 476 F. Supp. 3d 570, 573 (S.D. Tex. 2020). The Archdiocese maintains deterred. Am. Compl. ¶ 133 n.39.

Moreover, it bears mention that, on top of deterrence and loss of federal funds, Texas is already suffering injury from compliance costs. Am. Compl. ¶ 135. Specifically, Texas is expending additional staff time and resources to determine whether DFPS's programs comply with sexual orientation and gender identity anti-discrimination requirements imposed by the SOGI Rule and the Becerra Actions. Texas's compliance costs represent a concrete, legally cognizable injury. After all, "the nonrecoverable costs of complying with a putatively invalid regulation typically constitute irreparable harm." *Restaurant Law Ctr. v. United States Dep't of Lab.*, 66 F.4th 593, 597 (5th Cir. 2023) (citations omitted); *see also Louisiana v. Biden*, 55 F.4th 1017, 1034 (5th Cir. 2022) ("[C]omplying with a regulation later held invalid almost always produces the irreparable harm of nonrecoverable compliance costs[.]" (emphasis in original) (citing *Texas v. EPA*,

829 F.3d 405, 433 (5th Cir. 2016)). Accordingly, Texas's numerous concrete injuries establish that it has standing based on direct injury.

Because it is the object of the mandates in the Becerra Actions, Texas suffers an increased regulatory burden because "[HHS] deems unlawful" its foster care system's compliance with the State's ban on "gender-affirming care" and explicit allowance of foster care providers to reject the Administration's policies on sexual orientation and gender identity. It "warns the [S]tate that … it will be able to show that its current policies … are lawful under Title [IV] only if it abandons those policies." *EEOC*, 933 F.3d at 447. "Texas [thus] faces the possibility of investigation by [HHS] and … enforcement proceedings if it fails to align its laws with the [Rule.]" *Id*. Texas has shown imminent injury because it "has opted to express certain values [in its child welfare policies] and the [Rule] impose[] a regulatory burden on Texas to comply with [them] to avoid enforcement actions and, consequently, pressures it to abandon its laws and policies." *Id*.; *see also EEOC*, 827 F.3d 372 at 379 (injury-in-fact requirement satisfied where "the Guidance does, at the very least, force Texas to undergo an analysis, agency by agency, regarding whether the certainty of EEOC investigations stemming from the Enforcement Guidance's standards overrides the State's interest in not hiring felons for certain jobs"). That is enough.

The fact that there is no pending enforcement action against Texas based on the SOGI Rule or Becerra Actions does not vitiate standing because "the existence of a [regulatory obligation] implies a threat to prosecute, so pre-enforcement challenges are proper, because a probability of future injury counts as 'injury' for the purpose of

standing." *Bauer v. Shepard*, 620 F.3d 704, 708 (7th Cir. 2010) (citing *Abbott Labs. v. Gardner*, 387 U.S. 136 (1967) and others).

At any rate, Texas also seeks relief through the Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201–2202. The purpose of the DJA is to create a mechanism for *pre-enforcement* review of government action. *See, e.g., Steffel v. Thompson*, 415 U.S. 452, 478 (1974) (Rehnquist, J., concurring). It is thus unsurprising that Defendants cite no case holding that a regulated entity lacks standing to challenge a rule before enduring an enforcement action. In fact, cases stating the opposite abound.

Take, for example, *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118 (2007). There the Court took it as a given "that, where threatened action by *government* is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat." *Id.* at 128–29 (emphasis in original). Rather, a DJA plaintiff establishes standing under Article III merely by pointing to the "dilemma" of governmental "coercion": "The dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate.'" *Id.* (quoting *Abbott Labs.*, 387 U.S. at 152).

Texas's standing in this case follows from *MedImmune*. The plaintiff in that case had standing, even though it paid certain patent royalties under protest and without risking a patent-infringement suit. Here, Texas's dilemma is even starker. First, Texas cannot simply abandon its rights and forswear State law. *Cf. Abbott Labs.*, 387 U.S. at 152. Second,

16

the coercive prospect of the federal government accusing Texas of illegal discrimination is much stronger than a private party sending a royalty-demand letter. *Cf. MedImmune*, 549 U.S. at 129–30.

"[T]hese injuries are sufficient to confer constitutional standing, especially when considering Texas's unique position as a sovereign state defending its existing practices and threatened authority." *EEOC*, 827 F.3d at 379.

### C. Texas's injuries are traceable to the challenged HHS actions and redressable by this Court.

Texas's injuries are traceable to the challenged HHS actions because those actions, "not [any statute], condemn[] Texas's [child welfare] policies, and [they], not [any statute], pressure[] Texas to change its laws and policies or risk" injury. *EEOC*, 933 F.3d at 448; *see also United States v. Johnson*, 632 F.3d 912, 921 (5th Cir. 2011) ("[plaintiff's] standing to contest the rulemaking requires that the [enabling] statute on its face did not order [plaintiff] to comply with the [challenged rule's] requirements").

Texas's injuries are traceable to HHS's actions because "[t]he pressure on Texas to change its laws exists, in part, because HHS has [enforcement] power to against Texas … That [HHS] has not attempted to enforce the [challenged agency actions] against Texas does not deprive it of standing." *EEOC*, 933 F.3d at 449; *see also Tex. Office of Pub. Util. Counsel v. FCC*, 183 F.3d 393, 449 (5th Cir. 1999) (refusing to "find a lack of standing simply because an agency has refused to enforce its own regulations").

Texas' injuries are also redressable because this Court entering relief against the SOGI Rule and the Becerra Actions would lessen those injuries.

### III.   Texas's challenges to the challenged HHS actions are ripe.

Finally, Defendants argue that the challenge to the SOGI Rule and the Becerra Actions are not ripe. MTD at 13–15. But "an agency rule, unlike a statute, is typically reviewable without waiting for enforcement." *United States Telecom Ass'n v. FCC*, 825 F.3d 674, 739 (D.C. Cir. 2016) (citation omitted). Where, as here, Congress did nothing to prohibit Texas from seeking pre-enforcement review of the SOGI Rule or the Becerra Actions, the ripeness inquiry all but disappears, and pre-enforcement review is "the norm." *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.,* 656 F.3d 580, 586 (7th Cir. 2011). To create an exception to that norm, the issues must be somehow unfit for judicial review and the balance of hardships must tip in EEOC's favor. *Abbott Labs.*, 387 U.S. at 149; *Owner-Operator*, 656 F.3d at 586–87.

Contra the Defendants' assertions, *see* MTD at 13–16, all of Texas's claims are also ripe for judicial review. For a case to be ripe, courts must examine (1) "the fitness of the issues for judicial decision" and (2) the "hardship of the parties withholding court consideration." *Ohio Forestry Ass'n, Inc. v. Sierra Club*, 523 U.S. 726, 733 (1998). Here, both factors establish that Texas's claims against the SOGI Rule and the Becerra Actions are ripe.

A challenge to administrative regulations is fit for review if (1) the questions presented are 'purely legal one[s],' (2) the challenged regulations constitute 'final agency

18

action,' and (3) further factual development would not 'significantly advance [the court's] ability to deal with the legal issues presented.'" *Texas v. United States*, 497 F.3d 491, 498–99 (5th Cir. 2007) (quoting *Nat'l Park Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 812 (2003)).

Fitness for review turns on whether the case "would benefit from further factual development" and "whether judicial intervention would inappropriately interfere with further administrative action." *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 733 (1998). Texas's claims pass that test. First, Texas's claims are purely legal, facial challenges to the SOGI Rule and Becerra Actions. Facial challenges to regulation are generally ripe the moment the challenged agency action occurs. *Suitum v. Tahoe Regional Planning Agency*, 520 U.S. 725, 736 n.10 (1997). That the SOGI Rule and Becerra Actions are final agency action, and that Texas has standing to challenge it, makes the ripeness inquiry straightforward. As the Fifth Circuit explained:

> Having determined that the [EEOC felon-hiring rule] Guidance is "final agency action" under the APA, it follows naturally that Texas's APA claim is ripe for review. Texas's challenge to the EEOC Guidance is a purely legal one, and as such it is unnecessary to wait for further factual development before rendering a decision. Furthermore, Texas faces significant hardships should the court decline to consider its claims. Taking Texas's allegations as true, it must change its hiring practices to ensure compliance with the Guidance, or face the numerous adverse effects already set forth.

*Texas v. EEOC*, 827 F.3d 372, 388 n.9 (5th Cir. 2016); *see also Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 287–88 (5th Cir. 2012) (facial attack on a regulation raises "purely legal" question and is therefore ripe); *Nat'l Envtl. Dev. Ass'n's Clean Air*

*Project v. EPA,* 752 F.3d 999, 1008 (D.C. Cir. 2014) ("[Plaintiffs] raise a purely legal challenge to the Regulation [as] exceed[ing] the USDA's authority as granted by Congress and violates various constitutional principles. Thus, it is unnecessary to wait for the Regulation to be applied in order to determine its legality.").

Here, only two facts matter. First, under Texas law and policy, foster care agencies are permitted to disapprove of HHS's views on sexual orientation and gender identity in children, *see* Am. Compl. ¶¶ 70–78—indeed, as explained in the discussion on standing, they are *not* permitted to support "gender-affirming care" for children in their custody. And second, Defendants assert that Texas's foster care agencies must be "gender-affirming." *See* Am. Compl. ¶¶ 20–37. This case therefore poses a conflict of two mutually incompatible interpretations of the requirements for recipients of federal foster-care funding.

As to hardship, "[t]he Supreme Court has found hardship to inhere in legal harms, such as the harmful creation of legal rights or obligations; practical harms on the interests advanced by the party seeking relief; and the harm of being 'force[d] ... to modify [one's] behavior in order to avoid future adverse consequences.'" *Texas*, 497 F.3d at 499 (quoting *Oh. Forestry Ass'n*, 523 U.S. at 734). Indeed, the "fear of future sanctions" to "force immediate compliance" with the SOGI Rule and the Becerra Actions is a sufficient hardship. *Oh. Forestry Ass'n*, 523 U.S. at 734. For example, a claim satisfies the hardship prong of ripeness when the "only alternative to obtaining judicial review now is to violate

[the agency's] directives … and then defend an enforcement proceeding on the grounds it raises" in the lawsuit. *Barrick Goldstrike Mines Inc*, 215 F.3d at 49.

Moreover, "[w]here a regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, hardship has been demonstrated." *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 545 (5th Cir. 2008) (citation omitted); *see also Abbott Labs.*, 387 U.S. at 152 ("These regulations purport to give an authoritative interpretation of a statutory provision that has a direct effect on the day-to-day business of all prescription drug companies; its promulgation puts petitioners in a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate."); *Reckitt Benckiser v. EPA*, 613 F.3d 1131, 1136-41 (D.C. Cir. 2010) (challenge was ripe because agency's letter asserting authority to bring future enforcement proceedings created "compliance 'dilemma'" for the plaintiff).

The dilemma caused by the SOGI Rule and Becerra Actions is even starker because HHS is trying to do much more than levy a fine. One purpose of its actions is to coerce Texas and States with similar policies into abandoning those policies by threatening allegations of discrimination and enforcement actions, making this case ripe. *See Owner-Operator,* 656 F.3d at 586–86.

Texas's claims against the SOGI Rule and the Becerra Actions are fit for judicial review, and should this Court withhold such review, Texas will suffer substantial hardship. Thus, Texas need not "wait[] for [the agency] to 'drop the hammer' in order to have their

day in court." *U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 578 U.S. 590, 600 (2016).

Accordingly, Texas's claims are ripe.

## IV.   There is no adequate alternative remedy precluding judicial review in a pre-enforcement action.

Because the APA provides federal courts with jurisdiction over a "final agency action *for which there is no other adequate remedy in a court*," 5 U.S.C. § 704 (emphasis added), Defendants argue that Texas as such an adequate alternative remedy in Title IV of the Social Security Act. MTD at 18.

The procedures of Title IV do not constitute an adequate remedy. A remedy is inadequate when it imposes on the plaintiff "an arduous, expensive, and long administrative process" that does not aid in the determination of the underlying legal question. *U.S. Army Corps of Engineers v. Hawkes Co.*, 578 U.S. 590, 600–01 (2016)). Indeed, when administrative action imposes immediate consequences on regulated parties, courts routinely allow pre-enforcement challenges even if the parties could raise the same arguments as defenses in an eventual enforcement action. For example, *Sackett v. EPA*, 566 U.S. 120 (2012), allowed a pre-enforcement challenge to an EPA compliance order even though "judicial review ordinarily comes by way of a civil action brought by the EPA." *Id.* at 127. Because the plaintiffs could not "initiate that process" and instead had to "wait for the Agency to drop the hammer" while accruing daily penalties, "APA review" was the only "adequate remedy." *Id.* at 127, 131.

That same reasoning applies here. The SOGI Rule and the Becerra Actions force Texas to choose between complying with such mandates, which would cause irreparable injury, or violating those agency actions at the risk of significant financial harm. And like the proposed alternatives in *Sackett*, the latter option would require Texas to "wait for the [agency] to drop the hammer," 566 U.S. at 127, since there is no way for Texas to initiate the enforcement action. For an alternative to be adequate, the alternative must "provide the same genre of relief," *De La Garza Gutierrez v. Pompeo*, 741 F. App'x 994, 998 (5th Cir. 2018)—and an inability to obtain equitable pre-enforcement relief (as would be the case when defending in an enforcement action or undergoing the internal Title IV review process) makes an alternative inadequate. And "a plaintiff need not pursue a remedy whose existence is 'doubtful' or 'uncertain,'" nor "run the risk of enforcement proceedings or pursue an 'arduous, expensive, and long' permitting process to seek review of an already-final agency action." *Id.* (citation omitted).

Texas would thus have to undergo the long, arduous, and costly process, all while waiting to get a decision from HHS that could pose crippling financial harms to Texas, making Defendants' proposed adequate alternative "doubtful" and "uncertain." That is not an adequate alternative remedy.

Furthermore, the cases cited by Defendants, MTD at 19–20, involve plaintiffs who file lawsuits to attempt to evade already-underway administrative proceedings. *See, e.g.*, *Hinojosa v. Horn*, 896 F.3d 305 (5th Cir. 2018); *Garcia v. Vilsack*, 563 F.3d 519 (D.C. Cir. 2009); *Temple Univ. v. Brown*, No. 00-cv-1063, 2001 WL 185535 (E.D. Pa. Feb. 23, 2001);

23

*N.J. Hosp. Assn. v. United States*, 23 F. Supp. 2d 497 (D.N.J. 1998); *Assn. Am. Med. Colls. v. United States*, 34 F. Supp. 2d 1187 (C.D. Cal. 1998); *U.S. Steel Corp. v. Fri*, 364 F. Supp. 1013 (N.D. Ind. 1973).[5]

Here, Texas is not challenging a specific agency enforcement action against it—in APA parlance, an "order"—but a generally applicable "rule." *See MPP*, 20 F.4th at 982–83 (explaining the distinction). Defendants' cited cases are not on point; there is no ongoing administrative action regarding the issuance of the SOGI Rule or the Becerra Actions, and there is thus nothing with which a court could interfere. *See Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 213 (1994) (distinguishing between statutory preclusions of individual determinations by the agency as opposed to "broad 'pattern and practice' challenges to the program" that may be challenged through the APA). So, because Texas is not asking the Court to intercede in a pending administrative action, the remedial scheme applicable to such actions is irrelevant and does not bar judicial review.

Defendants argue to the contrary, that is, that Texas cannot seek review because the governing statute postpones judicial review until an individual determination has been made. *See Thunder Basin*, 510 U.S. at 207 (pre-enforcement challenges are prohibited if

---

[5] Also, while Defendants cite *NAACP v. Meese*, 615 F. Supp. 200 (D.D.C. 1985), in support of their arguments, MTD at 19, that case did not involve a reviewable agency action, but an attempt to enjoin the Attorney General from reopening any consent decree pending in another court. *Id.* at 201–03. Courts have rejected attempts of agencies to rely on this case when a final rule is challenged. *See, e.g., Texas v. United States*, 201 F. Supp. 3d 810, 826 n.14 (N.D. Tex. 2016) (O'Connor, J.).

such an "intend is 'fairly discernible in the statutory scheme.'") (quoting *Block v. Cmty. Nutrition Inst.*, 467 U.S. 340, 351 (1984)). That statute here does no such thing.

The agency action that Texas is challenging is not a withholding of funds—that is, an individual determination, an "order" under the APA. Texas challenges the issuance of "rules" that would govern that subsequent process, for which the APA allows for pre-enforcement review. As the Fifth Circuit stated in permitting a pre-enforcement challenge to a rule in *Texas v. EEOC*:

> Texas is not, however, simply challenging the prospect of an investigation by the EEOC. Instead, it is challenging the Enforcement Guidance itself, which represents the legal standards that the EEOC applies when deciding when and how to conduct such an investigation, and what practices may require charges. The Guidance is an agency determination in its final form and is applicable to all employers nation-wide; it is not an intermediate step in a specific enforcement action that may or may not lead to concrete injury.

*EEOC*, 827 F.3d at 387 (finding final agency action).

This is the same conclusion Judge O'Connor reached when he rejected in another case the argument that a "comprehensive scheme of administrative and judicial review" precluded "pre-enforcement review of [a rule issued under HHS's authority]." *Franciscan All., Inc. v. Burwell*, 227 F. Supp. 3d 660, 683 (N.D. Tex. 2016).

Texas is not asking the Court to intercede in a pending administrative action, so the remedial scheme applicable to such actions is irrelevant and does not bar judicial review. The forums available under that scheme "are not adequate because Texas can only reach them by deliberately violating the law to test its validity." *Natl. Fedn. of Indep. Bus. v. Dougherty*, No. 3:16-CV-2568-D, 2017 WL 1194666, at *10 (N.D. Tex. Feb. 3, 2017)

25

(Fitzwater, J.); *see also id.* (rejecting similar preclusion challenge because each case agency cited "was a challenge to an ongoing or impending enforcement proceeding"). The Court has jurisdiction to consider Texas's claims.

Defendants similarly argue that Texas cannot seek this Court's review here because the governing statute precludes judicial review until an individual determination by the agency has been made. *See* MTD at 20–21. But their argument misses the point.

Tthe Supreme Court has recognized that "[a] special statutory review scheme … may preclude district courts from exercising jurisdiction over challenges to federal agency action." *Axon Enter., Inc. v. Fed. Trade Comm'n*, 143 S. Ct. 890, 900 (2023) (citing *Thunder Basin Coal*, 510 U.S. at 207). In these instances where "the creation of such a review scheme for agency action divests district courts of their ordinary jurisdiction," "[t]he agency effectively fills in for the district court, with the court of appeals providing judicial review." *Id.* To determine whether such a statutory review scheme precludes the district court's jurisdiction, courts must ask whether "the statutory scheme displays a fairly discernible intent to limit jurisdiction, and the claims at issue are of the type Congress intended to be reviewed within th[e] statutory structure." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010) (citing *Thunder Basin*, 510 U.S. at 207, 212).

In answering this question, however, the Supreme Court has identified three factors that are colloquially known as "the *Thunder Basin* factors." *Axon Enter., Inc.*, 143 S. Ct. at 900. These three factors require a court to determine (1) whether precluding the district court's jurisdiction would "foreclose all meaningful judicial review" of the claim; (2)

26

whether the claim is "wholly collateral to [the] statute's review provisions;" and (3) whether the claim is "outside the agency's expertise." *Id.* (citing *Thunder Basin Coal Co.*, 510 U.S. at 212–13).

Here, all three factors show that judicial review is allowed for Texas's challenges. *First*, precluding this Court's review of Texas's claims would foreclose all meaningful judicial review of the claim. The statutory review scheme here states that the Secretary will make "a final determination" of whether "a program of the State is not in conformity." 42 U.S.C. § 1320a-2a(c)(1); *see also* 42 U.S.C. § 674(d)(1) (explaining that the Secretary determines whether a state program is compliant with Title IV-E—and, therefore, whether to reduce funds to such a non-compliant state program—"as a result of a review conducted under section 1320a-2a"). And the State then has the "opportunity to appeal the determination to the Departmental Appeals Board within 60 days," *id.* § 1320a-2a(c)(2), and can eventually "obtain judicial review of an adverse decision of the Board." *Id.* § 1320a-2a(c)(3).

Importantly, however, the language of this statutory scheme reveals that any administrative appeals and subsequent appeals to a federal district court will only concern the Secretary's "final determination" or "an adverse decision" of the Departmental Appeals Board, *see id.* § 1320a-2a(c)(2)–(3)—it will not extend to a determination of the validity or lawfulness of the SOGI Rule itself, and Texas will have to be subjected to

investigation and evaluation under a rule that it maintains is unlawful. Indeed, a comparison between the APA's definition of "rule" and "order" corroborates this understanding.[6]

Accordingly, precluding this Court's review will foreclose all meaningful judicial review of Texas's challenges to the challenged agency rules themselves. *See, e.g.*, *Free Enter. Fund*, 561 U.S. at 490 (determining that the preclusion of jurisdiction would foreclose all meaningful judicial review when the statutory scheme provided for judicial review only over some agency actions, but not others).

*Second*, Texas's claims are wholly collateral to the statute's review provisions. "[W]hether a claim is collateral to the relevant statutory-review scheme depends on whether that scheme is intended to provide the sort of relief sought by the plaintiff." *Cochran v. SEC*, 20 F.4th 194, 207 (5th Cir. 2021). For example, a claim is wholly collateral if it is "challenging the [agency's] power to proceed at all, rather than actions taking in the agency proceedings." *Axon Enter., Inc.*, 143 S. Ct. at 904. In this case, Texas is not challenging an action by HHS finding it not in conformity with the SOGI Rule or Becerra Actions (an order)—it is challenging the legitimacy of these "rules." Nor do Texas's claims "address the sorts of procedural or evidentiary matters [that the Secretary or the Board] often resolves on its way to a merits decision." *Id.* Instead, Texas challenges

---

[6] *Compare* 5 U.S.C. § 551(4) (defining "rule" as "the whole or a part of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy or describing the organization, procedure, or practice requirements of an agency"), *with id.* § 551(6) (defining "order" as "the whole or a part of a final disposition, whether affirmative, negative, injunctive, or declaratory in form, of an agency in a matter other than rule making but including licensing").

Defendants' authority to promulgate the SOGI Rule or Becerra Actions at all. Therefore, because Texas is challenging Defendants power to proceed at all and not attempts to enforce compliance against the State, its claims are "wholly collateral" to the statutory review scheme.

*Third*, and finally, Texas's claims are outsides HHS's expertise. Claims are generally fall outside an agency's expertise when they "raise 'standard questions of administrative' and constitutional law, detached from 'considerations of agency policy.'" *Id.* at 905. Texas's claims are entirely comprised of administrative law and constitutional law issues, not policy ones. Accordingly, Texas's challenges to the SOGI Rule and the Becerra Actions fall outside HHS's expertise and within the expertise of this Court.

<div align="center">

**CONCLUSION**

</div>

The Court should deny Defendants' Motion to Dismiss the Amended Complaint.

Date: July 28, 2023

Respectfully submitted,

ANGELA COLMENERO
Provisional Attorney General of Texas

LEIF A. OLSON
Chief, Special Litigation Division
Texas Bar No. 24032801
Southern District of Texas Bar No. 33695

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy First Assistant Attorney General

*/s/ Ryan D. Walters*
RYAN D. WALTERS
Deputy Chief, Special Litigation Division
*Attorney-in-Charge*
Texas Bar No. 24105085
Southern District of Texas Bar No. 3369185

RALPH MOLINA
Deputy Attorney General for Legal
Strategy

Ethan Szumanski
Assistant Attorney General
Texas Bar No. 24123966
Southern District of Texas Bar No. 3836010

Special Litigation Division
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Phone: (512) 936-2714
Fax: (512) 457-4410
leif.olson@oag.texas.gov
ryan.walters@oag.texas.gov
ethan.szumanski@oag.texas.gov

COUNSEL FOR PLAINTIFF STATE OF TEXAS

### CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing document was filed and served electronically (via CM/ECF) on July 28, 2023.

*/s/ Ryan D. Walters*
RYAN D. WALTERS