# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | |
|---|---|
| STATE OF TEXAS,<br><br>    *Plaintiff*,<br><br>v.<br><br>XAVIER BECERRA, *in his official capacity as Secretary of Health and Human Services*,<br>UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, and<br>UNITED STATES OF AMERICA,<br><br>    *Defendants*. | Civil Action No. 3:22-0419 |

## DEFENDANTS' REPLY IN SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

**TABLE OF CONTENTS**

I. Texas Lacks Standing. ............................................................................................... 1
II. This Case Is Unripe. ................................................................................................... 8
III. Counts I and II Should Be Dismissed Because They Do Not Concern Final Agency Action for Which There Is No Adequate Alternative Remedy. ........................ 10
IV. Conclusion ................................................................................................................ 13

# **TABLE OF AUTHORITIES**

**CASES**

*Arizona v. Biden*,
 31 F.4th 469 (6th Cir. 2022) ...................................................................................... 6, 7

*Ashcroft v. Iqbal*,
 556 U.S. 662 (2009) ..................................................................................................... 1, 4

*BroadStar Wind Sys. Grp. v. Stephens,*
 459 F. App'x 351 (5th Cir. 2012) ................................................................................... 6

*California v. Texas*,
 141 S. Ct. 2104 (2021) ................................................................................................. 6, 7

*CASA de Md., Inc. v. Trump,*
 971 F.3d 220 (4th Cir. 2020) ........................................................................................... 5

*Clapper v. Amnesty Int'l USA*,
 568 U.S. 398 (2013) ..................................................................................................... 5, 6

*Haaland v. Brackeen*,
 143 S. Ct. 1609 (2023) ..................................................................................................... 7

*Louisiana Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*,
 70 F.4th 872 (5th Cir. 2023) ............................................................................................ 7

*Louisiana ex rel. Landry v. Biden*,
 64 F.4th 674 (5th Cir. 2023) ............................................................................................ 6

*Massachusetts v. EPA*,
 549 U.S. 497 (2007) ......................................................................................................... 6

*Ohio Forestry Association v. Sierra Club*,
 523 U.S. 726 (1998) ................................................................................................... 9, 10

*Sackett v. EPA*,
 566 U.S. 120 (2012) ....................................................................................................... 11

*Texas v. Azar*,
 476 F. Supp. 3d 570 (S.D. Tex. 2020) ................................................................. 1, 3, 10

*Texas v. EEOC*,
 933 F.3d 433 (5th Cir. 2019) ......................................................................................... 10

*Texas v. United States*,
   497 F.3d 491 (5th Cir. 2007) ................................................................................................ 9

*Texas v. United States*,
   809 F.3d 134 (5th Cir. 2015) ................................................................................................ 7

*Thunder Basin v. Reich*,
   510 U.S. 200 (1994) .................................................................................................... 12, 13

*Trump v. New York*,
   141 S. Ct. 530 (2020) ........................................................................................................... 7

*United States v. Texas*,
   143 S. Ct. 1964 (2023) ......................................................................................................... 7

*United Transp. Union v. Foster,*
   *205 F.3d 851* (5th Cir. 2000) ............................................................................................... 9

*Wilhite v. Harvey*,
   861 F. App'x 588 (5th Cir. 2021) ........................................................................................ 5

**STATUTES**

Tex. Hum. Res. Code § 45.001 ................................................................................................. 8

Tex. Hum. Res. Code § 45.004 ................................................................................................. 8

**REGULATIONS**

45 C.F.R. § 75.300 ............................................................................................................*passim*

45 C.F.R. § 1355.32 ................................................................................................................. 11

Notification of Nonenforcement of Health & Human Services Grants Regulation,
   84 Fed. Reg. 63,809 (Nov. 19, 2019) ............................................................................. 2, 3

Health & Human Services Grants Regulations,
   86 Fed. Reg. 2,257 (Jan. 12, 2021) ..................................................................................... 2

Health & Human Services Grants Regulation,
   88 Fed. Reg. 44,750 (proposed July 13, 2023), ................................................................. 3

**OTHER AUTHORITIES**

Admin. for Children and Families, Info. Mem., No. ACYF-CB-IM-22-01
   (Mar. 2, 2022),
   https://www.acf.hhs.gov/cb/policy-guidance/im-22-01 .................................................. 8

Since Texas filed its first complaint challenging 45 C.F.R. § 75.300(c)–(d) three years ago, the state has had ample opportunity to articulate an Article III injury. Instead, it continues to press its case against a regulation that has never been enforced, and that Defendant Department of Health and Human Services (HHS) has stated it will not enforce. All that has changed since this Court last dismissed Texas's complaint for lack of jurisdiction is that Texas added new claims against an Information Memorandum, a Program Instruction on certain grant applications, and a document titled *Advancing Equity and Inclusion through the Child and Family Services Reviews* (collectively, informational documents). None of these documents, however, have any legal effect. This Court should adhere to its prior ruling, which is consistent with the rulings of every other court that has considered whether a plaintiff has standing to challenge § 75.300(c)–(d) in light of Defendants' Notification of Nonenforcement, and dismiss the Amended Complaint for lack of jurisdiction.

## I.     Texas Lacks Standing.

As Defendants explained in their Motion to Dismiss, Texas lacks standing because § 75.300(c)–(d) is not being enforced and because the informational documents lack legal force. Rather than set forth specific "facts plausibly showing" an injury, which is its burden at the Rule 12 stage, *see Ashcroft v. Iqbal*, 556 U.S. 662, 682 (2009), Texas makes a handful of legal arguments that get it nowhere closer to establishing the Court's jurisdiction than its first attempt in *Texas v. Azar*, 476 F. Supp. 3d 570 (S.D. Tex. 2020), a decision that it does not even reference in its brief, let alone attempt to distinguish. *See* Texas's Resp. to Defs.' Mot. to Dismiss the Am. Compl. 9–17, ECF No. 16 [hereinafter Pl.'s Opp'n].

*First*, Texas argues that, despite the Notification of Nonenforcement, HHS will surreptitiously enforce § 75.300(c)–(d) via § 75.300(a), which states, "The Federal awarding agency must communicate to the non–Federal entity all relevant public policy requirements, including those in general appropriations provisions, and incorporate them either directly or by reference in the terms and conditions of the Federal award." *See* Pl.'s Opp'n 11–12. Texas then claims that because compliance with the policy requirements in § 75.300(c)–(d) is considered in audits of federal awards, Texas faces risk of funding loss. *See id.* In the first place, § 75.300(a) states that the *awarding agency*, not Texas, must communicate all relevant public policy requirements. But even if this subsection somehow affected Texas, the argument simply restates the problem. HHS has unequivocally stated that § 75.300(c)–(d) "will not be enforced pending repromulgation." Notification of Nonenforcement of Health & Human Services Grants Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019) [hereinafter Notification of Nonenforcement]. Accordingly, grantees like Texas face no risk of enforcement if they do not comply with the policy requirements in § 75.300(c)–(d), regardless of whether those requirements are incorporated in the terms of their federal award.

*Second*, Texas argues that it is presently at risk of enforcement because the Notification of Nonenforcement "has expired on its own terms." *See* Pl.'s Opp'n 12. In support, Texas offers an uncontroversial definition of "pending," claiming that § 75.300(c)–(d) is no longer pending repromulgation because the Health & Human Services Grants Regulations, 86 Fed. Reg. 2,257 (Jan. 12, 2021) [hereinafter 2021 Grants Rule], were vacated before going into effect. *See* Pl.'s Opp'n 12. This slender reed never

2

supported Plaintiff's reading of the Notification of Nonenforcement: the Notification disavows enforcement of the 2016 Grants Rule "pending repromulgation" generally, not pending promulgation of any particular new rule. 84 Fed. Reg. at 63,811. And the *Facing Foster Care* court vacated the 2021 Grants Rule based on the understanding that "the notice of non-enforcement [would] remain[] in place" and "the non-discrimination protections in the 2016 [Grants] Rule would not be enforced even if the 2021 [Grants] Rule were vacated." *Facing Foster Care in Alaska*, No. 1:21-cv-00308, ECF No. 28 at 9 (D.D.C. Dec. 15, 2021). But if there were any doubt repromulgation was ongoing, HHS recently issued a Notice of Proposed Rulemaking, Health & Human Services Grants Regulation, 88 Fed. Reg. 44,750 (proposed July 13, 2023), which proposes to amend § 75.300(c) to state, "It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs, activities, projects, assistance, and services, to the extent doing so is prohibited by federal statute," *id.* at 44,759; and § 75.300(d) to state, "HHS will follow all applicable Supreme Court decisions in administering its award programs." Underscoring the continued effect of the Notification of Nonenforcement, HHS stated in the Notice of Proposed Rulemaking, "While this rulemaking process is ongoing, the 2019 Notice of Nonenforcement remains in effect." *See* 88 Fed. Reg. at 44,757.

*Third*, Texas argues that the Notification of Nonenforcement offers limited protection because it "could be rescinded at any time." *See* Pl.'s Opp'n 13. The Court has already rejected this argument, *see Texas*, 476 F. Supp. 3d at 578–79, and the cited law review article, which predates the Court's prior order, is no reason to reconsider that

3

conclusion.

*Fourth*, Texas asserts "that HHS is in fact enforcing the substance of [§ 75.300(c)–(d)] despite the [Notification] of Nonenforcement." Pl.'s Opp'n 13. As evidence of this supposed enforcement, Texas points to the informational documents. *See id*. Those documents do not purport to rely on § 75.300(c)–(d). And, as their text makes plain, they do not require anything and lack the force of law. Rather, they highlight existing legal requirements, explain how to apply for grants, and discuss the importance of equity and inclusion. *See* Defs.' Mot. to Dismiss the Am. Compl. 11, ECF No. 15 [hereinafter Defs.' Mot.].

*Fifth*, and relatedly, Texas argues that the informational documents impose legal consequences and therefore injure it. *See* Pl.'s Opp'n 13. Defendants have already explained why these documents do not impose legal consequences, *see* Defs.' Mot. 11–12, and Texas offers no response other than to refer to the Amended Complaint. *See* Pl.'s Opp'n 13. Crucially, Texas has not cited a single statement from those documents "mandating that State foster care agencies adopt 'gender-affirming' policies," *id*. No such mandate exists.

*Sixth*, Texas argues that it is injured because the informational documents deter certain unnamed foster care agencies from working with the state. These barebones allegations fall short of Texas's Rule 12 burden to allege specific "facts plausibly showing" an injury, *see Iqbal*, 556 U.S. at 682. As Defendants explained in their Motion to Dismiss, Texas has never identified a foster care agency that professes an intention to violate § 75.300(c)–(d), even assuming HHS were enforcing it. *See* Defs.' Mot. 10–11. Texas

4

points to the Archdiocese of Galveston-Houston, but that organization notably did not join Texas in this repeat litigation. And the Amended Complaint, which is the operative complaint, lacks allegations that the Archdiocese is currently deterred from working in the Texas foster care program because of § 75.300(c)–(d). At most, Texas quotes the Court's prior opinion, which noted that the operative complaint in *that* case contained allegations that the Archdiocese was deterred. *See* Am. Compl. ¶ 133 n.39, ECF No. 14. However, the Court is limited to reviewing allegations in the operative complaint of *this* case (i.e., the Amended Complaint), which contains no plausible allegations of deterrence. *See Wilhite v. Harvey*, 861 F. App'x 588, 591 n.5 (5th Cir. 2021) ("New factual allegations in briefs are not appropriately considered on a motion to dismiss.").

*Seventh*, Texas argues that it has incurred an injury by "expending additional staff time and resources to determine whether DFPS's programs comply with sexual orientation and gender identity anti-discrimination requirements imposed by [§ 75.300(c)–(d)] and the [informational documents]." *See* Pl.'s Opp'n 14. Texas cannot so easily manufacture an Article III injury-in-fact: "a voluntary budgetary decision, however well-intentioned, does not constitute Article III injury, in no small part because holding otherwise would give carte blanche for any organization to 'manufacture standing by choosing to make expenditures' about its public policy of choice." *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 239 (4th Cir. 2020) (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 402 (2013)). Texas cannot create an injury by voluntarily choosing to expend resources to determine if it is in compliance with a regulation that is not being enforced and documents that do not impose any binding obligations.

5

*Eighth*, Texas argues that it is entitled to relief under the Declaratory Judgment Act, as though that statute supplies an independent basis to establish standing. *See* Pl.'s Opp'n 16–17. It does not. "Standing to seek declaratory judgment is subject to the[] same requirements" as any other request for relief. *BroadStar Wind Sys. Grp. v. Stephens*, 459 F. App'x 351, 356 (5th Cir. 2012). As with a voluntary decision to spend resources, plaintiffs "cannot manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Amnesty Int'l USA*, 568 U.S. at 416. Texas's unsubstantiated fear that it must "abandon its rights and forswear State law" or be accused of "illegal discrimination," Pl.'s Opp'n 16–17, is therefore insufficient to establish standing, whether or not declaratory relief is sought. Plaintiffs "need to assert an injury that is the result of a [law's] actual or threatened *enforcement*, whether today or in the future." *California v. Texas*, 141 S. Ct. 2104, 2114 (2021). And as Defendants have explained, Texas has not plausibly alleged actual or threatened enforcement against it. *See* Def.'s Mem. 9–12.



For the reasons explained above and in Defendants' opening brief, Texas has not established an Article III injury from § 75.300(c)–(d) or the informational documents. Texas asks the Court to look past this failure because states are entitled to "special solicitude" in the standing analysis. *See* Pl.'s Opp'n 4–9. But special solicitude does not allow states to bypass the basic Article III requirement that they demonstrate a concrete, actual or imminent injury. *Louisiana ex rel. Landry v. Biden*, 64 F.4th 674, 684 n.59 (5th Cir. 2023) (citing *Massachusetts v. EPA*, 549 U.S. 497, 521 (2007); *Arizona v. Biden*, 31

6

F.4th 469 (6th Cir. 2022)); *Louisiana Dep't of Wildlife & Fisheries v. Nat'l Oceanic & Atmospheric Admin.*, 70 F.4th 872, 882 (5th Cir. 2023) (similar). The Supreme Court has in several recent cases required states to establish the same Article III injury as non-state litigants, with no mention of special solicitude. *See, e.g.*, *United States v. Texas*, 143 S. Ct. 1964, 1970–71, 1972 n.3 (2023); *id.* at 1977 (Roberts, C.J., concurring) (observing that "it's hard not to wonder why the Court says nothing about 'special solicitude' in this case" and that "it's hard not to think, too, that lower courts should just leave that idea on the shelf in future ones"); *Haaland v. Brackeen*, 143 S. Ct. 1609, 1640 (2023); *California*, 141 S. Ct. at 2116–20; *Trump v. New York*, 141 S. Ct. 530, 534–37 (2020). Accordingly, even with special solicitude, Texas still lacks standing because it has not shown how an unenforced regulation or informational documents injure it.

In any event, Texas is not entitled to special solicitude. States may be entitled to such solicitude when they have a procedural right to challenge the actions in question and the challenged actions affect a quasi-sovereign interest. *See Texas v. United States*, 809 F.3d 134, 151–52 (5th Cir. 2015). Texas does not have a procedural right to challenge the informational documents under the Administrative Procedure Act (APA) because they are not final agency action for which no other adequate remedy is available. *See* Defs.' Mot. 16–21; *infra*. Texas has not invoked a quasi-sovereign interest that is affected by § 75.300(c)–(d) or the informational documents. Texas claims the regulation and documents interfere with its lawmaking powers, citing various state laws that, it asserts, conflict with them. *See* Pl.'s Opp'n 6–9. Texas, however, fails to point to a single conflict. Instead, it offers only the conclusory assertion that "the SOGI Rule and the Becerra Actions

7

prohibit Texas from working with such agencies that object to the concepts of sexual orientation and gender identity mandated by the SOGI Rule and the Becerra Actions." *See, e.g.*, Pl.'s Opp'n 7. But saying there is a conflict does not create a conflict. Texas does not explain, for example, how H.B. 3859, which states an intent "to maintain a diverse network of service providers that offer a range of foster capacity options" and which prohibits discrimination based on "the provider's sincerely held religious beliefs," Am. Compl. ¶¶ 71–72 (quoting Tex. Hum. Res. Code §§ 45.001; 45.004), conflicts with (1) the Information Memorandum, which "offers guidance to title IV-B and IV-E agencies when serving LGBTQI+ children and youth who are involved with the child welfare system," Admin. for Children and Families, Info. Mem., No. ACYF-CB-IM-22-01, at 2 (Mar. 2, 2022), https://www.acf.hhs.gov/cb/policy-guidance/im-22-01; (2) the Program Instruction, which explains the application process for certain grants; (3) the Advancing Equity document, which explains the role that equity and inclusion play in Child and Family Services Reviews; or (4) a regulation that is not being enforced. Texas has not plausibly alleged a conflict such that its quasi-sovereign interest in lawmaking has been disrupted. Accordingly, no special solicitude is warranted.

**II.     This Case Is Unripe.**

The Court should also dismiss this case because it is not ripe. As Defendants explained in their Motion to Dismiss, Texas's claims are not fit for judicial resolution and Texas would incur no hardship by declining review at this time. *See* Defs.' Mot. 14–15. HHS is not enforcing § 75.300(c)–(d) and the informational documents carry no legal consequences. *See id.* at 15–16.

Texas's only response on the fitness prong is that its "claims are purely legal, facial challenges" and therefore would not benefit from further factual development. *See* Pl.'s Opp'n 19. Just because Texas brings a facial challenge, however, does not mean that the case is fit for review. The Fifth Circuit has held that when a facial challenge "sits atop a mountain of conjecture and speculation" about whether a violation would ever occur, the case is not fit for review. *See United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000). Among other things, the *United Transportation Union* court observed that the legislature may amend the challenged provision's terminology or repeal it altogether. *Id.* Likewise, HHS has proposed amending § 75.300(c)–(d) to remove the provisions that Texas challenges. The *United Transportation Union* court also noted that the challenged provision may never be enforced against the plaintiff, which is also true here in light of the Notification of Nonenforcement and the non-binding (and unenforceable) nature of the informational documents.

Texas also claims to face hardship by the mere existence of § 75.300(c)–(d) and the informational documents, suggesting that a fear of future sanctions substantiates its hardship. But the cases that Texas cites involved legitimate fears of sanctions. *See, e.g.*, *Texas v. United States*, 497 F.3d 491, 499 (5th Cir. 2007) (finding hardship where the state's failure to submit an alternative gaming proposal would prejudice the state). By contrast, any fear of sanctions here is purely speculative. This case is thus similar to *Ohio Forestry Association v. Sierra Club*, which held there would be no hardship if the Court declined to review a regulation that may never be applied to the plaintiff. 523 U.S. 726, 734–35 (1998). This Court has already acknowledged that § 75.300(c)–(d) does not

9

threaten Texas because of the Notification of Nonenforcement. *See Texas*, 476 F. Supp. 3d at 578. And the informational documents that Texas challenges do not require Texas to do anything. Because Texas has not "pointed to any . . . way in which [§ 75.300(c)–(d) or the informational documents] could now force it to modify its behavior in order to avoid future adverse consequences," it has not incurred sufficient hardship to make this a ripe controversy. *See Ohio Forestry Ass'n*, 523 U.S. at 734.

### III. Counts I and II Should Be Dismissed Because They Do Not Concern Final Agency Action for Which There Is No Adequate Alternative Remedy.

As Defendants explained in their opening brief, the Court should also dismiss Texas's challenges to the informational documents (Counts I and II) for the independent reason that they do not meet the APA's threshold requirements that the challenged agency action must be final and there must be no adequate alternative remedy. *See* Defs.' Mot. 16–21.

On finality, the informational documents are not final agency action because they do not require anything.[1] The text of those documents makes that clear. *See* Defs.' Mot. 17–18. Rather than point to a single sentence that requires Texas to do anything, Texas complains that Defendants are "examining the Becerra Actions in isolation." *See* Pl.'s

---

[1] Texas argues that final agency action "should be addressed first," citing *Texas v. EEOC*, 933 F.3d 433, 441 (5th Cir. 2019). *See* Pl.'s Opp'n 3. That case, which this Court relied on to dismiss Texas's previous complaint, *see Texas*, 476 F. Supp. 3d at 577, began with "final agency action because that analysis contextualize[d] the standing inquiry." *Id.* Since the Fifth Circuit has held that both the final agency action and standing analysis are jurisdictional, the Court can address them in whatever order it wants; *Texas* does not stand for the proposition that final agency action *must* be addressed first. Defendants note that a ruling in their favor on standing would dispose of all of Texas' claims, whereas their final agency action argument applies to only Counts I and II.

Opp'n 3. *But see* Am. Compl. ¶ 122 ("The Becerra Actions *each* constitute final agency action." (emphasis added)). Zero plus zero still equals zero. Whether those documents are examined in isolation or together, they still do not carry legal consequences. Texas also points to a press statement by Secretary Becerra when the Information Memorandum was released, as well as Executive Order 14,075, which directs HHS to consider certain actions to advance equality for LGBTQI+ individuals. *See* Pl.'s Opp'n 3–4. But other than gesture at this press statement and EO, Texas does not explain how they imbue the informational documents with the force of law. Indeed, in the press statement, Secretary Becerra characterizes the Information Memorandum as "guidance," not a rule. *See* Am. Compl. ¶ 29.

On whether there is an adequate, alternative remedy, Texas argues that it would be too arduous and expensive to follow the procedures set forth in 45 C.F.R. § 1355.32(d). *See* Pl.'s Opp'n 22–23. But in *Sackett v. EPA*, which Texas relies on in support, the Court noted the plaintiff would incur "an additional $75,000 in potential liability" each day that passed without administrative proceedings. 566 U.S. 120, 127 (2012). Here, by contrast, Texas incurs no costs (other than those of its own making) by waiting for a hypothetical enforcement proceeding in which the informational documents would bear on the outcome. This cost is all the more speculative because those documents are nonbinding and thus unenforceable.

Texas also argues that there is no adequate, alternative remedy because it challenges a rule, not an order. *See* Pl.'s Opp'n 23–26. But the informational documents are not rules: they carry no legal consequences. In any event, the distinction that Texas tries to draw is

11

irrelevant. If HHS ever tried to enforce these documents—a difficult concept to grasp upon reading them—Texas could object during the enforcement proceedings and ultimately in federal court. *See* Defs.' Mot. 18–20.

Finally, Texas has offered no meaningful response to preclusion under *Thunder Basin v. Reich*, 510 U.S. 200 (1994). On the first factor—whether Title IV and its implementing regulations would preclude judicial review—Texas argues that judicial review would be limited to the final determination of the Departmental Appeals Board, which could not address the challenge to § 75.300(c)–(d). *See* Pl.'s Opp'n 27–28. Texas appears to misunderstand Defendants' argument: Part III.B of the Motion to Dismiss seeks dismissal of Counts I and II, which concern the informational documents, not § 75.300(c)–(d). And at any rate, if the final determination relied on those documents, Texas could challenge them in a federal court action seeking review of the Departmental Appeals Board decision.

On the second factor—whether the claim is wholly collateral to the statute's review provisions—Texas again incorrectly assumes that Defendants' *Thunder Basin* arguments apply to § 75.300(c)–(d). They do not. Texas also argues that its challenge to the informational documents is collateral to the administrative review scheme because "it is challenging the legitimacy of these 'rules.'" *See* Pl.'s Opp'n 28. However, if HHS attempted to enforce the informational documents against Texas (which, again, is a difficult concept to grasp), Texas' challenge to their legality would be inextricably intertwined with the hypothetical enforcement proceeding, not collateral to it.

On the third factor—whether the claim is outside the agency's expertise—Texas

12

argues that its claims are outside HHS's expertise because they raise questions of administrative and constitutional law. Counts I and II concern only administrative law, not constitutional law. And at any rate, this argument proves too much. By definition, all *Thunder Basin* preclusion cases involve administrative law. The key question is whether the claims require interpretation of a statute that falls squarely within the agency's expertise. *See Thunder Basin*, 510 U.S. at 214. Titles IV-E and IV-B, which HHS administers, are well within the agency's expertise.

### IV. Conclusion

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss.

Dated: August 25, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

MICHELLE R. BENNETT
Assistant Branch Director

*/s/ Benjamin Takemoto*
BENJAMIN T. TAKEMOTO
(DC Bar # 1045253)
Trial Attorney (Attorney-in-Charge)
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883, Ben Franklin Station
Washington, DC 20044
Phone: (202) 532-4252
Fax: (202) 616-8460
E-mail: benjamin.takemoto@usdoj.gov

*Attorneys for Defendants*

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document was served upon Plaintiffs' counsel by the Electronic Case Filing system on August 25, 2023.

*Benjamin Takemoto*
BENJAMIN T. TAKEMOTO