Case 3:22-cv-00419   Document 20   Filed on 03/21/24 in TXSD   Page 1 of 18

United States District Court
Southern District of Texas
**ENTERED**
March 21, 2024
Nathan Ochsner, Clerk

# In the United States District Court for the Southern District of Texas

GALVESTON DIVISION

No. 3:22-cv-419

STATE OF TEXAS, PLAINTIFF,

v.

XAVIER BECERRA, ET AL., DEFENDANTS.

## MEMORANDUM OPINION AND ORDER

JEFFREY VINCENT BROWN, UNITED STATES DISTRICT JUDGE:

The State of Texas challenges "two sets of agency actions" that impose "obligations on State foster[-]care[-]funding recipients relating to sexual orientation and gender identity." Dkt. 16 at 6. The defendants have moved to dismiss under Rule 12(b)(1). Dkt. 15. The court will grant the motion.

### I. Background

The first action Texas challenges is a final rule the Department of Health and Human Services ("HHS") has promulgated requiring that "no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-merit factors such as age, disability, sex,

race, color, national origin, religion, gender identity, or sexual orientation." 45 C.F.R. § 75.300(c). Texas maintains that this rule, the "SOGI Rule,"[1] prohibits the State "from working with child[-]placing agencies that determine the placement of children based on [the agencies'] religious beliefs about the concepts of sexual orientation and gender identity." Dkt. 14 ¶ 128. Texas seeks declaratory and injunctive relief invalidating the SOGI Rule under the Administrative Procedure Act ("APA"). *Id.* ¶ 207.

Texas also requests the court set aside a host of subsequent HHS actions, collectively the "Becerra Actions," as either unlawful implementations of the SOGI Rule or, alternatively, an independently invalid policy that "exists apart" from the SOGI Rule. *Id.* ¶ 39. Texas sued HHS, its secretary, Xavier Becerra, and the United States (collectively "HHS.") *Id.* HHS has moved to dismiss for lack of subject-matter jurisdiction. Dkt. 15.

**A. Foster-Care Funding**

Federal funding for foster care is available through Title IV-E of the Social Security Act. 42 U.S.C. §§ 670–679c. The Administration for Children and Families ("ACF"), a division of HHS, distributes Title IV-E funds to states for foster-care and adoption assistance. 42 U.S.C. § 670; Dkt. 14 ¶ 79.

---

[1] "SOGI" refers to the so-called "sexual orientation" and "gender identity" portions of the rule.

Texas receives funding through Title IV-E. Dkt. 14 ¶ 64. In turn, Texas dispenses Title IV-E funds through a "community-based care system" to individual child-placing agencies or foster-care homes. *Id.* ¶¶ 64–68. These individual agencies "hold varying views on religion, sexual orientation, gender identity, and same-sex marriage status." *Id.* ¶ 70.

If independent agencies fail to comply with the provisions of Title IV-E, ACF has authority to review these agencies for compliance through a "partial review" process. *See* 45 C.F.R. § 1355.32(d). This process allows ACF to "conduct an inquiry and require the [T]itle IV-E agency to submit additional data as may be necessary." *See id.* at § 1355.32(d)(1). If the agency is found to be in noncompliance, the first step is a "program improvement plan designed to bring the [T]itle IV-E agency into compliance." *Id.* at § 1355.32(d)(3). If the agency then fails to adhere to the "program improvement plan" ("PIP"), it is subject to a penalty "related to the extent of the noncompliance." *Id.* at § 1355.32(d)(4).

**B. The SOGI Rule**

In 2016, HHS added the following language to its Comprehensive Grants Rule:

> (c) It is a public policy requirement of HHS that no person otherwise eligible will be excluded from participation in, denied the benefits of, or subjected to discrimination in the administration of HHS programs and services based on non-

> merit factors such as age, disability, sex, race, color, national origin, religion, gender identity, or sexual orientation. Recipients must comply with this public policy requirement in the administration of programs supported by HHS awards.
>
> (d) In accordance with the Supreme Court decisions in *United States v. Windsor* and in *Obergefell v. Hodges*, all recipients must treat as valid the marriages of same-sex couples. This does not apply to registered domestic partnerships, civil unions or similar formal relationships recognized under state law as something other than a marriage.

81 Fed. Reg. 89,393 (formerly codified at 45 C.F.R. § 75.300) ("the 2016 Rule").

Texas has challenged this same regulation, the SOGI Rule, in this court once before. *Texas Dep't of Fam. & Protective Servs. v. Azar*, 476 F. Supp. 3d 570 (S.D. Tex. 2020). The court dismissed the case as moot as HHS had, at that time, made "absolutely clear" that the SOGI Rule "would not be enforced against the State." *Id.* at 580. Two mutually reinforcing documents led the court to reach this conclusion. *Id.* First, HHS published a Notification of Nonenforcement that stated the SOGI Rule would "not be enforced pending repromulgation." Notification of Nonenforcement of Health and Human Services Grant Regulation, 84 Fed. Reg. 63,809, 63,811 (Nov. 19, 2019). Second, HHS sent Texas a letter ("the Texas Letter") in which HHS concluded it "cannot enforce the sexual-orientation or gender-identity nondiscrimination requirements of § 75.300(c) or the same-sex marriage

requirements of § 75.300(d) against Texas" with respect to entities "whose religious exercise would be substantially burdened." *Azar*, 476 F. Supp. 3d at 576.

Today, some three and a half years later, three events have affected the bases of this court's opinion in *Azar*. First, HHS rescinded the Texas letter as "overbroad." Dkt. 14 ¶ 16. In explaining its decision to rescind the Texas Letter, and several analogous letters to other states, HHS stated that the "waivers are inconsistent with the Department's critical goal of combating discrimination based on religion, sexual orientation, and gender identity." *Id.*

Second, HHS issued a final rule ("the 2021 Rule") that revoked the sexual-orientation and gender-identity elements of the SOGI Rule. 2021 Rule, 86 Fed. Reg. 2,257-01. However, before the 2021 Rule went into effect, it was challenged in another court for violating the APA. *Facing Foster Care in Alaska v. HHS*, No. 1-21-cv-308 (D.D.C. Feb. 2, 2021), ECF No. 1. In the course of that litigation, HHS "concluded that the challenged portions of the rule were not promulgated in compliance with the [APA]" and voluntarily vacated the 2021 Rule. *Facing Foster Care in Alaska*, ECF No. 41, at 3. Nevertheless, HHS maintains that "vacating the 2021 Rule's formal repeal of the 2016 Rule will not cause disruption or change the status quo." *Id.*

Third, after filing its motion to dismiss in this case, but before Texas filed its response, HHS issued a notice of proposed rulemaking ("NPR") to amend the SOGI Rule. 88 Fed. Reg. 44,750 (proposed July 13, 2023). The NPR expressly provides that "[w]hile this rulemaking process is ongoing, the 2019 Notice of Nonenforcement remains in effect." *Id*.

**C. The Becerra Actions**

On his first day in office, President Biden issued an executive order instructing all agencies to review and consider revising "all existing orders, regulations, guidance documents, policies, programs, or other agency actions" "to prevent and combat discrimination on the basis of gender identity and sexual orientation." Exec. Order 13988, 86 Fed. Reg. 7023, 7023 (Jan. 20, 2021). Following this order, HHS issued the three Becerra Actions: (1) an information memorandum ("IM") that "offers guidance to [T]itle IV-B and IV-E agencies when serving LGBTQI+ children and youth who are involved with the child[-]welfare system";[2] (2) a program instruction that provides "guidance and instructions for the preparation and submission of

---

[2] Admin. For Children and Families, Info. Mem., No. ACYF-CB-IM-22-01 (Mar. 2, 2022) available at https://www.acf.hhs.gov/sites/default/files/documents/cb/im2201.pdf. (Hereinafter "IM").

the application and annual reports";³ and (3) an "advancing equity" directive emphasizing that "[e]nsuring that child welfare is serving all people equitably, and with respect for all individuals, is essential to our work at the Children's Bureau."⁴ Of the three, only the IM contains any enforcement provision.

## II. Legal Standard

A court should grant a motion to dismiss for lack of subject-matter jurisdiction if the court "lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). The party asserting jurisdiction bears the burden of proof. *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001) (citation omitted). Federal courts have jurisdiction over a claim between parties only if the plaintiff presents an actual case or controversy. U.S. Const. art. III, § 2, cl. 1; *Okpalobi v. Foster*, 244 F.3d 405, 425 (5th Cir. 2001) (en banc). "The many doctrines that have fleshed out that 'actual controversy' requirement—standing, mootness, ripeness, political question,

---

[3] Children's Bureau, ACYF-CB-PI-23-05, Program Instruction (Feb. 27, 2023) at 1, available at https://www.acf.hhs.gov/sites/default/files/documents/cb/pi2305.pdf.

[4] Children's Bureau, Advancing Equity and Inclusion Through the Child and Family Services Reviews at 1, available at https://www.cfsrportal.acf.hhs.gov/document/download/rpPxGN.

and the like—are 'founded in concern about the proper—and properly limited—role of the courts in a democratic society.'" *Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 541–42 (5th Cir. 2008) (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984)).

## III. Analysis

HHS has moved to dismiss Texas's challenge to the SOGI Rule on mootness grounds as the regulation "has never been and is not currently being enforced." Dkt. 15 at 9. It likewise moves to dismiss Texas's challenge to the Becerra Actions on a variety of jurisdictional grounds. *Id.* The court will address each challenged agency action in turn.

### A. The SOGI Rule

HHS argues that because its Notification of Nonenforcement remains in effect, the challenge to the SOGI Rule is as moot today as it was in Texas's first challenge before this court. Dkt. 15 at 15–16. The court agrees.

A defendant claiming mootness "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Fontenot v. McCraw*, 777 F.3d 741, 747 (5th Cir. 2015) (quoting *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). Ordinarily, "a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its

power to determine the legality of the practice." *Friends of the Earth*, 528 U.S. at 189 (internal quotation omitted). "That is because '[t]he defendant is free to return to his old ways.'" *Texas v. EEOC*, 933 F.3d 433, 449 (5th Cir. 2019) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 632 (1953)). But a case may become moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth*, 528 U.S. at 189 (internal quotation omitted).

Within this inquiry, governmental-actor defendants are "accorded a presumption of good faith because they are public servants, not self-interested private parties." *Id*. "[W]hen a government entity assures a court of continued compliance, and the court has no reason to doubt the assurance, then the voluntary cessation doctrine does not apply." *Miraglia v. Bd. of Supervisors of La. State Museum*, 901 F.3d 565, 572 (5th Cir. 2018). Therefore, "[a] government entity . . . bears a lighter burden to prove that challenged conduct will not recur." *Moore v. Brown*, 868 F.3d 398, 406–07 (5th Cir. 2017).

In *Azar*, this court held that HHS had met their lighter burden through the Notification of Nonenforcement, in which "HHS unequivocally state[d] that it will not enforce the challenged provisions pending repromulgation."

*Azar*, 476 F. Supp. 3d at 578 (citing 84 Fed. Reg. at 63,811.). HHS has again met this burden.

Despite Texas's arguments to the contrary, HHS has at every turn reiterated its commitment to—and not shied away from—this promise of nonenforcement. First, HHS noted that the Notification of Nonenforcement remained in effect when it rescinded the Texas Letter. Dkt. 14 at 6 n.7 ("[T]he non-discrimination provisions in the 2016 Rule that the waiver issued to Texas sought to address are not currently being enforced."); *see also Holston United Methodist Home for Child., Inc. v. Becerra*, No. 2:21-CV-185, 2022 WL 17084226, at *4 (E.D. Tenn. Nov. 18, 2022) (describing an analogous withdrawal letter that HHS sent to South Carolina). Second, in voluntarily vacating the 2021 Rule, HHS insisted that this decision would "not cause disruption or change the status quo." *Facing Foster Care in Alaska*, ECF No. 41, at 3. Finally, while HHS's motion to dismiss was pending before this court, HHS issued a new notice of proposed rulemaking to amend the SOGI Rule, in which HHS once again promised that "[w]hile this rulemaking process is ongoing, the 2019 Notice of Nonenforcement remains in effect." 88 Fed. Reg. 44,750 (proposed July 13, 2023).

To review, HHS has: (1) *never* enforced the SOGI Rule; (2) promised to not enforce the SOGI Rule via the 2019 Notification of Nonenforcement;

and (3) explicitly doubled down on that promise, at least twice. This court will once again dismiss Texas's challenge and join the district-court consensus holding that there is no credible threat of prosecution of the SOGI Rule. *Holston United Methodist Home*, 2022 WL 17084226, at *10 ("Because the [SOGI Rule] is, for all intents and purposes, defunct pursuant to the Notification of Nonenforcement, Holston Home faces no credible threat of prosecution."); *Vita Nuova, Inc. v. Azar*, 458 F. Supp. 3d 546, 558 (N.D. Tex. 2020) ("Because there exists little to no credible threat of enforcement related to [the SOGI Rule], Vita Nuova's second claim cannot survive Defendants' Motion to Dismiss."); *Am. Coll. Of Pediatricians v. Becerra*, 2022 WL 17084365, at *18 (E.D. Tenn. Nov. 18, 2022) ("Plaintiffs also lack standing as to their [SOGI Rule] claims.").

To avoid the same result as other failed challenges to the SOGI Rule, Texas argues that HHS is currently enforcing the SOGI Rule in spirit, if not in name. Texas maintains that the Becerra Actions—an entirely separate set of HHS guidance documents—"demonstrate that HHS is in fact enforcing the substance of the SOGI Rule." Dkt. 16 at 18. But this is not the case. The Becerra Actions—which have never been enforced and do not so much as mention the SOGI Rule—are insufficient to overcome the ample assurances of nonenforcement discussed above.

Texas's claims concerning the SOGI Rule, Counts III—VI, will be dismissed as moot.

## B. The Becerra Actions

As an alternative, Texas argues that the Becerra Actions stand apart from the SOGI Rule and are independently invalid under the APA. Dkt. 14 ¶ 39. Texas challenges the three documents as a collective, arguing they work together to reinforce a final agency action that results "from a series of agency pronouncements rather than a single edict." *Id.* ¶ 122 (citing *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48–49 (D.C. Cir. 2000)). HHS seeks dismissal of this challenge on several jurisdictional grounds, including ripeness. Dkt. 15 at 13–21. Because Texas has failed to establish that its challenge is ripe, the court need not reach the remainder of HHS's arguments.

Ripeness is a prerequisite to subject-matter jurisdiction meant to ensure that "the harm asserted has matured sufficiently to warrant judicial intervention." *Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 267 (5th Cir. 2015) (quotations omitted). Accordingly, a court considering a ripeness challenge focuses on "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *New*

*Orleans Pub. Serv., Inc. v. Council of New Orleans*, 833 F.2d 583, 586 (5th Cir. 1987).

### 1. Fitness for Review

While "purely legal" challenges to agency actions are often ripe, a legal challenge may nevertheless be unfit for adjudication when "further factual development would significantly advance [the court's] ability to deal with the legal issues presented." *Nat'l Park Hospitality Ass'n v. Dep't of the Interior*, 538 U.S. 803, 812 (2003). In other words, the case must be based on a fully developed factual situation, not contingent future events that may not occur. *See Dahl v. Village of Surfside Beach*, 2022 WL 17729411, at *2 (5th Cir. Dec. 16, 2022).

For example, in *Toilet Goods Ass'n, Inc. v. Gardner*, the Supreme Court held that a challenge to a regulation that empowered the FDA to suspend a manufacturer's certification if it denied access to inspectors was unripe. 387 U.S. 158, 165 (1967) (Harlan, J.). The Court reasoned that at the time of the challenge, it was difficult to evaluate how the regulation would be implemented, as the Court had "no idea whether or when such an inspection [would] be ordered and what reasons the [agency might] give to justify [any such] order." *Id.* at 163. Therefore, the Court explained, "judicial appraisal . . . is likely to stand on a much surer footing in the context of a specific

application of this regulation than could be the case in the framework of the generalized challenge." *Id.* at 164.

Likewise, Texas's challenge at this stage offers more questions than answers as to how the Becerra Actions may be enforced. Texas claims that the Becerra Actions prohibit it from partnering "with child[-]placing agencies that determine the placement of children based on [the agencies'] religious beliefs about the concepts of sexual orientation and gender identity." Dkt. 14 ¶ 128. Indeed, the Becerra Actions, and the IM in particular, contain imperative commands that some agencies surely find objectionable. *See e.g.*, IM at 8 (instructing agencies to help "provide LGBTQI+ . . . youth with opportunities to participate in . . . mentoring programs . . . that affirm and support their [LGBTQI+] identities").

But while Texas argues that the very existence of the Becerra Actions creates an irreconcilable conflict between Texas law and federal law, Dkt. 16 at 25, it cannot point to "a single concrete example of how it has been forced to modify its behavior," *Choice Inc. of Tex. v. Greenstein*, 691 F.3d 710, 716 (5th Cir. 2012). A challenge to an agency action that "sits atop a mountain of conjecture and speculation" is not ripe for review. *United Transp. Union v. Foster*, 205 F.3d 851, 858 (5th Cir. 2000). Should it ever become clearer that Texas may actually face some enforcement of the Becerra Actions, a

reviewing court would "stand on a much surer footing" to consider a challenge. *Toilet Goods*, 387 U.S. at 164. As it stands, the HHS has yet to seek to enforce the Becerra Actions in any way, or to even credibly threaten their enforcement.[5]

### 2. Hardship

To qualify as hardship, the impact of a challenged regulation must be "sufficiently direct," resulting in an "immediate and significant change in the plaintiffs' conduct." *Abbott Labs. v. Gardner,* 387 U.S. 136, 152–53 (1967). Challenges are ripe when they create a "critical dilemma–a choice between complying with a law thought invalid or continuing to act in a manner believed to be lawful but which could result in future adverse consequences if the law in question were later upheld." *Choice Inc.*, 691 F.3d at 716; s*ee also Steffel v. Thompson*, 415 U.S. 452, 462 (1974); *Abbott Labs.*, 387 U.S. at 152. In contrast, when "no irremediable adverse consequences flow from requiring a later challenge," a case may be unripe. *Toilet Goods*, 387 U.S. at 165; *see also Choice Inc.*, 691 F.3d at 717 (describing the presence of a

---

[5] The IM was published more than two years ago. Texas has failed to identify, and the court cannot find, a single instance since then of any enforcement or attempted enforcement of any Becerra Action against any entity—whether in Texas or anywhere else. *See* Dkt. 16 at 18.

genuine compliance dilemma to be the "central feature" of the hardship-prong inquiry).

If it ever becomes evident that the Becerra Actions will be enforced, Texas will face minimal hardship in bringing its challenge at that time. Of the three Becerra Actions, only the IM contains any enforcement mechanism. IM at 9–10. If a foster-care agency does not comply with the IM, the ACF may conduct a "partial review" of the agency and require it to "submit additional data" to determine compliance. *Id.* at 10. If the foster-care agency is found to be noncompliant, the agency will then enter a PIP. "If, after the PIP process, the agency still fails to comply with the applicable requirements, the agency will be subject to a penalty related to the extent of the noncompliance." *Id.* (citing 45 C.F.R. § 1355.32(d)(4)). In other words, any future enforcement of the IM will not be too swiftly followed by a penalty, and will necessarily allow ample time for a challenge to be mounted.

So Texas and the agencies with which it partners face no threat of immediate penalty. At most, they face imposition of a PIP, and then a monetary fine that may then be promptly challenged through an

administrative procedure and reviewed by a federal court.[6] The possible consequences are analogous to those in *Toilet Goods*, in which a refusal to comply with an agency-ordered inspection would have "at most [led] only to a suspension of certification services to the particular party, a determination that [could have then been] promptly challenged through an administrative procedure, which in turn [was] reviewable by a court." *Toilet Goods*, 387 U.S. at 165.

The speculative threat of a PIP does not place Texas or its partner agencies in an undue dilemma. If courts were to "entertain anticipatory challenges pressed by parties facing no imminent threat of adverse agency action, no hard choice between compliance certain to be disadvantageous and a high probability of strong sanctions, [courts] would venture away from the domain of judicial review into a realm more accurately described as judicial preview." *Tenn. Gas Pipeline Co. v. FERC*, 736 F.2d 747, 751 (D.C. Cir. 1984). Texas cannot point to any "irremediable adverse consequences flow[ing] from requiring a later challenge," and so has failed to satisfy the hardship inquiry. *Toilet Goods*, 387 U.S. at 165.

---

[6] Foster-care agencies may first "appeal ACF's final determination of noncompliance to the HHS Departmental Appeals Board." 45 C.F.R. § 1355.47(d). The appeals board decision may subsequently be challenged in federal court.

"In sum, [the court finds] it too speculative whether the problem [Texas] presents will ever need solving; [the court finds] the legal issues [Texas] raises not yet fit for our consideration, and the hardship to [Texas] of biding its time insubstantial. Accordingly, [the court agrees] with [HHS] that this matter is not ripe for adjudication." *Texas v. United States*, 523 U.S. 296, 302 (1998).

\* \* \*

The motion to dismiss the amended complaint is granted. Dkt. 15. Counts III—VI, challenging the SOGI Rule, are dismissed as moot. Counts I—II, challenging the Becerra Actions, are dismissed as unripe. A final judgment will issue separately.

Signed on Galveston Island this 21st day of March, 2024.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE